**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **NORTH AMERICAN BUTTERFLY ASSOCIATION**, | ) No. 1:17-cv-2651 (RJL) |
| Plaintiff, | ) |
| v. | ) **DEFENDANTS' MEMORANDUM** |
| **NIELSEN**, *et al.*, | ) **IN SUPPORT OF MOTION TO** ) **DISMISS** |
| Defendants. | ) |

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

STATUTORY BACKGROUND.......................................................................................... 2

    I.   NATIONAL ENVIRONMENTAL POLICY ACT ...................................................... 2

    II.  THE ENDANGERED SPECIES ACT.......................................................................... 3

FACTUAL BACKGROUND ............................................................................................... 5

STANDARD OF REVIEW .................................................................................................. 8

    I.   MOTION TO DISMISS PURSUANT TO FEDERAL RULE 12(B)(1) .................... 8

    II.  THE ADMINISTRATIVE PROCEDURE ACT ...................................................... 10

ARGUMENT ....................................................................................................................... 11

    III. PLAINTIFF'S NEPA CLAIM (FIRST CLAIM) IS NOT JUSTICIABLE ............... 11

          A.    Plaintiff's NEPA Claim Fails to Identify a Final Agency Action as
               Required by the APA and Therefore its NEPA Claim is Unripe.............. 11

          i.     Alleged Preparatory and Future Activities are not Final Agency Action. 13

          ii.    Plaintiff's NEPA Claim is Unripe........................................................... 15

          iii.   Prior DHS Final Agency Actions can be Identified by Documentation of
               those Decisions ......................................................................................... 16

          B.    The Executive Order and Memorandum are not Final Agency Actions. . 17

    IV. PLAINTIFF'S ESA CLAIMS (SECOND CLAIM) MUST BE DISMISSED .......... 19

          A.    NABA Fails to State a Valid ESA Failure-to-Consult Claim for Border
               Wall Construction ..................................................................................... 19

          B.    NABA's 60-Day Notice of Intent to Sue Is a Defective Pre-Violation
               Notice As to Future Border Wall Construction ........................................ 22

          C.    NABA's Claims Based on Alleged "Border Wall Preparation Activities"
               Also Must Be Dismissed........................................................................... 23

          D.    NABA Fails to State a Valid ESA Section 7(a)(1) Claim ........................ 26

V.  PLAINTIFF'S FIFTH AMENDMENT AND FOURTH AMENDMENT CLAIMS (THIRD AND FOURTH CLAIMS) MUST BE DISMISSED........................................ 27

       A.     Plaintiff's Due Process Claims Based on Border Construction are Unripe because they Rely on Future, Potential Construction of Border Infrastructure.......................................................................................... 28

       B.     Plaintiff's Fourth Amendment Claim Fails as a Matter of Law because the Fourth Amendment does not Protect Plaintiff's Open Field from Incursion by Law Enforcement................................................................................ 32

CONCLUSION............................................................................................................. 37

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967) ................................................................................................ 12

*Adab v. U.S. Citizenship & Immigration Servs.*,
No. 15-248, 2017 WL 4358686 (D.D.C. Sept. 29, 2017) ................................... 13, 14

*Al–Owhali v. Ashcroft*,
279 F. Supp. 2d 13 (D.D.C. 2003) ............................................................................. 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................................... 10, 24

*Bennett v. Spear*,
520 U.S. 154 (1997) .................................................................................. 11, 13, 14

*Black v. Sheraton Corp. of Am.*,
564 F.2d 531 (D.C. Cir. 1977) ................................................................................ 31

*Black Warrior Riverkeeper, Inc. v. Ala. Dep't of Trans.*,
Nos. 11-cv-267, 13-cv-794, 2016 WL 233672 (M.D. Ala. Jan. 19, 2016) .............. 31

*Blanchette v. Conn. Gen. Ins. Corps.*,
419 U.S. 102 (1974) ................................................................................................ 31

*Bridgeforth v. Bronson*,
584 F. Supp. 2d 108 (D.D.C. 2008) ........................................................................ 33

*Califano v. Sanders*,
430 U.S. 99 (1977) .................................................................................................. 12

*California v. Ciraolo*,
476 U.S. 207 (1986) ................................................................................................ 33

*Carroll v. United States*,
267 U.S. 132 (1925) ................................................................................................ 36

*Ctr. for Biological Diversity v. DOI*,
563 F.3d 466 (D.C. Cir. 2009) ............................................................... 4, 15, 20, 22

*Ctr. for Biological Diversity v. EPA*,
861 F.3d 174 (D.C. Cir. 2017) ........................................................................ 4, 19, 20

*Ctr. for Biological Diversity v. Nielson*,
No. 1:18-cv-00655 (D.D.C. filed Mar. 22, 2018) ................................................... 16

*Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*,
704 F.3d 413 (5th Cir. 2013) .................................................................................... 5

*Cty. of El Paso v. Chertoff*,
No. EP-08-CA-196-FM, 2008 WL 4372693 (W.D. Tex. Aug. 29, 2008)................................ 16

*Defs. of Wildlife v. Chertoff*,
527 F. Supp. 2d 119 (D.D.C. 2007) ...................................................................................... 16

*Defs. of Wildlife v. Kempthorne*,
No. 04-1230, 2006 WL 2844232 (D.D.C. Sept. 29, 2006).............................................. 24, 25

*Defs. of Wildlife v. U.S. Fish & Wildlife*,
797 F. Supp. 2d 949 (D. Ariz. 2011) .................................................................................... 27

*Dep't of Transp. v. Pub. Citizen*,
541 U.S. 752 (2004)............................................................................................................... 3

*Dow Chem. Co. v. United States*,
476 U.S. 227 (1986)............................................................................................................. 35

*Downwind LLC v. United States Dep't of Energy*,
No. 3:16-CV-207-DPM, 2017 WL 6542747 (E.D. Ark. Dec. 21, 2017) ................................ 29

*English v. Dist. of Columbia*,
717 F.3d 968 (D.C. Cir. 2013)............................................................................................. 10

*Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*,
824 F.3d 507 (5th Cir. 2016) ................................................................................................. 5

*Envtl Integrity Project v. U.S. EPA*,
No. 15-0139, 2015 WL 7737307 (D.D.C. Dec. 1, 2015) ...................................................... 22

*Firfer v. United States*,
208 F.2d 524 (D.C. Cir. 1953)............................................................................................. 31

*Fla. Key Deer v. Paulison*,
522 F.3d 1133 (11th Cir. 2008) ........................................................................................... 27

*Florida v. Jardines*,
569 U.S. 1 (2013)............................................................................................................ 33, 34

*Franklin v. Massachusetts*,
505 U.S. 788 (1992)............................................................................................................. 18

*Friends of Animals v. Ashe*,
51 F. Supp. 3d 77 (D.D.C. 2014)........................................................................... 5, 19, 22, 23

*Friends of The Earth, Bluewater Network Div. v. U.S. Dep't of Interior*,
478 F. Supp. 2d 11 (D.D.C. 2007) ...................................................................................... 18

*Grunewald v. Jarvis*,
930 F. Supp. 2d 73 (D.D.C. 2013) ....................................................................................... 10

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*,
484 U.S. 49 (1987)............................................................................................................ 5, 25

*Hallstrom v. Tillamook Cty.*,
  493 U.S. 20 (1989)................................................................................................ 22

*Herbert v. Nat'l Academy of Sciences*,
  974 F.2d 192 (D.C. Cir.1992)................................................................................ 7

*Hester v. United States*,
  265 U.S. 57 (1924)................................................................................................ 34

*Hinton v. Corrections Corp. of Am.*,
  624 F. Supp. 2d 45 (D.D.C. 2009)........................................................................ 21

*Humane Soc'y of the U.S. v. McCarthy*,
  209 F. Supp. 3d 280 (D.D.C. 2016)...................................................................... 10

*In re Border Infrastructure Envtl Litig.*,
  284 F. Supp. 3d 1092 (S.D. Cal. 2018)................................................................. 16

*In re Certified Question of Law*,
  858 F.3d 591 (FISA Ct. Rev. 2016)....................................................................... 33

*In re Oil Spill by Oil Rig Deepwater Horizon*,
  792 F. Supp. 2d 926 (E.D. La. 2011).............................................................. 5, 26

*Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*,
  402 F.3d 1249 (D.C. Cir. 2005)............................................................................ 9

*Jicarilla Apache Nation v. U.S. Dep't of Interior*,
  648 F. Supp. 2d 140 (D.D.C. 2009)...................................................................... 15

*Karst Envtl. Educ. & Prot., Inc. v. E.P.A.*,
  475 F.3d 1291 (D.C. Cir. 2007)............................................................................ 11

*Katz v. United States*,
  389 U.S. 347 (1967).............................................................................................. 33

*Kern Cty. Farm Bureau v. Badgley*,
  No. 02-5376, 2002 WL 34236869 (E.D. Cal. Oct. 10, 2002)............................... 23

*Klemic v. Dominion Transmission, Inc.*,
  138 F. Supp. 3d 673 (W.D. Va. 2015)................................................................... 34

*Knick v. Twp. of Scott*,
  862 F.3d 310 (3d Cir. 2017) ................................................................................. 36

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994)......................................................................................... 8, 27

*Kursar v. Transp. Sec. Admin.*,
  581 F. Supp. 2d 7 (D.D.C. 2008).......................................................................... 9

*Ky. Dep't of Corrections v. Thompson*,
  490 U.S. 454 (1989).............................................................................................. 30

*Littlewolf v. Lujan,*
  877 F.2d 1058 (D.C. Cir. 1989) ........................................................... 31

*Lujan v. Nat'l Wildlife Fed'n,*
  497 U.S. 871 (1990) ............................................................................. 11

*Majid v. FBI,*
  245 F. Supp 3d 63 (D.D.C. 2017) ....................................................... 24

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs,*
  417 F.3d 1272 (D.C. Cir. 2005) .......................................... 11, 12, 15, 19

*Nat'l Park Hosp. Ass'n v. Dep't of the Interior,*
  538 U.S. 803 (2003) ............................................................................. 29

*Nat'l Wildlife Fed'n v. Norton,*
  332 F. Supp. 2d 171 (D.D.C. 2004) ..................................................... 27

*Nevada v. Dep't of Energy,*
  457 F.3d 78 (D.C. Cir. 2006) .............................................................. 14

*Norton v. S. Utah Wilderness All.,*
  542 U.S. 55 (2004) ............................................................................... 11

*Ohio Forestry Ass'n Inc. v Sierra Club,*
  523 U.S. 726 (1998) ............................................................................. 12

*Oliver v. United States,*
  466 U.S. 170 (1984) ......................................................................... 34, 35

*Patel v. City of Montclair,*
  798 F.3d 895 (9th Cir. 2015) .............................................................. 32

*Paulin v. George Washington Univ. Sch. of Med. & Health Science,*
  878 F. Supp. 2d 241 (D.D.C. 2012) ...................................................... 7

*Preseault v. ICC,*
  494 U.S. 1 (1990) ................................................................................. 31

*Presley v. City of Charlottesville,*
  464 F.3d 480 (4th Cir. 2006) .............................................................. 34

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n,*
  324 F.3d 726 (D.C. Cir. 2003) ............................................................ 10

*Reoforce, Inc. v. United States,*
  853 F.3d 1249 (Fed. Cir.), .................................................................. 30

*Robertson v. Methow Valley Citizens Council,*
  490 U.S.332 (1989) ............................................................................... 2

*San Juan Audubon Soc'y v. Veneman,*
  153 F. Supp. 2d 1 (D.D.C. 2001) .......................................................... 9

*Save Our Heritage Org. v. Gonzales*,
   533 F. Supp. 2d 58 (D.D.C. 2008) ........................................................................ 16

*Scolaro v. D.C. Bd. of Elections & Ethics*,
   104 F. Supp. 2d 18 (D.D.C. 2000) .................................................................... 7, 9

*Sierra Club v. Ashcroft*,
   No. 04-cv-272, 2005 U.S. Dist. LEXIS 44244 (S.D. Cal. Dec. 12, 2005) .............. 16

*Sierra Club v. U.S. Army Corps of Eng'rs*,
   803 F.3d 31 (D.C. Cir. 2015) ............................................................................ 14

*Slope Borough v. Andrus*,
   642 F.2d 589 (D.C. Cir. 1980) .......................................................................... 20

*Smith v. Maryland*,
   442 U.S. 735 (1979) ........................................................................................ 33

*Soldal v. Cook Cty.*,
   506 U.S. 56 (1992) .......................................................................................... 33

*Sprint Corp. v. F.C.C.*,
   331 F.3d 952 (D.C. Cir. 2003) .......................................................................... 12

*State v. Casson*,
   No. 1104016644, 2011 WL 4638801 (Del. Super. Ct. 2011) ............................... 36

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ....................................................................................... 8, 27

*Student Loan Mktg. Ass'n v. Riley*,
   104 F.3d 397 (D.C. Cir. 1997) .......................................................................... 31

*Student Loan Mktg. Ass'n v. Riley*,
   907 F. Supp. 464 (D.D.C. 1995) ....................................................................... 12

*Tex. Border Coal. v. Napolitano*,
   614 F. Supp. 2d 54 (D.D.C. 2009) ......................................................... 28, 29, 30

Toomer v. William C. Smith & Co.,
   112 A.3d 324 (D.C. 2015) ................................................................................ 31

*Tri-State Steel Const., Inc. v. Occupational Safety & Health Review Comm'n*,
   26 F.3d 173 (D.C. Cir. 1994) ............................................................................ 35

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
   136 S. Ct. 1807, (2016) ................................................................................... 12

*United States v. Beene*,
   818 F.3d 157 (5th Cir. 2016) ............................................................................ 35

*United States v. Dunn*,
   480 U.S. 294 (1987) ........................................................................................ 35

*United States v. Jacobsen*,
    466 U.S. 109 (1984) ........................................................................................... 33

*United States v. James Daniel Good Real Prop.*,
    510 U.S. 43 (1993) ............................................................................................. 33

*United States v. Jones*,
    565 U.S. 400 (2012) ..................................................................................... 32, 34

*United States v. Ramsey*,
    431 U.S. 606 (1977) ........................................................................................... 36

*WaterWatch of Or. v. U.S. Army Corps of Eng'rs*,
    No. Civ. 99-861-BR, 2000 WL 1100059 (D. Or. June 7, 2000) ........................... 27

*Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*,
    473 U.S. 172 (1985) ........................................................................................... 31

*Wyo. Outdoor Council v. U.S. Forest Serv.*,
    165 F.3d 43 (D.C. Cir. 1999) ........................................................................ 12, 15

**<u>Statutes</u>**

5 U.S.C. § 551(13) ................................................................................... 10, 18, 19

5 U.S.C. § 701(b) ................................................................................................. 10

5 U.S.C. § 701(b)(2) ............................................................................................ 10

5 U.S.C. § 702 ..................................................................................................... 10

5 U.S.C. § 704 ................................................................................................. 1, 11

6 U.S.C. § 111(a) .................................................................................................. 5

6 U.S.C. § 211(a) .................................................................................................. 5

6 U.S.C. § 211(e)(1) .............................................................................................. 5

6 U.S.C. § 211(e)(3)(A) ......................................................................................... 6

6 U.S.C. § 211(e)(3)(B) ......................................................................................... 6

8 U.S.C. § 1103 ............................................................................................. 16, 28

8 U.S.C. § 1357(a)(3) .................................................................................... 36, 37

16 U.S.C. § 1536(a)(1) .................................................................................... 5, 26

16 U.S.C. § 1536(a)(2) .................................................................................... 3, 19

16 U.S.C. § 1536(b)(3)(A) ..................................................................................... 4

16 U.S.C. § 1540(g)(1)(A) ............................................................................... 5, 25

16 U.S.C. § 1540(g)(2)(A) ..................................................................................... 5

16 U.S.C. § 1540(g)(2)(A)(i) ......................................................................................... 22

16 U.S.C. §§ 1531-1544 ................................................................................................... 3

28 U.S.C. § 1346(b)(1) ............................................................................................. 31, 34

28 U.S.C. § 2401(b) ....................................................................................................... 34

28 U.S.C. § 2675(b) ....................................................................................................... 34

28 U.S.C. § 2679(b)(1) ............................................................................................ 31, 34

42 U.S.C. § 4332(2)(C) ............................................................................................. 3, 13

42 U.S.C. § 4332(2)(C)(iii) ............................................................................................. 3

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................. 8, 26

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 26, 27

**Regulations**

40 C.F.R. § 1501.4(b) ...................................................................................................... 3

40 C.F.R. § 1501.4(c) ...................................................................................................... 3

40 C.F.R. § 1502.16(a)-(d) .............................................................................................. 3

40 C.F.R. § 1502.3 ..................................................................................................... 3, 13

40 C.F.R. § 1508.4 ........................................................................................................... 3

40 C.F.R. § 1508.7 ........................................................................................................... 3

40 C.F.R. § 1508.9 ........................................................................................................... 3

40 C.F.R. § 1508.13 ......................................................................................................... 3

50 C.F.R. § 402.13 ........................................................................................................... 4

50 C.F.R. § 402.13(a) ...................................................................................................... 4

50 C.F.R. § 402.14 ........................................................................................................... 4

50 C.F.R. § 402.14(a) ...................................................................................................... 4

50 C.F.R. § 402.14(a)–(b) ............................................................................................... 4

50 C.F.R. § 402.14(g) ...................................................................................................... 4

50 C.F.R. § 402.14(h) ...................................................................................................... 4

70 Fed. Reg. 55,622 (Sept. 22, 2005) ........................................................................... 16

72 Fed. Reg. 2,535 (Jan. 19, 2007) .............................................................................. 16

72 Fed. Reg. 60,870 (Oct. 26, 2007) .............................................................................. 16

73 Fed. Reg. 19,077 (Apr. 8, 2008) ................................................................................. 16

73 Fed. Reg. 19,078 (Apr. 8, 2008) ................................................................................. 16

82 Fed. Reg. 35,984 (Aug. 2, 2017) ................................................................................ 16

82 Fed. Reg. 42,829 (Sept. 12, 2017) ............................................................................. 16

82 Fed. Reg. 8793 (Jan. 25, 2017) .............................................................................. 6, 17

83 Fed. Reg. 3,012 (Jan. 22, 2018) ................................................................................. 16

## <u>Other Authorities</u>

FINAL ENVIRONMENTAL ASSESSMENT FOR ANAPRA FENCE REPLACEMENT AND ASSOCIATED
    ROAD RENOVATIONS SUNLAND PARK, NEW MEXICO (2015),
    https://www.cbp.gov/sites/default/files/documents/Final%20EA%20and%20FONSI%20Anapr
    a%20Fence%20Replacement.pdf ................................................................................... 17

FINAL ENVIRONMENTAL ASSESSMENT SUPPORTING THE LAREDO SOUTH ALL WEATHER ROAD,
    LAREDO, WEBB COUNTY, TEXAS (2016),
    https://www.cbp.gov/sites/default/files/assets/documents/2016-
    Apr/FONSI%20Laredo%20South%20All%20Weather%20Road%2C%20Laredo%2C%20We
    bb%20County%2C%20Texas.pdf .................................................................................. 17

Memorandum from John Kelly, Secretary, on Implementing the President's Border Security and
    Immigration Enforcement Improvements Policies (February 20, 2017) .................................... 6

**Table of Acronyms**

| | |
|---|---|
| APA | Administrative Procedure Act |
| CBP | Customs and Border Protection |
| CE | Categorical Exclusion |
| DHS | Department of Homeland Security |
| ESA | Endangered Species Act |
| EA | Environmental Assessment |
| EIS | Environmental Impact Statement |
| FONSI | Finding of No Significant Impact |
| FWS | Fish and Wildlife Service |
| IIRIRA | Illegal Immigration Reform and Immigrant Responsibility Act |
| NABA | North American Butterfly Association |
| NEPA | National Environmental Policy Act |
| NMFS | National Marine Fisheries Service |
| RGV | Rio Grande Valley |
| TIMR | Tactical Infrastructure Maintenance and Repair |
| USBP | United States Border Patrol |

## INTRODUCTION

Congress has tasked Defendants, including the Department of Homeland Security
("DHS"), Customs and Border Protection ("CBP"), and the United States Border Patrol
("USBP")(which operates as CBP's law enforcement arm),[1] with the important mission of
safeguarding the United States' borders.  DHS's priorities include, among other tasks, securing
the homeland, ensuring resilience against terrorism, and maintaining secure borders.  Together,
these agencies employ a number of law enforcement strategies and tactics to protect the public
by preventing unauthorized individuals and materials from entering the United States at and
between United States ports of entry.  It is through these actions, carried out by the Nation's
premier law enforcement agency, that the United States' border remains secure.

Here, Plaintiff North American Butterfly Association ("NABA") attempts to challenge
border control activities on the United States-Mexico border. Plaintiff's National Environmental
Policy Act ("NEPA") claim alleges that Defendants have violated NEPA by failing to complete
an analysis of the potential environmental impacts from the construction of a "border wall" on its
property.  First Amended Complaint, ECF No. 19 (hereinafter "Compl.") ¶¶ 63–71.  Because
DHS has not made a final decision on whether and how to construct such a border facility across
Plaintiff's property, Plaintiff cannot establish that it is challenging a "final agency action," as
required by the judicial review provisions of the Administrative Procedure Act ("APA"), 5

---

[1] Plaintiff names as Defendants Kirstjen M. Nielsen, in her official capacity as DHS Secretary;
Kevin M. McAleenan, in his official capacity as Acting Commissioner, CBP; Carla L. Provost,
in her official capacity as Acting Chief, USBP; and Manuel Padilla, Jr., in his official capacity as
Chief Patrol Agent, USBP Rio Grande Valley Border Patrol Sector ("RGV Sector").

U.S.C. § 704.  As a result, not only does Plaintiff fail to state a claim under the APA, its NEPA claim is not ripe for judicial review.

Plaintiff's ESA claim similarly fails because consultation under ESA Section 7 is required only when a federal agency authorizes, funds, or carries out an action that may affect ESA-listed species.  Defendants have not authorized, funded, or built any new border barrier on Plaintiff's property, nor has Plaintiff alleged or identified any other agency action for which ESA consultation is required where consultation has not already occurred.  The Court also lacks jurisdiction over the ESA claim with respect to certain road maintenance that Defendants performed on Plaintiff's property, because the ESA provides jurisdiction only over continuing violations, and the road maintenance has ended due to Plaintiff's withdrawal of its authorization for it.

Finally, Plaintiff's constitutional claims fail because its claim of deprivation of property for future wall construction is premature and not ripe.  And, to the extent Plaintiff seeks non-monetary relief under the Fourth Amendment, such relief is unavailable because the alleged invasion is not one against which the Fourth Amendment protects.  Plaintiff's Complaint should be dismissed in its entirety.

## STATUTORY BACKGROUND

### I.   THE NATIONAL ENVIRONMENTAL POLICY ACT

NEPA serves the dual purpose of informing agency decisionmakers of the environmental effects of specific proposed federal actions and ensuring that relevant information is made available to the public so that the information "may also play a role in both the decisionmaking process and the implementation of that decision."  *Robertson v. Methow Valley Citizens Council*, 490 U.S.332, 349 (1989).  To accomplish this purpose, NEPA requires preparation of an

Environmental Impact Statement ("EIS") for "major Federal actions significantly affecting the quality of the human environment."  42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1502.3.  An EIS must examine, among other things, alternatives to the proposed action, and the project's direct, indirect, and cumulative environmental impacts.  42 U.S.C. § 4332(2)(C)(iii); 40 C.F.R. §§ 1502.16(a)-(d), 1508.7.  Prior to preparing an EIS, an agency may evaluate the significance of the proposed federal action by preparing an Environmental Assessment ("EA"). 40 C.F.R. § 1501.4(b),  (c); 40 C.F.R. § 1508.9.  If, based on the EA, the agency concludes that the proposed action will not significantly impact the environment, it issues a Finding of No Significant Impact ("FONSI") in lieu of an EIS.  40 C.F.R. § 1508.13; *see generally Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 756–58 (2004).  An agency may also forego preparation of an EIS or EA when an action falls within a "category of actions which do not individually or cumulatively have a significant effect on the human environment . . . ."  40 C.F.R. § 1508.4.  Such actions are designated by an agency and their internal NEPA regulations and are referred to as categorical exclusions ("CE").  *Id.*

## II.    THE ENDANGERED SPECIES ACT

The ESA provides for the listing of species as threatened or endangered and the provision of certain protections for those species.  16 U.S.C. §§ 1531-1544.  ESA Section 7(a)(2) directs each federal agency to ensure, in consultation with the "consulting agency," that "any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of" any ESA-listed species or destroy or adversely modify its designated critical habitat.  16 U.S.C. § 1536(a)(2).  "That is, before taking any proposed action, agencies must consult with either the National Marine Fisheries Service ("NMFS"), located in the United States Department of Commerce, or the United States Fish and Wildlife Service ("FWS"), located in

the United States Department of the Interior, to determine if the action will 'jeopardize' endangered or threatened species." *Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 177 (D.C. Cir. 2017)(citations and footnote omitted).

The action agency (here DHS) makes the initial determination of whether its action may affect listed species or critical habitat. 50 C.F.R. § 402.14(a). If the agency determines that its action "may affect" listed species or critical habitat, it must pursue consultation with FWS or NMFS. 50 C.F.R. §§ 402.13, 402.14. However, if the action agency determines that its action will have "no effect" on listed species, then consultation is not required. *Ctr. for Biological Diversity v. DOI*, 563 F.3d 466, 475 (D.C. Cir. 2009). ESA Section 7 consultation may proceed either informally or formally. Informal consultation is an optional process comprising all discussions and correspondence between the action agency and FWS or NMFS in order to determine whether formal consultation is necessary. 50 C.F.R. § 402.13(a). If an action agency determines, with the written concurrence of FWS or NMFS, that the action "is not likely to adversely affect . . ." the listed species or critical habitat, the consultation process is terminated, and formal consultation is not necessary. 50 C.F.R. § 402.13(a).

If either the action agency or FWS/NMFS determines that the proposed action is "likely to adversely affect" listed species or designated critical habitat, the agencies must engage in formal consultation. 50 C.F.R. §§ 402.13(a), 402.14(a)–(b). Formal consultation concludes with the issuance of a biological opinion by FWS or NMFS assessing the likelihood of jeopardy to the species and whether the proposed action will result in destruction or adverse modification of critical habitat; if so, FWS or NMFS must suggest reasonable and prudent alternatives to the action, where available. 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. § 402.14(g),  (h).

ESA Section 7(a)(1) provides that all federal agencies other than FWS and NMFS "shall,

in consultation with and with the assistance of the [FWS or NMFS], utilize their authorities in furtherance of the purposes of this chapter by carrying out programs for the conservation of endangered species and threatened species . . . ."  16 U.S.C. § 1536(a)(1).

The ESA includes a citizen-suit provision that authorizes any person to commence an action to enjoin a federal agency "who is alleged to be in violation of any provision of [the ESA] or regulation issued under the authority thereof."  16 U.S.C. § 1540(g)(1)(A).  But no action under § 1540(g)(1)(A) may be commenced "prior to sixty days after written notice of the violation has been given to the Secretary, and to any alleged violator of any such provision or regulation."  *Id*. § 1540(g)(2)(A). "Pre-violation" notices sent before any ESA violation exists are not sufficient to satisfy the 60-day notice requirement *Friends of Animals v. Ashe*, 51 F. Supp. 3d 77, 85–87 (D.D.C. 2014), *aff'd*, 808 F.3d 900 (D.C. Cir. 2015).  In addition, because the ESA only authorizes suit where an agency is currently "in violation" of the ESA, courts lack jurisdiction to address ESA violations that lie in the past.  *See In re Oil Spill by Oil Rig Deepwater Horizon*, 792 F. Supp. 2d 926, 932–33 (E.D. La. 2011) (citing *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49 (1987)), *superseded by statute on other grounds by Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507 (5th Cir. 2016) and *aff'd in part, rev'd in part on other grounds sub nom.*, *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413 (5th Cir. 2013).

## **FACTUAL BACKGROUND**

In 2002, Congress created DHS and tasked the agency with preventing terrorist attacks in the United States and implementing programs aimed at securing the homeland.  6 U.S.C. § 111(a).  CBP is a DHS component agency.  6 U.S.C. § 211(a).  CBP's enabling legislation brought USBP, formerly a part of Immigration and Naturalization Service, into CBP.  6 U.S.C. §

211(e)(1).  USBP's "primary responsibility [is] interdicting persons . . . or goods . . ." illegally entering or leaving the United States in the areas between the United States ports of entry.  *Id.* § 211(e)(3)(A).  The statute also tasked USBP with deterring illegal entry in the same areas.  *Id.* § 211(e)(3)(B).

On January 25, 2017, the President issued an executive order on border security.  Border Security and Immigration Enforcement Improvements, Exec. Order No. 13,767, 82 Fed. Reg. 8793 (hereinafter the "Executive Order").  The Executive Order applies generally to border security and directs federal agencies "to deploy all lawful means to secure the Nation's southern border."  *Id.* at 8793.  Included is a directive to "take all appropriate steps to immediately plan, design and construct a physical wall along the southern border."  *Id.* at 8794.  The Executive Order does not direct any specific location, priority area or include specifics for the planning and construction of a physical barrier.  *Id.*  A few weeks after the Executive Order issued, the Secretary of DHS issued a memorandum to implement policies consistent with the Order. Memorandum from John Kelly, Secretary, on Implementing the President's Border Security and Immigration Enforcement Improvements Policies (February 20, 2017); *see* Ex. 1, Decl. of Paul Enriquez (hereinafter "Enriquez Decl."), Att. D (Letter Terminating Lease Agreement).  The Memorandum provided that CBP should "immediately identify and allocate all sources of available funding for the planning, design, construction and maintenance of a wall . . . ."  *Id.* Att. E (February 20, 2017 Memorandum from Sec'y of DHS) at 5.  As with the Executive Order, the Memorandum does not specify particular locations or specific infrastructure projects.  *See generally id.*

Facts Relevant to the Present Action[2]

NABA owns and operates a non-profit wildlife and botanical garden called the National Butterfly Center.  Compl. ¶ 15.  The Butterfly Center is located in Southern Texas on the Rio Grande River along the United States-Mexico border.  Compl. ¶¶ 15, 46–47.  According to the Complaint, the Center receives "tens of thousands" of visitors each year.  *Id.* ¶ 46.  It is situated in the RGV Sector, a USBP designation for the geographical patrol area which encompasses, among other areas, the Center.  *Id.* ¶ 19.  The Center includes trails that lead to areas within the Center and toward the edge of the Rio Grande.  *Id.* ¶ 46.  The United States holds a flood control easement over the property, and until August 2017, also held a license to maintain a road that runs through the Center.  Enriquez Decl., Att. A (License Agreement); Enriquez Decl., Att. B (Easement).  The Center is located entirely within twenty-five miles of the United States-Mexico border.  Compl. ¶ 15 (stating that the property is 100 acres and abuts the Rio Grande). [3]

The Complaint alleges that on July 20, 2017, the executive director of the Center, Ms. Wright, identified a work crew on Plaintiff's property.  *Id.* ¶ 53.  The work crew allegedly used heavy equipment to "cut down trees, mow brush, and widen a private road that runs . . ." through the Center.  *Id.* ¶ 53.  The crew allegedly widened the road by eighteen feet beyond its existing capacity for two lanes.  *Id.* ¶ 53.  Director Wright asserts that she subsequently identified

_____

[2] The allegations in Plaintiff's Complaint are taken as true for purposes of this motion, *Paulin v. George Washington Univ. Sch. of Med. & Health Science*, 878 F. Supp. 2d 241, 245–46 (D.D.C. 2012), but Defendants do not otherwise concede their truth or relevance.

[3] On a motion to dismiss for lack of jurisdiction, the Court is not limited to the complaint.  As discussed above, the court may consider documents cited in the complaint, matters of public record, and may consider other information that affects the jurisdiction of the Court.  *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing *Herbert v. Nat'l Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir.1992)), *aff'd*, No. 00-7176, 2001 WL 135857 (D.C. Cir. Jan. 18, 2001).

"surveyor flags" elsewhere on the property.  *Id.* ¶ 54.  She states that she contacted CBP

regarding the road maintenance and surveyor flags and that CBP responded that the activities

were related to "tactical infrastructure."  *Id.* ¶ 55.

On August 1, 2017, Chief Padilla, the Chief Patrol Agent for RGV Sector, visited the

Center.  *Id.*  ¶ 19, 56.  Chief Padilla allegedly shared a proposal for a border wall design that

included Plaintiff's property.  *Id.*  ¶ 56.  Chief Padilla further indicated that secondary roads

within the Center would be required and that construction would be supported by uniformed

officers.  *Id.*  ¶¶ 57–58.  He also allegedly referred to "sensors" at undisclosed locations that had

been placed on Plaintiff's property and stated that the gate to the Center should not be locked or

locks would be removed.  *Id.*  ¶¶ 59–60.  Since this meeting Director Wright asserts that she has

experienced a single instance of interference, and a reporter and has observed officers that appear

to be stationed on the property rather than patrolling, and has observed confrontations between

officers and Center employees and visitors.  *Id.*  ¶¶ 61–62.

Plaintiff filed suit in December 2017 and amended its complaint in March 2018.  *See*

ECF No. 19.  Plaintiff alleges violations of NEPA, the ESA, and the United States Constitution.

Defendants move to dismiss all claims.

## STANDARD OF REVIEW

## I.    MOTION TO DISMISS PURSUANT TO FEDERAL RULE 12(B)(1)

Dismissal of a claim under Federal Rule of Civil Procedure 12(b)(1) is appropriate where

the allegations in the complaint are insufficient to establish the court's jurisdiction.  "Without

jurisdiction the court cannot proceed at all in any cause."  *Steel Co. v. Citizens for a Better Env't*,

523 U.S. 83, 94 (1998) (quotation omitted).  The plaintiff bears the burden of establishing

subject matter jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

(1994) (It is "to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." (citations omitted)).  Where a plaintiff fails to establish subject matter jurisdiction, the claims must be dismissed.  *See San Juan Audubon Soc'y v. Veneman*, 153 F. Supp. 2d 1, 4 (D.D.C. 2001).

Motions under Rule 12(b)(1) may challenge a complaint in two ways, on its face or by challenging the factual allegations.  *Kursar v. Transp. Sec. Admin.*, 581 F. Supp. 2d 7, 13–14 (D.D.C. 2008), *aff'd*, 442 F. App'x 565 (D.C. Cir. 2011).  A facial challenge asserts that the allegations on the face of the complaint fail to establish subject matter jurisdiction.  *Id.* (citing *Al–Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 20 (D.D.C. 2003).  When deciding a facial challenge, the court "must accept as true the allegations in the complaint and consider the factual allegations of the complaint in the light most favorable to the non-moving party."  *Id.* at 14 (quotations and citation omitted).  In a factual challenge, however, a court may go "outside the pleadings to determine whether it has subject-matter jurisdiction over the challenged case or claims."  *Id.* (same).  Thus, while a facial attack is limited to the face of the complaint, a motion to dismiss for lack of jurisdiction allows a court to consider materials outside the pleadings, without converting the motion to a motion for summary judgment.  *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005); *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), *aff'd*, No. 00-7176, 2001 WL 135857 (D.C. Cir. Jan. 18, 2001) ("a court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case").  The burden is on the plaintiff to establish, by preponderance of the evidence, that subject matter jurisdiction exists.  *Id.*

Dismissal under Rule 12(b)(6) is appropriate where a complaint fails to state a cause of action. *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) (where APA cause of action is lacking, Rule 12(b)(6), not Rule 12(b)(1), governs dismissal). In deciding a motion to dismiss under Rule 12(b)(6), the factual allegations in the complaint are taken as true. *English v. District of Columbia*, 717 F.3d 968, 971 (D.C. Cir. 2013) (citation omitted). While the Court must assume the veracity of any "well-pleaded factual allegations," legal conclusions and conclusory allegations "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## II.   THE ADMINISTRATIVE PROCEDURE ACT

Because NEPA does not provide for a private right of action, claims alleging a violation of NEPA "depend on the government's waiver of sovereign immunity in the APA." *Grunewald v. Jarvis*, 930 F. Supp. 2d 73, 81 (D.D.C. 2013), *aff'd*, 776 F.3d 893 (D.C. Cir. 2015); *see also Humane Soc'y of the U.S. v. McCarthy*, 209 F. Supp. 3d 280, 283 (D.D.C. 2016) (noting that the APA's waiver is "limited [and] . . . applies only to an [a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court.") (internal quotations and citations omitted).

The APA allows challenges to "agency action." 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . , is entitled to judicial review thereof."). "[A]gency action" has a particular meaning that is set forth in 5 U.S.C. § 551(13)—*see* 5 U.S.C. § 701(b), (b)(2) ("For the purpose of this [judicial review] chapter . . . 'agency action' ha[s] the meanin[g] given . . . by section 551 of this title")—which defines the term as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act," 5 U.S.C. § 551(13). Thus, a plaintiff must

"direct [its] attack against some particular 'agency action' that causes it harm." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). Further, the action must be a "final agency action." 5 U.S.C. § 704; *Karst Envtl. Educ. & Prot., Inc. v. E.P.A.*, 475 F.3d 1291, 1295 (D.C. Cir. 2007). Simply put, a final agency action is one that marks the "consummation of the agency's decisionmaking process" and from which "rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal citations and quotations omitted); *see Karst Envtl. Educ.*, 475 F.3d at 1295; *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004).

## ARGUMENT

### I.   PLAINTIFF'S NEPA CLAIM (FIRST CLAIM) IS NOT JUSTICIABLE

Plaintiff's NEPA claim ("First Claim for Relief") fails to challenge a final agency action and is not ripe. Plaintiff does not point to or allege that any final agency action has occurred in relation to that future construction or in relation to any other activity taken by DHS. The absence of a final agency action is a failure to state a claim under the APA and renders Plaintiff's NEPA claim unripe. The claim must be dismissed.

### A.  Plaintiff's NEPA Claim Fails to Identify a Final Agency Action as Required by the APA and is Unripe.

A NEPA claim must be brought under the APA and, as such, must satisfy the APA's requirement that a plaintiff challenge a specific final agency action. *See Lujan*, 497 U.S. at 882 (citing 5 U.S.C. § 704). An agency action is final when (1) the action marks the consummation of the agency's decisionmaking process; and (2) the action is one by which rights or obligations have been determined or from which legal consequences flow. *Bennett*, 520 U.S. at 177−78; *see Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272, 1278 (D.C. Cir.

2005).  Put simply, "an agency action is final if, as the Supreme Court has said, it is 'definitive' and has a 'direct and immediate . . . effect on the day-to-day business' of the party challenging it."  *Id.* (citation omitted).  If the challenged activity is tentative or still pending, it is not a final agency action.  *Id.*; *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813, (2016) ("the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature") (quotation and citation omitted).

In the context of NEPA, a final agency action inquiry is closely related to the question of ripeness.  The ripeness doctrine ensures that courts only become involved in live controversies.  *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).  The doctrine is similar to standing requirements and prevents courts from "entertain[ing] the claims of a litigant unless they are 'constitutionally and prudentially ripe.'"  *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 48 (D.C. Cir. 1999) (citation omitted).  Allegations of a future injury are insufficient.  *Id.*  To determine whether the allegations are ripe, a court must review "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented."  *Id.* at 48–49 (D.C. Cir. 1999) (citing *Ohio Forestry Ass'n Inc. v Sierra Club*, 523 U.S. 726, 732–34 (1998)).  When coupled with an APA claim, the inquiry into ripeness begins with the question of a final agency action.  *Sprint Corp. v. F.C.C.*, 331 F.3d 952, 956 (D.C. Cir. 2003) ("[f]inal agency action pursuant to the Administrative Procedure Act . . . is a 'crucial prerequisit[e]' to ripeness") (citation omitted).  Thus, courts often look to the finality of the agency action before turning to ripeness.  *See e.g., Student Loan Mktg. Ass'n v. Riley*, 907 F. Supp. 464, 471–72 (D.D.C. 1995), *aff'd and remanded*, 104 F.3d 397 (D.C. Cir. 1997).  Even

where an action is final, however, a claim may still be unripe for review.  *Adab v. U.S. Citizenship & Immigration Servs.*, No. 15-248, 2017 WL 4358686, at *3 (D.D.C. Sept. 29, 2017).

### i.     Alleged Preparatory and Future Activities are not Final Agency Action

Plaintiff has not challenged a final agency action as required APA Section 704.  Instead, Plaintiff's NEPA claim is based on preparatory and prospective activity.  Plaintiff alleges that Defendants have violated NEPA by failing to conduct NEPA analysis for "border wall construction," Compl. ¶ 6; *see id.* ¶¶ 1–2, 5, but this allegation is based only on Plaintiff's belief that border wall construction will occur based on alleged preparatory "[a]genc[y] and contractor[] activities." *Id.* ¶ 5.  Plaintiff believes border wall construction will occur based on Director Wright's observation of brush clearing near the road, her discovery of "surveyor flags" within the bounds of the property, and her glimpse of a "draft proposal for the border wall." *Id.* ¶¶ 53–54, 56.  Yet, Plaintiff acknowledges that the activity for which it alleges NEPA is required has not occurred and is not yet occurring. *Id.* ¶ 5 ("[border wall construction] activities . . . *will* impact the environment . . .") (emphasis added).

Preparation activities, to the extent they are occurring, are not sufficient to demonstrate that DHS has consummated its decisionmaking process and reached a final agency action under the APA. *See Bennett*, 520 U.S. at 177–78.[4] *Adab v. United States Citizenship & Immigration*

---

[4] Even if such activity could be considered a final agency action, clearing brush along a road and planting small flags are not "major federal actions significantly affecting the quality of the human environment" under NEPA.  42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1502.3.  In fact, DHS/CBP completed an EA for maintenance of infrastructure, including road clearing, and reached a finding that such activity would have no significant effect.  Enriquez Decl. Att. F, FINAL ENVIRONMENTAL ASSESSMENT ADDRESSING PROPOSED TACTICAL INFRASTRUCTURE MAINTENANCE AND REPAIR ALONG THE U.S./MEXICO INTERNATIONAL BORDER IN TEXAS, 3

*Servs.*, is instructive.  There, the agency had issued a letter stating its intent to revoke an individual's visa.  2017 WL 4358686, at *4.  The court held that the agency's statement of intent was not sufficient to demonstrate a final agency action.  *Id.*  Because the agency could still change course, no injury stemmed directly from the letter of intent itself.  *Id.*

Here, Plaintiff alleges that Defendants have created a draft plan for border fence construction on Plaintiff's property but have not yet reached a final determination.  The alleged preparatory activities does not constitute a final agency action because they are only preparatory in nature and the agency may yet change course.  *See Bennett*, 520 U.S. at 177.[5]  The proposal Director Wright reviewed and the preparation activities do not represent the culmination of the agency's decisionmaking process because the agency has not committed to a final course of action.  *Id.*; *Adab*, 2017 WL 4358686, at *5 (the letter of intent was not sufficiently final because "the agency still may reverse course, such that 'if [the Court does] not decide the claim now, [it] may never need to'") (citation omitted); *see also Nevada v. Dep't of Energy*, 457 F.3d 78, 84 (D.C. Cir. 2006) (where "discussion" if an interim plan in the Record of Decision did "not represent its final determination regarding the plan").  Further, no rights and obligations have been determined by the draft or the preparation activities because they are preliminary and have no legal effect.  Plaintiff does not and cannot allege a final agency action committing DHS to

---

(2014) (providing for vegetation control near roads).  This document is available publicly at https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=1&ved=0ahUKEwi Qici10IjbAhXEg-AKHa8FDDAQFggpMAA&url=https%3A%2F%2Fwww.cbp.gov%2Fsites %2Fdefault%2Ffiles%2Fdocuments%2FTexas%2520TIMR%2520Final%2520EA%2520and%2 520FONSI.pdf&usg=AOvVaw3Ay226gehFv_MvGdIRB2C4.

[5] Plaintiff acknowledges several times in its Complaint that the brush clearing was completed in July 2017.  *See e.g.*, Compl. ¶ 53.  To the extent Plaintiff alleges that additional NEPA analysis is required for the completed brush clearing, that claim is moot.  *Sierra Club v. U.S. Army Corps of Eng'rs*, 803 F.3d 31, 43 (D.C. Cir. 2015) (a claim seeking NEPA analysis for a completed project is moot where the Agency cannot take action to change the completed project).

construct border infrastructure on its property, because there is no such decision.  *See* Compl. ¶ 56 (alleging that Director Wright viewed a "*proposal* for the border wall . . .") (emphasis added). In short, Plaintiff has not alleged or identified any action by Defendants that marks the consummation of decisionmaking that will result in border infrastructure construction within Plaintiff's property and thus fails to challenge a specific final agency action.  Plaintiff therefore fails to state a claim under the APA, and its NEPA claim must be dismissed.

### ii.   Plaintiff's NEPA Claim is Unripe.

Plaintiff's NEPA claim also fails because Plaintiff's failure to identify a final agency action renders Plaintiff's NEPA claim unripe.  The activities occurring here are preparatory and proposed, at best.  *See e.g.,* Compl. ¶¶ 6, 53.  Reviewing such preliminary activity is precisely the type of review the ripeness doctrine seeks to avoid, and is a situation that would "benefit from further factual development of the issues presented."  *Wyo. Outdoor Council*, 165 F.3d at 48–49 (quotation and citation omitted); s*ee Ctr. for Biological Diversity*, 563 F.3d at 480. (challenge to first stage of multistage lease program was not ripe when agency would be conducting additional analyses in later stages that could scuttle the program).  Here, the most concrete activity Plaintiff alleges is brush clearing that occurred along a road.  Compl. ¶ 53. Without the benefit of evaluating that conduct in the context of a complete agency decisionmaking process, this court runs the risk of intervening at a time that would interfere with the agency's process.  *Wyo. Outdoor Council*, 165 F.3d at 48.  Simply put, planning alone cannot serve as a ripe controversy in the context of an APA claim.  *Jicarilla Apache Nation v. U.S. Dep't of Interior*, 648 F. Supp. 2d 140, 147–48 (D.D.C. 2009) ("one purpose of the ripeness doctrine—like the APA's final agency action requirement—is to prevent courts from prematurely entangling themselves in administrative proceedings") (citation omitted); *Nat'l Ass'n of Home*

*Builders*, 417 F.3d at 1278 (tentative actions are not final agency actions).  Therefore, Plaintiff's

NEPA claim is unripe and must be dismissed.

### iii.  Prior DHS Final Agency Actions can be Identified by Documentation of those Decisions

In contrast to the preparatory activities and proposals identified by Plaintiff, when DHS

makes a final decision relating to construction of border security facilities on other properties it

invariably renders an identifiable final agency action.  For example, many prior border

infrastructure projects, DHS published determinations under the Illegal Immigration Reform and

Immigrant Responsibility Act ("IIRIRA"), 8 U.S.C. 1103 (note), in the Federal Register.  *See*

*e.g.*, 70 Fed. Reg. 55,622 (Sept. 22, 2005); 72 Fed. Reg. 2,535 (Jan. 19, 2007); 72 Fed. Reg.

60,870 (Oct. 26, 2007); 73 Fed. Reg. 19,077 (Apr. 8, 2008); 73 Fed. Reg. 19,078 (Apr. 8, 2008);

82 Fed. Reg. 35,984 (Aug. 2, 2017); 82 Fed. Reg. 42,829 (Sept. 12, 2017) and; 83 Fed. Reg.

3,012 (Jan. 22, 2018).  These notices are public record and have been challenged in Federal

Courts.  *See, e.g.*, *Ctr. for Biological Diversity v. Nielson*, No. 1:18-cv-00655 (D.D.C. filed Mar.

22, 2018); *In re Border Infrastructure Envtl Litig.*, 284 F. Supp. 3d 1092 (S.D. Cal. 2018); *Save*

*Our Heritage Org. v. Gonzales*, 533 F. Supp. 2d 58 (D.D.C. 2008); *Cty. of El Paso v. Chertoff*,

No. EP-08-CA-196-FM, 2008 WL 4372693 (W.D. Tex. Aug. 29, 2008); *Defs. of Wildlife v.*

*Chertoff*, 527 F. Supp. 2d 119 (D.D.C. 2007); *Sierra Club v. Ashcroft*, No. 04-cv-272, 2005 U.S.

Dist. LEXIS 44244 (S.D. Cal. Dec. 12, 2005).  Such a determination covering the area where the

Plaintiff's property is located has not been made.

Alternatively, where DHS did not release an IIRIRA determination, the culmination of

DHS's decisionmaking process could be identified by a completed NEPA analysis.  *See, e.g.*,

FINAL ENVIRONMENTAL ASSESSMENT FOR ANAPRA FENCE REPLACEMENT AND ASSOCIATED

ROAD RENOVATIONS SUNLAND PARK, NEW MEXICO (2015),

https://www.cbp.gov/sites/default/files/documents/Final%20EA%20and%20FONSI%20Anapra

%20Fence%20Replacement.pdf (Final EA for fence replacement and road maintenance for

border infrastructure in New Mexico) and; FINAL ENVIRONMENTAL ASSESSMENT SUPPORTING

THE LAREDO SOUTH ALL WEATHER ROAD, LAREDO, WEBB COUNTY, TEXAS (2016),

https://www.cbp.gov/sites/default/files/assets/documents/2016-

Apr/FONSI%20Laredo%20South%20All%20Weather%20Road%2C%20Laredo%2C%20Webb

%20County%2C%20Texas.pdf (Final EA for road maintenance near Laredo, Texas).

Here, no such final NEPA analysis or final determination under IIRIRA has been released

for the area where the Center is located.  The agency process is ongoing and potential future

construction of border fence on Plaintiff's property is not a final agency action.  Therefore,

Plaintiff's NEPA claim is based on that uncertain future activity and must be dismissed.

### B.  The Executive Order and Memorandum are not Final Agency Actions.

Plaintiff attempts to bolster its allegations by pointing to the Executive Order and the

February 20, 2017 DHS Memorandum.  Compl. ¶¶ 51–52.  The Executive Order provides the

policy direction of the Executive and instructs agencies to "take all appropriate steps to

immediately plan, design and construct a physical wall along the southern border."  Exec. Order

at 8794.  To implement that policy direction, the Secretary of DHS issued the February 20, 2017

DHS Memorandum which directed agency personnel to "immediately identify and allocate all

sources of available funding for the planning, design, construction and maintenance of a wall."

Memorandum from John Kelly, Secretary, on Implementing the President's Border Security and

Immigration Enforcement Improvements Policies (February 20, 2017); *see* Enriquez Decl. Att. E

(February 20, 2017 Memorandum from Sec'y of DHS).  Both document direct planning and

study for future construction of a physical barrier at the southern border, but neither document includes specifics such as design, location, or provides appropriations for such future construction. Although Plaintiff references the documents, it does not challenge the content of those documents, nor does Plaintiff allege that these documents are final agency actions. Compl. ¶¶ 51–52 (listing the documents with selected quoted text). Rather, Plaintiff seems to mention the documents to create a timeline indicating that the preparation activities began on its property at a date after those documents issued. *Id.* ¶ 51 (providing that the Executive Order was dated January 30, 2017). Plaintiff does not allege, nor can it, that either of these documents specifically mention the Butterfly Center. These documents lend no support to the finality of any future action to be taken on Plaintiff's property.

As a practical matter, neither document represents the culmination of an agency decisionmaking process. The Executive Order is not an activity by an agency at all, but a statement of policy by the Executive. *See Friends of The Earth, Bluewater Network Div. v. U.S. Dep't of Interior*, 478 F. Supp. 2d 11, 23 (D.D.C. 2007) ("[t]he APA defines an 'agency action' as including 'the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.'") (citing 5 U.S.C. § 551(13)); s*ee also Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992) ("As the APA does not expressly allow review of the President's actions, we must presume that his actions are not subject to its requirements."). The DHS Memorandum fails, similarly, to satisfy the basic requirements of a final agency action because it is merely a general statement of policy that lacks any direct or immediate effect on the Plaintiff. Neither statement meets even a basic definition of a final agency action nor are the documents discrete and final enough to constitute agency action from which legal consequences

flow. *Nat'l Ass'n of Home Builders*, 417 F.3d at 1278; 5 U.S.C. § 551(13). Plaintiff's NEPA claim is not saved by the Complaint's reference to these documents and must be dismissed.

## II. PLAINTIFF'S ESA CLAIMS (SECOND CLAIM) MUST BE DISMISSED

As with Plaintiff's NEPA claim, Plaintiff's claims under ESA Section 7 ("Second Claim for Relief") must be dismissed for a number of reasons. Plaintiff's claim that DHS has violated ESA Section 7(a)(2), 16 U.S.C. § 1536(a)(2), by failing to "initiate or complete" ESA consultation with FWS on "border wall construction," Compl. ¶ 75–76, is unripe and fails to state a claim. Although new border barriers and other related infrastructure may well be built in RGV Sector at some point, DHS has not yet "authorized," "funded," or "carried out" any border wall construction on Plaintiff's property and thus no ESA Section 7(a)(2) obligation has been triggered. For the same reason, Plaintiff's 60-day notice of intent to sue DHS under the ESA for allegedly failing to consult on wall construction is a defective "pre-violation" notice that requires dismissal of this claim. *Friends of Animals*, 51 F. Supp. 3d at 85–87. This conclusion is not altered by Plaintiff's attempts to rely on purported "border wall preparation activities." Compl. ¶ 1. Plaintiff has not alleged facts sufficient to state a failure-to-consult claim for even these activities or to establish this Court's jurisdiction for such a claim, as explained below.

### A. NABA Fails to State a Valid ESA Failure-to-Consult Claim for Border Wall Construction

The ESA and its regulations mandate consultation only if and when there is "action authorized, funded, or carried out by [an] agency . . ." that may affect listed species or their designated critical habitat. 16 U.S.C. § 1536(a)(2); *Ctr. for Biological Diversity v. EPA*, 861 F.3d at 177 ("before taking any proposed action, agencies must consult  . . . to determine if the action will 'jeopardize' endangered or threatened species." (citation and footnote omitted)). No

border wall construction has yet occurred on Plaintiff's property, nor has Plaintiff identified in its Complaint any agency action or decision that authorizes or directs any border wall construction on its property that would presently trigger ESA consultation.

The D.C. Circuit's decision in *Center for Biological Diversity v. Department of Interior*, 563 F.3d at 482–83 is instructive here.  In that case, the D.C. Circuit found that plaintiffs could not bring a "premature" ESA failure-to-consult claim for the Department of Interior's approval of a five-year program to expand leasing for offshore oil and gas development, where the agency's mere initial approval of the program would have no effect on listed species.  *Id.* at 483. The Court found that "[r]egardless of whether there has been an agency action under the ESA [in approving the program], the completion of the first stage of a leasing program does not cause any harm to anything because it does not require any action or infringe on the welfare of animals." *Id.*  As the D.C. Circuit noted, "it is . . . not certain . . . that any of the endangered species in the areas at issue may be affected by the Program, as the proposed leases might never come to pass." *Id.*  The D.C. Circuit cited another decision in which it similarly found that ESA consultation was not required for a program that had "already reached the lease-sale stage," but "no bids had been accepted, and no leases executed."  *Id.* (citing *N. Slope Borough v. Andrus*, 642 F.2d 589, 593–94 (D.C. Cir. 1980)).  As these cases make clear, an agency is only required to consult "before taking any proposed action" that may in fact affect listed species.  *Center for Biological Diversity v. EPA*, 861 F.3d at 177.  The present case is even further removed from the situation at issue in those cases.  While there no doubt has been a great deal of focus on border construction within the Executive Branch, to date DHS has taken no action to construct a wall on Plaintiff's property, nor does Plaintiff so allege.  Likewise, Plaintiff does not identify any DHS action or

decision authorizing or directing construction of a border wall on its property (nor could it because no such agency action yet exists).

Instead, the closest Plaintiff gets is to point to the February 20, 2017 DHS Memorandum on border security and immigration enforcement policies.  Compl. ¶ 52.  The Memorandum states in pertinent part that "CBP, in consultation with the appropriate executive departments and agencies . . . shall immediately begin planning, design, construction and maintenance of a wall . . . in the most appropriate locations  . . . to most effectively achieve operational control of the border."  *See* Enriquez Decl. Att. E (February 20, 2017 Memorandum from Sec'y of DHS) 5.[6] As discussed in the context of the NEPA analysis, taken in context, the Memorandum at most directed the start of an agency process to identify the most appropriate locations for new border infrastructure.  *Id.*  It clearly does not authorize, fund, or direct CBP to construct a border wall or other infrastructure in any specific location.  The Memorandum also explicitly refers to and does not exclude the possibility of consultation with other agencies such as FWS where necessary, prior to any construction.

Nor could Plaintiff point to any harm resulting from dismissal of its ESA failure-to-consult claim as to border wall construction at this time.  If DHS in fact goes forward with border infrastructure construction on Plaintiff's property that may affect listed species and the ESA applies, Plaintiff may then bring an ESA Section 7(a)(2) claim to obtain any appropriate relief if it believes there has been a violation.  But a failure-to-consult claim for border wall construction that has not yet occurred or been authorized is premature at this time and must be

---

[6] While not attached to the Complaint, the Court may review this memorandum on a motion to dismiss without converting the motion to one for summary judgment because Plaintiff relies on the document for its ESA claim.  *Hinton v. Corrections Corp. of Am.*, 624 F. Supp. 2d 45, 46–47 (D.D.C. 2009) (citations omitted).

dismissed for lack of jurisdiction as unripe or alternatively for failure to state a claim because no ESA consultation duty has been triggered.  *See Ctr. for Biological Diversity v. DOI*, 563 F.3d at 482–83 (dismissing premature consultation claims as unripe).

### B.  NABA's 60-Day Notice of Intent to Sue Is a Defective Pre-Violation Notice As to Future Border Wall Construction

Dismissal of this claim also is required because Plaintiff has failed to satisfy a mandatory pre-requisite for suit under the ESA citizen suit provision.  A suit alleging an ESA violation may not be commenced "prior to sixty days after written notice of the violation has been given to the Secretary [of Interior], and to any alleged violator of any such provision or regulation."  16 U.S.C. § 1540(g)(2)(A)(i).  The Supreme Court has held that such notice requirements are a "mandatory, not optional, condition precedent for suit."  *Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 26 (1989); *see also id.* at 31 (notice requirement is mandatory condition precedent that district court "may not disregard . . . at its discretion"); *Envtl Integrity Project v. U.S. EPA*, No. 15-0139, 2015 WL 7737307, at *10 (D.D.C. Dec. 1, 2015) (citing *Hallstrom* in context of a similar Clean Air Act notice requirement).  Some courts have held that these notice requirements are conditions on the government's waiver of sovereign immunity, and thus jurisdictional.  *See Environmental Integrity Project*, 2015 WL 7737307, at *10–11.  But, even if the pre-suit notice requirement is not jurisdictional, however, the failure to provide a legally valid and adequate notice mandates dismissal.  *Friends of Animals*, 51 F. Supp. 3d at 87.

Here, Plaintiff alleges that it sent a notice letter for its ESA failure-to-consult claim to DHS on October 4, 2017, and subsequently to the Secretary of Interior on January 26, 2018. Compl. ¶ 78.  But as discussed above, there is no ESA violation for a failure to consult on border wall construction until DHS goes forward with construction or authorizes the activity, without

ESA consultation having been completed.  Instead, Plaintiff is anticipating that a violation may

occur if such construction moves forward.  This type of "pre-violation" notice letter is

inadequate and requires dismissal of its failure-to-consult claim for that activity.  *Friends of*

*Animals*, 51 F. Supp. 3d at 87 ("pre-violation" notices of intent to sue are "insufficient to satisfy

the ESA's 60-day notice requirement" and dismissing claim)(citation omitted); *Kern Cnty. Farm*

*Bureau v. Badgley*, No. 02-5376, 2002 WL 34236869, at *13 (E.D. Cal. Oct. 10, 2002) ("[O]ne

cannot give notice of a violation which has not yet happened.").

### C.  NABA's Claims Based on Alleged "Border Wall Preparation Activities" Also Must Be Dismissed

Perhaps recognizing that it cannot advance a failure-to-consult claim for wall

construction at this premature stage, Plaintiff attempts to plead a failure-to-consult claim based

on purported "border wall preparation activities" on its property consisting of road maintenance

and placement of surveyor flags.  Compl. ¶¶ 1, 3, 53–54.  Plaintiff has not alleged facts sufficient

to state an ESA Section 7 claim for even these more limited, claimed "border wall preparation

activities" or to establish this Court's jurisdiction over such a claim.

The only significant so-called "wall preparation" activity identified in the Complaint in

fact consisted of "tactical" road maintenance on Plaintiff's property.  *Id.* ¶ 55 (acknowledging

CBP stated the work was for "tactical infrastructure").  DHS performed this work under a license

granted by Plaintiff to CBP.  Enriquez Decl. Att. A (License Agreement).  The road maintenance

was not directed at wall construction, but rather was part of CBP's Tactical Infrastructure

Maintenance and Repair ("TIMR") program in Texas—on which CBP *already performed*

informal ESA consultation and for which FWS found no likely adverse impact on listed species.

Enriquez Decl. Att. F (ESA biological assessment for TIMR in Texas and FWS informal

consultation letter).  The ESA consultation for the TIMR program in Texas is a matter of public record, of which this Court may take judicial notice on a motion dismiss for failure to state a claim.  *Majid v. FBI*, 245 F. Supp 3d 63, 68 (D.D.C. 2017).  Plaintiff cannot state an ESA failure-to-consult claim for "wall construction" based on tactical road maintenance that was already the subject of a prior ESA consultation.

In addition, Plaintiff does not allege that the road maintenance, or other "wall preparation" described in the Complaint, impacted any ESA-listed species on its property, as necessary to require ESA consultation.  *Defs. of Wildlife v. Kempthorne*, No. 04-1230 , 2006 WL 2844232, at *19 (D.D.C. Sept. 29, 2006).  Plaintiff bears the burden to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. at 678 (citation omitted).  Although the factual allegations need not be "detailed," "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citation omitted).  In its Complaint, Plaintiff provides a list of ESA-listed species allegedly located on its property, Compl. ¶ 49, but only vaguely and conclusorily asserts that "border wall construction"—which has not occurred or been authorized—"will impact" "several threatened and endangered species . . ." *Id*. ¶¶ 5, 75.  Absent, however, are any allegations that the road maintenance affected any particular listed species, let alone allege sufficient factual matter to support such a claim.

For example, Plaintiff alleges there is a refugium for an ESA-listed plant (Slender Rushpea) on its property, and that Plaintiff is "creating" a refugium for another ESA-listed plant (Tamaulipan Kidneypetal), but does not claim or allege specific facts that the road maintenance impacted these refugia or resulted in the taking of any these plants.  *Id*. ¶ 49.  Presumably, Plaintiff would not locate dedicated refugia for ESA-listed plants immediately adjacent to roads

for which it gave CBP authorization to conduct maintenance.  Plaintiff also vaguely alleges that there are "a number of" unnamed "federally endangered aquatic species that live in the Mission Main Canal that flows through the Butterfly Center[,]" but does not allege that or how the road maintenance affected these in-canal species.  *Id.* ¶ 50.  Similarly, Plaintiff does not allege, supported by sufficient factual matter, how the mere placement of some survey stakes on its property had an effect on an ESA-listed species that could require ESA consultation.[7]

In addition, even if the road maintenance described in the Complaint had an impact on ESA-listed species, any alleged violations regarding this activity are wholly past.  DHS can no longer perform this activity on the Plaintiff's property due to its express withdrawal of authorization in August 2017.  *See* Enriquez Decl. Att. D (Letter Terminating the License Agreement).  Any ESA violation for the road maintenance thus lies entirely in the past, removing the jurisdiction of the Court to entertain any ESA failure-to-consult claim based on this activity. The plain language of the ESA citizen-suit provision is focused on *current* violations: a court may "enjoin any person . . . who is alleged to be *in violation* of any provision of this chapter . . . ."  16 U.S.C. § 1540(g)(1)(A) (emphasis added).  It does not confer jurisdiction over wholly past violations.  This reading of the ESA is supported by the Supreme Court's interpretation in *Gwaltney*, 484 U.S. at 57–67 (finding courts lack jurisdiction over claims

---

[7] If Plaintiff's ESA claims are not wholly dismissed, DHS will argue that the placement of survey stakes had no effect on listed species and thus no consultation was required. *Defs. of Wildlife v. Kempthorn*, 2006 WL 2844232, at *19.  CBP issued a "no effect" finding for a "geo-technical" survey near Plaintiff's property in this time frame that included soil drilling and sampling.  *See* Enriquez Decl. Att. H (CATEX RGV Levee Floodwall Minimally Intrusive Geo-Technical Survey) 2 (stating that "CBP has determined that the proposed action will have no effect on federally threatened or endangered species or their designated critical habitat").  While not explicitly stated in that document, CBP naturally had concluded that related and even less ground-disturbing efforts like survey staking similarly had no effect on listed species in the area.

wholly past violations under nearly identical citizen-suit provision in the Clean Water Act).  *See also In re Oil Spill by Oil Rig Deepwater Horizon*, 792 F. Supp. 2d at 932–33 (relying on *Gwaltney* and other authorities to dismiss ESA claim because the alleged violation occurred in the past).

For all of these reasons, Plaintiff fails to state an ESA failure-to-consult claim for the purported "wall preparation" activities, and the Court additionally lacks jurisdiction over any claim based on the only significant activity (tactical road maintenance) because that activity has ended.  The claim should be dismissed under Fed. R. Civ. P. 12(b)(1) and  (6).

### D.  NABA Fails to State a Valid ESA Section 7(a)(1) Claim

Plaintiff also alleges that DHS is violating Section 7(a)(1) of the ESA, 16 U.S.C. § 1536(a)(1).  Compl. ¶ 77.  This claim suffers similar problems as Plaintiff's Section 7(a)(2) claim.  Section 7(a)(1) provides that all federal agencies other than the FWS and NMFS "shall, in consultation with and with the assistance of the [FWS and/or NMFS], utilize their authorities in furtherance of the purposes of this chapter by carrying out programs for the conservation of endangered species and threatened species . . . ."  16 U.S.C. § 1536(a)(1).  Relying on this provision, Plaintiff alleges that "Defendants have also failed to take any affirmative steps to conserve the many threatened or endangered species impacted by the border wall construction . . ."  Compl. ¶ 77.  This claim lacks a factual predicate because no border wall construction has occurred or been authorized.

Plaintiff also fails to allege that DHS has taken no action to conserve listed species, as necessary to maintain this claim.  Section 7(a)(1) does not mandate that agencies take any particular conservation action or do so in connection with specific projects.  Rather, Section 7(a)(1)'s "modest command" is only that the overall activities undertaken by the agency to

conserve listed species cannot be so insignificant as to amount to "total inaction." *Fla. Key Deer v. Paulison*, 522 F.3d 1133, 1147 (11th Cir. 2008). *See also Nat'l Wildlife Fed'n v. Norton*, 332 F. Supp. 2d 171, 187–88 (D.D.C. 2004) (noting the "broad discretion" afforded a federal agency under Section 7(a)(1)); *Defs. of Wildlife v. U.S. Fish & Wildlife*, 797 F. Supp. 2d 949, 963 (D. Ariz. 2011) (declining to find the "total inaction" sufficient to support a Section 7(a)(1) violation where the Forest Service had undertaken some measures to carry out a wolf conservation program); *WaterWatch of Or. v. U.S. Army Corps of Eng'rs*, No. Civ. 99-861-BR, 2000 WL 1100059 at *11 (D. Or. June 7, 2000) (holding that agency not required to have a conservation program for pump station permits specifically). Here, Plaintiff does not allege "total inaction" by DHS in conserving listed species and thus it fails to state a claim under Section 7(a)(1). The Section 7(a)(1) claim therefore should be dismissed under Fed. R. Civ. P. 12(b)(6).

## III.   PLAINTIFF'S FIFTH AMENDMENT AND FOURTH AMENDMENT CLAIMS (THIRD AND FOURTH CLAIMS) MUST BE DISMISSED

Plaintiff's constitutional claims must be dismissed. Plaintiff's Fifth Amendment due process claim ("Third Claim for Relief") fails because it is unripe, and its Fourth Amendment claim ("Fourth Claim for Relief") fails because even if an intrusion occurred, Plaintiff's property is an open field to which no right to privacy attaches.

Federal District Courts are "courts of limited jurisdiction . . . [which] possess only that power authorized by Constitution and statute." *Kokkonen*, 511 U.S. at 377 (citation omitted). The issue of jurisdiction is properly addressed before considering the merits. *Steel Co.*, 523 U.S. at 94–96.. The party asserting jurisdiction, usually the plaintiff, bears the burden of proving that the court has jurisdiction. *Kokkonen*, 511 U.S. at 377.

### A. Plaintiff's Due Process Claims Based on Border Construction are Unripe Because They Rely on Future, Potential Construction of Border Infrastructure.

Plaintiff's due process claims seem to be based on three allegations. First, Plaintiff alleges that Defendants failed to comply with IIRIRA's procedural requirements. Compl. ¶ 83. Second, Plaintiff alleges that future construction constitutes an unlawful occupation of its property. *Id.* ¶ 82. And third, Plaintiff seems to allege an uncompensated occupation of its property. All three claims are premature and not ripe for review.

In the body of the Complaint, Plaintiff recites provisions of IIRIRA that would apply in the event of a condemnation proceeding. *See Id.* ¶¶ 37–38. Those provisions provide, among other things, the authority for the United States to acquire an interest in land near international borders when "essential to control and guard the boundaries and borders of the United States . . . ." *Id.* (citing 8 U.S.C. § 1103); *see Texas Border Coal. v. Napolitano*, 614 F. Supp. 2d 54, 59 (D.D.C. 2009). This provision also includes a "consultation provision" that provides for the Secretary of Homeland Security to consult with landowners prior to initiating a condemnation action. Compl. ¶ 38; 8 U.S.C. § 1103. Inherent in that provision is the Agency's discretion to determine when acquisition of property is needed. *Tex. Border Coal.*, 614 F. Supp. 2d at 60. To the extent that Plaintiff recites these provisions because it believes it is entitled to the process afforded by IIRIRA's consultation provision, such a claim is unripe.

This Court has addressed a similar challenge under IIRIRA and held that the claims were unripe. In *Texas Border Coalition*, a coalition of Texas-based plaintiffs challenged, under IIRIRA, the alleged future condemnation of its member's property and alleged a violation of their due process rights under that statute. 614 F. Supp. 2d 54 (D.D.C. 2009). This Court determined that where it was unclear that "any of the property owned by the plaintiff's members will actually be condemned" that no relief was available because the issue was not yet ripe. *Id.*

at 62.  Further, the court found that IIRIRA does not permit plaintiffs to preemptively challenge

future construction, *id.* at 60, and that the statute itself gives rise to no independent cause of

action.  *Id.* at 63.

      As Plaintiff states, "Defendants have not sought to acquire an interest in NABA property

. . . ."  Compl. ¶ 83.  Because Defendants have not sought to acquire an interest in Plaintiff's

property, IIRIRA's provisions are not yet applicable.  *Tex. Border Coal.*, 614 F. Supp. 2d at 60

(condemnation proceedings commence following a determination by DHS, and "nothing in the

statute permits a property owner to prevent the initiation of such proceedings through injunctive

relief or otherwise").  If and until such a time as an acquisition of property should occur, Plaintiff

is not entitled to the protections or process afforded by the statute.  *Id.* ("It would . . . thwart

congressional will, to allow the plaintiff's members to preemptively challenge an anticipated

condemnation when the Department's decision to pursue this course has not yet been rendered.")

(footnote omitted).  Finally, and most fatal to its claim under IIRIRA is that this provision of the

statute does not create a private right of action.  *Id.* at 63.  As this Court in *Texas Border

Coalition* noted, the statute by its own terms may not be "construed to . . . create or negate any

right of action for a . . . person or entity affected by this subsection" and in bringing such a claim,

"plaintiff seeks to pursue a claim for which no private right of action has been created."  *Id.*

(emphasis, quotation, and citation omitted).  Even so, Plaintiff is not without options.  A formal

condemnation is accompanied by its own process and Plaintiff may still avail itself of the due

process available in that event; the availability of that future remedy further supports that this

claim is premature.  *See Downwind LLC v. United States Dep't of Energy*, No. 3:16-CV-207-

DPM, 2017 WL 6542747, at *3 (E.D. Ark. Dec. 21, 2017*)* (citing *National Park Hospitality

Association v. Department of the Interior*, 538 U.S. 803, 807-08 (2003)).  Therefore, Plaintiff's

allegation that its due process rights under IIRIRA have been violated is unripe, not supported by the statute, and must be dismissed.

Similarly, Plaintiff's Third Claim alleges that future construction of border infrastructure constitutes an "occupation" in violation of the due process clause.  Compl. ¶ 82.  For the reasons presented above, Plaintiff's claim of a future due process violation relating to possible border fence construction is unripe.  Plaintiff does not, and cannot, allege a deprivation as required to allege a violation of due process.  *See Tex. Border Coal.*, 614 F. Supp. 2d at 63–64 (a claim based on an anticipated condemnation is not ripe); *see also Ky. Dep't of Corrections,* 490 U.S. at 460 (a plaintiff must allege an actual deprivation and a lack of process related to that deprivation to successfully bring a claim under the due process clause of the Fifth Amendment).  The alleged harm here is a proposed, future activity that has not caused a present deprivation.  Thus, to the extent Plaintiff's due process claim in Paragraph 82 is based upon a future deprivation, it must be dismissed.[8]

Finally, Plaintiff alleges destruction of property and failure to acquire property.  Compl. ¶¶ 81, 83.  Although Plaintiff alleges that there is "no lawful basis" for the intrusion, *id.* ¶ 83, elsewhere it cites authority for the United States to enter private property near international borders.  *See id.* ¶ 41 (providing patrol authority for entry without permission or warrant within

---

[8] Further, to the extent this same paragraph alleges that a taking will occur based upon future fence construction, Compl. ¶ 82, that claim similarly fails because a takings claim can only arise after a taking has occurred.  *Reoforce, Inc. v. United States*, 853 F.3d 1249, 1263 (Fed. Cir.), *cert. denied*, 138 S. Ct. 517 (2017) (an injury must be "'concrete' and 'actual or imminent, not 'conjectural' or 'hypothetical'") (citation omitted).  Paragraph 82 only alleges future hypothetical harm and does not allege that a taking has already occurred.  *See* Compl. ¶ 82 (alleging that the "*[p]roposed* border wall construction *will* take at least two-thirds of the [property] . . ." rather than alleging a past taking.) (emphasis added).  Thus, to the extent that the allegation in Paragraph 82 constitutes a prospective takings claim, that claim is unripe and must be dismissed.

twenty-five miles of the border).  By alleging an occupation for which it acknowledges lawful authority exists, Plaintiff alleges occupation without compensation, a claim for which a remedy is available.  The Tucker Act acts as a safety net to prevent any uncompensated deprivation.[9] *See Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 149–50 (1974); *Littlewolf v. Lujan*, 877 F.2d 1058, 1065 (D.C. Cir. 1989)(noting that the "safety net" serves as protection where a statutory scheme may "result in payment of less than the constitutional minimum") (quotation and citation omitted).  To the extent Plaintiff attempts to bring a claim of an uncompensated occupation here, that claim is premature because the Plaintiff has not sought to bring its claim under the Tucker Act.  *Preseault v. ICC*, 494 U.S. 1, 11 (1990) (a claim alleging a property deprivation against the United States is "premature until the property owner has availed itself of the process provided by the Tucker Act.") (quoting *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985)(*superseded by statute on other grounds by Black Warrior Riverkeeper, Inc. v. Ala. Dep't of Trans.*, Nos. 11-cv-267, 13-cv-794, 2016 WL 233672 (M.D. Ala. Jan. 19, 2016)).  Although Plaintiff has not requested monetary compensation, so long as Tucker Act jurisdiction is available, "the plaintiff is barred from suing for equitable relief in district court."  *Student Loan Mktg. Ass'n*, 104 F.3d at 401.

---

[9] In addition to patrol activity by USBP, Plaintiff alleges that contractors have unlawfully entered its property.  *See, e.g.*, Compl. ¶¶ 3, 5, 12, 42, 55.  Any claim that a private party has entered another's property without permission is a claim of trespass.  *Firfer v. United States*, 208 F.2d 524, 528 (D.C. Cir. 1953), implied overruling recognized on other grounds by Toomer v. William C. Smith & Co., 112 A.3d 324 (D.C. 2015).  To the extent Plaintiff challenges the presence of the contractors under a theory of agency liability, the claim is still a trespass and must be brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2679(b)(1); *Black v. Sheraton Corp. of Am.*, 564 F.2d 531, 539 (D.C. Cir. 1977) (the "government may be sued on a claim of trespass") (citation omitted).

Therefore, Plaintiff's Fifth Amendment claim is premature and must be dismissed as unripe.

**B.  Plaintiff's Fourth Amendment Claim Fails as a Matter of Law because the Fourth Amendment does not Protect Plaintiff's Open Field from Incursion by Law Enforcement.**

The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. CONST. amend. IV.  Plaintiff has not clearly pleaded a search or a seizure, instead asserting a generalized Fourth Amendment claim styled as an "Unlawful Incursion into Private Property."  Compl. ¶¶ 84–89 ("Fourth Claim for Relief").  Ultimately, whether this Court construes Plaintiff's claim as an unlawful search or seizure makes no difference.  Because the interests Plaintiff seeks to protect—its interests in non-residential property it has opened to public use for commercial purposes, in an area near the border that is open to government searches under express statutory authority—fall beyond the Fourth Amendment's reach, Plaintiff's Fourth Amendment claims fail as a matter of law and should be dismissed.

Government conduct may constitute a Fourth Amendment "search" in one of two ways.  First, under the "property based approach," the government "searches" property when it "physically occupie[s] [the] property for the purpose of obtaining information."  *United States v. Jones*, 565 U.S. 400, 404–06 (2012).  Importantly, under the property based approach, the Fourth Amendment's protections are strictly limited to "persons, houses, papers, and effects."  *See id.* at 411 n.8 ("The Fourth Amendment protects against trespassory searches only with regard to those items ('persons, houses, papers, and effects') that it enumerates."); *see also, e.g.*, *Patel v. City of Montclair*, 798 F.3d 895, 898 (9th Cir. 2015) ("Private commercial property is not one of the

enumerated items that the Fourth Amendment protects.").  Second, under *Katz v. United States* and its progeny, government conduct may constitute a search where the government intrudes upon a person's reasonable expectation of privacy.  389 U.S. 347, 353 (1967); *see also California v. Ciraolo*, 476 U.S. 207, 211 (1986) (citing *Katz*, 389 U.S. at 347).  A plaintiff's expectation of privacy is reasonable where: (1) the plaintiff's conduct exhibits a subjective expectation of privacy and (2) that subjective expectation is objectively reasonable.  *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (citations omitted), *superseded by statute on other grounds by In re Certified Question of Law*, 858 F.3d 591 (FISA Ct. Rev. 2016).

Of course, government conduct may offend the Fourth Amendment through seizure as well as search, for "the [Fourth] Amendment protects property as well as privacy."  *Soldal v. Cook Cty.*, 506 U.S. 56, 62 (1992) (footnote omitted).  "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."  *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (footnote omitted); *accord Soldal*, 506 U.S. at 61 (quoting *Jacobsen*, 466 U.S. at 113).  If a court finds a meaningful interference, "[w]hether the Amendment was in fact violated . . . requires determining if the seizure was reasonable."  *Id.* at 61–62.  However, the Fourth Amendment does not protect any and all property interests; the Amendment's text "'indicates with some precision the places and things encompassed by its protections': persons, houses, papers, and effects."  *Florida. v. Jardines*, 569 U.S. 1, 6 (2013) (citation omitted).  Consequently, while government interference with a real property interest in the home may implicate the Fourth Amendment, *see United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 49 (1993) (holding that the Fourth Amendment places limitations on "seizures [of homes] conducted for purposes of civil forfeiture") (citation omitted); *Bridgeforth v. Bronson*, 584 F. Supp. 2d 108, 118 (D.D.C. 2008) (holding that eviction from a home without

a court order is a seizure prohibited by the Fourth Amendment), the Amendment's protections for real property are "limited to the home and its curtilage . . ." *Klemic v. Dominion Transmission, Inc.*, 138 F. Supp. 3d 673, 695 (W.D. Va. 2015); *accord Presley v. City of Charlottesville*, 464 F.3d 480, 492 n.2 (4th Cir. 2006).  For other types of real property interests, "[t]he Government's physical intrusion on such an area . . . is of no Fourth Amendment significance." *Jones*, 565 U.S. at 411 (footnote omitted).[10]

The Supreme Court has repeatedly instructed that "the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers and effects,' is not extended to the open fields." *Hester v. United States*, 265 U.S. 57, 59 (1924); *accord, Oliver v. United States* 466 U.S. 170, 177 (1984) (holding that "the government's intrusion upon the open fields is not one of those 'unreasonable searches' proscribed by the text of the Fourth Amendment."); *Jardines*, 569 U.S. 1, 6 (2013) (holding that "an officer may (subject to *Katz*) gather information in what we have called 'open fields'—even if those fields are privately owned—because such fields are not enumerated in the Amendment's text.") (citation omitted).  This proposition is the rule because "open fields do not provide the setting for those intimate activities that the Amendment is intended to shelter from government interference or surveillance." *Oliver*, 466

---

[10] That is not to say there exists no remedy for such "physical intrusions."  Though the Fourth Amendment's protections are limited to the home and its curtilage, "[t]he law of trespass . . . forbids intrusions upon land that the Fourth Amendment would not proscribe.  For trespass law extends to instances where the exercise of the right to exclude vindicates no legitimate privacy interest." *Oliver*, 466 U.S. at 183–84 (footnote omitted).  Any such trespass claim against the United States must be brought pursuant to the limited waiver of sovereign immunity in the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2679(b)(1), including the requirement for the Plaintiff to have exhausted its administrative remedies before filing suit in the Federal District Court.  28 U.S.C. §§ 2401(b), 2675(b).

U.S. at 178–79; *accord United States v. Beene*, 818 F.3d 157, 163 (5th Cir. 2016) (citing *Oliver*, 466 U.S. at 179).

The Supreme Court has further explained that "[a]n open field need be neither 'open' nor a 'field' as those terms are used in common speech." *Oliver*, 466 U.S. 180 n.11; *see also Beene*, 818 F.3d at 162–63 (holding that a driveway is not part of the curtilage of a home and thus qualifies as an "open field"); *Dow Chem. Co. v. United States*, 476 U.S. 227, 239 (1986) (holding that the open areas of an industrial plant are "open fields"). Rather, in determining whether an area is part of the curtilage of a home, protected by the Fourth Amendment, or an open field, and thus beyond its reach, courts examine four factors: (1) the proximity of the area to the home; (2) whether the area is within the bounds of an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken to shield the area from the public eye. *United States v. Dunn*, 480 U.S. 294, 301 (1987) (citation omitted); *see also Tri-State Steel Const., Inc. v. Occupational Safety & Health Review Comm'n*, 26 F.3d 173, 178 (D.C. Cir. 1994) (J. Williams, concurring) (citing *Dunn*).[11]  A subjective intent to exclude is not determinative; that a government agent must clamber over exterior or interior fencing does not alter the nature of an open field. *Dunn*, 480 U.S. at 304.

Plaintiff's Complaint fails to allege that the Butterfly Center is anything other than an open field, unprotected by the Fourth Amendment. Per the Complaint, the Center's grounds constitute a "100-acre wildlife center and native species botanical garden" with "trails for exploration, observation and conservation areas, educational exhibits and a plant nursery." Compl. ¶ 46. Plaintiff alleges that "tens of thousands of people each year" visit the center, and

---

[11] Plaintiff's Complaint does not allege the presence of a home on the Butterfly Center property.

that "[o]n any given day, one can see 100 species of wild butterflies and as many as 200,000 individual butterflies, none of which is held in captivity at the Butterfly Center." *Id.*  It is plain that the Butterfly Center is a literal open field—a wildlife habitat, open daily to visitors, where Plaintiff does not enjoy a reasonable expectation of privacy.  Because the area at issue is an open field, Plaintiff can plead no Fourth Amendment injury, and Plaintiff's Fourth Amendment claim should be dismissed.  To the extent Plaintiff seeks an injunction to prevent further "incursions" by CBP in alleged violation of the Fourth Amendment, that request must also be denied, for "[e]ven if [Government] officials were likely to return to the same part of [Plaintiff's] property for further inspections, those would also be open-field searches not subject to Fourth Amendment protection."  *Knick v. Twp. of Scott*, 862 F.3d 310, 318 (3d Cir. 2017), *cert. granted in part*, 138 S. Ct. 1262 (2018).

Because the alleged violations occurred in an open field, Plaintiff's Fourth Amendment claim would fail regardless of the property's geographical location.  But the conduct at issue here occurred at the border, an area where the Fourth Amendment's protections are even more limited.  *See, e.g.*, *United States v. Ramsey*, 431 U.S. 606, 616–19 (1977) ("This longstanding recognition that searches at our borders without probable cause and without a warrant are nonetheless 'reasonable' has a history as old as the Fourth Amendment itself.") (footnote omitted); *Carroll v. United States*, 267 U.S. 132, 154 (1925) (recognizing the government's right to stop and search vehicles at border crossings), *abrogation recognized on other grounds by State v. Casson*, No. 1104016644, 2011 WL 4638801 (Del. Super. Ct. 2011).  As discussed above and in Plaintiff's Complaint, Compl. ¶ 41, 8 U.S.C. § 1357(a)(3) allows USBP agents "access to private lands, but not dwellings, for the purpose of patrolling the border . . ." on those

private lands within twenty-five miles of an external border of the United States.[12]  The entire

Butterfly Center is within twenty-five miles of the southern border, and thus CBP's activity falls

within the statute's bounds.  The relevant statutory authorities thus reflect and buttress the

circumscribed reach of the Fourth Amendment in this border crossing area and affirm CBP's

right to access the lands at issue.[13]  On their face, Plaintiff's Fourth Amendment claims fail to

state a claim a matter of law—CBP is authorized by statute to access Butterfly Center lands, and

Plaintiff cannot claim a Fourth Amendment right to be free of that activity upon the open fields.

This Court should dismiss Plaintiff's Fourth Amendment claims.

## CONCLUSION

The Court should dismiss Plaintiff's Complaint in its entirety.  The NEPA claim fails to

state a claim upon which relief can be granted and is not ripe.  The ESA claims suffer from

jurisdictional deficiencies, are unripe, and fail to state a claim upon which relief can be granted.

And finally, the constitutional claims are unripe and fail to state a claim upon which relief can be

granted.  Defendants therefore request that Court dismiss all claims in Plaintiff's Complaint.

Respectfully submitted this 25th day of May, 2018.


JEFFREY H. WOOD
Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

/s/ Lila C. Jones
LILA C. JONES (NM Bar No. 148098)

---

[12] While Plaintiff's Complaint implies that 8 U.S.C. § 1357(a)(3) may constitute a regulatory taking of Plaintiff's property, it does not challenge the constitutionality of that statute.
[13] Likewise, Plaintiff's Complaint acknowledges the right of CBP officials to patrol through private lands abutting the border, an admission which further disclaims a reasonable expectation of privacy on those lands.  See Compl. ¶ 41.

Trial Attorney
Natural Resources Section
601 D St. NW, 3rd Floor
Washington, D.C. 20004
Tel: (202) 514-9859
Fax: (202) 305-0506
lila.jones@usdoj.gov

*/s/ Clifford Stevens*
CLIFFORD STEVENS (DC Bar No. 463906)
Senior Attorney
Wildlife & Marine Resources Section
601 D St. NW, 3rd Floor
Washington, D.C. 20004
Tel: (202) 353-7548
Fax: (202) 305-0275
clifford.stevens@usdoj.gov


*/s/ Tyler M. Alexander*
TYLER M. ALEXANDER (CA Bar No. 313188)
Trial Attorney
Natural Resources Section
601 D St. NW, 3rd Floor
Washington, D.C.  20004
Tel: (202) 305 0238
Fax: (202) 305-0506
tyler.alexander@usdoj.gov

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of May, 2018, a copy of the foregoing Memorandum was filed via the Court's electronic case filing (ECF) system, which will send notice to all counsel of record.

/s/ *Tyler M. Alexander*
TYLER M. ALEXANDER (CA Bar No. 313188)
Trial Attorney
Natural Resources Section
601 D St. NW, 3rd Floor
Washington, D.C.  20004
Tel: (202) 305 0238
Fax: (202) 305-0506
tyler.alexander@usdoj.gov