UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

```
–––––––––––––––––––––––––––––––––––––––––––––––  x
                                                 :
North American Butterfly Association,            :
                                                 :
                   Plaintiff,                    :
                                                 :
              v.                                 :   No. 1:17-cv-02651-RJL
                                                 :
Kristjen M. Nielsen, et al,                      :
                                                 :   DECLARATION OF
                   Defendants.                   :   MARIANNA TREVIÑO
                                                 :   WRIGHT
                                                 :
–––––––––––––––––––––––––––––––––––––––––––––––  x
```

MARIANNA TREVIÑO WRIGHT hereby declares as follows:

1.     I am the Executive Director of the North American Butterfly Association's National Butterfly Center in Mission, Texas (the "Butterfly Center"). I have held this position since July 2012. In my capacity as Executive Director, I am responsible for the operations of the Butterfly Center, planning and overseeing daily activities, and cooperating and communicating with stakeholders as well as local and federal law enforcement agencies.

2.     In my position, I am personally aware of Department of Homeland Security ("DHS"), U.S. Customs and Border Protection ("CBP"), and U.S. Border Patrol ("Border Patrol" and, together with DHS and CBP, the "Agencies") activities at the Butterfly Center. I make this declaration based on personal knowledge.

3.     The Butterfly Center is a 100-acre nature preserve founded in 2002 on the site of a former onion farm. The property is a well-maintained nature center and refuge,

with trails, events, and activities for visitors. A levee subdivides the property, with approximately one-third of the property north of the levee and two-thirds of the property below it. The Butterfly Center has a visitor's pavilion, separate offices, classrooms, lodges, camping areas, nurseries, gardens, blinds for wildlife photography, sheds, plant and wildlife refuges, including refugia containing endangered plants, forests, and trails. Each of these areas is carefully cultivated to further the Butterfly Center's conservation and education goals.

4.      During my tenure at the Butterfly Center, NABA and the Butterfly Center have had a cooperative relationship with the Agencies. We are as transparent as possible with the Agencies, including by providing them with information about our employees and vehicles and maintaining regular communication about our planned events and activities. We regularly share photographic and video information about suspicious activities, people, and vehicles with my Community Border Liaison agent and sector leadership. We have always allowed Border Patrol access to our property for their patrol. In June 2014 we executed a license agreement allowing CBP, through Border Patrol, to "maintain and repair roadways to ensure that CBP is able to safely and effectively patrol the United States border."

5.      Notwithstanding our good working relationship, the Agencies' actions on the Butterfly Center and their relationship with employees and guests turned hostile toward the beginning of 2017. For example, on June 30, 2017, four CBP vehicles detained Max Muñoz, the Butterfly Center Director of Operations, two additional Butterfly Center employees, and Max's two young daughters on the Butterfly Center

2

property as they drove south past the levee.  The Butterfly Center shares updated

information about all Butterfly Center vehicles and employees.  Notwithstanding Max's

and others' lawful presence on the Butterfly Center, and the Agencies' access to vehicle

and employee information, CBP detained them, called in a helicopter, and invited the

Mission Police Department onto the property.  This type of confrontation had never

happened before in my many experiences with the Agencies.  From then on, I perceived

an increased frequency of the Agencies' officers at the Butterfly Center.

6.      On July 17, 2017, I received a visit from a federal official who warned me

recent reports about the border wall being built at the nearby Santa Ana wildlife refuge

were just the start: the wall would be built on top of the levee on the Butterfly Center

property and connect to the existing section west of the Butterfly Center in Penitas.  The

official has asked to remain anonymous for fear of retaliation.

7.      On July 20, 2017, I drove south over the levee with a potential bidder for a

milkweed planting project and came across a work crew.  The men wore work suits and

protective equipment, including hard hats, safety glasses, neon vests, and chainsaw chaps.

They had heavy equipment, including a Brush Hog and an articulating Brush Boom, as

well as chainsaws that they were using to destroy carefully rehabilitated native plants and

trees.  They had already cleared up to 18 feet on each side of the road.  Nobody had

notified NABA or the Butterfly Center that these individuals would be coming onto the

property, or otherwise specified that work would be done.

8.      When I asked the men what they were doing, they said they were "clearing

this land."  The men, from Tikigaq Construction, said that they were working on the

instructions of CBP. I spoke to the supervisor, Peter Sydow, who told me he was on the phone with an official from CBP "Real Estate" and he flashed a paper with photos of our back entrance and roadway. He told me CBP had sent him to clear the 1.2 miles from the levee to the river.

9.      Because it was unusual for CBP to order work at the Butterfly Center without consulting with the Center, I contacted my Community Border Liaison at CBP, Jose Acosta. He told me he did not know what was going on. The next day, five CBP agents from the local McAllen Field Office and the Rio Grande Valley Sector Command Office, led by Agent Javier Rios, arrived at the Butterfly Center and I showed them the construction work. They said CBP would provide silt fencing along the cleared area so the habitat could regrow.

10.     I later received a call from another CBP agent who advised that the work was in fact ordered by CBP, and was related to unspecified "tactical infrastructure." He said more information would be provided at a later time.

11.     On August 1, 2017, I received an unscheduled visit from Chief Manuel Padilla, Jr., Chief Patrol Agent for the Rio Grande Valley Border Patrol Sector, in plain clothes. He was accompanied by two agents, one in plain clothes and one in uniform. Chief Padilla showed me, among other things, a poster detailing a proposed border wall for the area. The wall would be built along the existing levee, where I had discovered the men working days before.

4

12.     In this conversation, Chief Padilla additionally referred to "sensors" that had been placed throughout the Butterfly Center.  Chief Padilla refused to disclose the locations and types of these devices.

13.     CBP has subsequently told us that it has multiple cameras on the property, and refused to identify the locations of these cameras.  I have read in newspapers that CBP may be working with the Texas Department of Public Safety ("DPS") to place and monitor these cameras on our private property.

14.     When I asked what authority CBP's agents and contractors had to enter the Butterfly Center to perform work, Chief Padilla claimed that CBP had authority within 25 miles of the border to "enter private property to take operational control for the prevention of unlawful activity."  He also said that private contractors with CBP's Comprehensive Tactical Infrastructure Maintenance and Repair division ("CTIMR") would be back, the next time with a "green uniform presence."

15.     This was not the first I heard about the "border wall" being built along the levee on the Butterfly Center property.  In February 2017, Hidalgo County officials adopted a proposal from a private engineering company that put the border wall in the Butterfly Center property, and sent the proposal to CBP.  When we in the community criticized the officials for the proposal, the County officials said they did not submit the proposal as an "invitation" and that they opposed the border wall; but because it "looked like there was no way of stopping it," the only option was to try to guide the wall.

16.     At a later August 2017 meeting, CBP revealed a map for the border wall that showed the wall being built on our property on top of the levee.  Because County

5

officials had proposed the line, CBP officials said the location of the wall reflected "local wishes."

17.     All the while, the Agencies' treatment of Butterfly Center employees and guests got more hostile. For example, on August 8, 2017, Senator John Cornyn sent a representative to the Butterfly Center. We were twice detained as I drove the Senator's representative around the property. Even when we were not stopped, the Agencies' officers appeared to follow us to observe our activities on our property.

18.     On November 27, 2017, three separate people—all of whom were authorized to be at the Butterfly Center—were separately prevented by the Agencies' officers from walking over the levee to access the bulk of the Butterfly Center property. According to the officer restricting our guests' access to our property, the area south of the levee—where we had found the contractors—was "off limits."

19.     These instances are only examples of the Agencies' interference with the Butterfly Center's use of the property. Agents in a helicopter circled me and documentary filmmakers as we walked south over the levee for nearly ten minutes on February 6, 2018. The helicopter only left us to our business after I contacted my Liaison with CBP to demand that it do so. Later that week, on February 10, at least five vehicles confronted one of my employees and 15 Texas Master Naturalists as they walked south of the levee to see the future home of a Monarch waystation and restored wetland.

20.     In addition to these encounters, I have found people doing unauthorized work on the property. For example, on March 28, 2018, I found two men in plain clothes who had parked a DHS vehicle on the property and were carrying unspecified electronic

devices.  On April 11, I and members of the media encountered an older model black

Chevrolet on the property.  The men inside were wearing plain clothes, and the vehicle

had civilian plates.  When confronted, they claimed that they were on the property as part

of a "sensor crew."  The license plate, AX4-1634 is registered to "Alexis Excavating" of

San Antonio.  The Agencies originally disclaimed knowledge of the vehicle, and

eventually claimed that the vehicle was working on behalf of Border Patrol and DPS.

According to a DPS officer I contacted about the vehicle, "Alexis Excavating" is a

corporate cover for civilian contractors working with Border Patrol and DPS.

21.     The 100-acre Butterfly Center previously had gates to protect the southern

70 acres of the property.  We provided the Agencies with access to these gates.  In the

past year, these gates have been removed, and I believe it is CBP that is removing them.

This prevents us from excluding anybody from our property, or otherwise protecting

ourselves from unauthorized visitors.

22.     Between April 20 and April 28, 2018, officers repeatedly locked Butterfly

Center employees out of the property through the gates that remain on the property, by

affixing new locks to the gates without giving us access.  I have communicated this issue

to Chief Padilla, and he told me that the Butterfly Center "is the only property CBP has

these problems with."

23.     On April 30, 2018, we received a request from the Agencies—specifically,

DHS and CBP—for an "irrevocable" right of entry for a period of 18 months for "[t]he

Government's officers, employees, agents, and contractors" in connection with "the

Government's assessment of the Property for Border Infrastructure Projects in the Rio

Grande Valley Sector." A true and correct copy of that request, titled "U.S. Customs and Border Protection Department of Homeland Security Right-of-Entry For Survey and Site Assessment," is attached as Attachment A.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on _June 15_, 20_18_

_____

*Marianna Treviño Wright*

8

# ATTACHMENT A
## Right-of-Entry Request

1200 Pennsylvania Avenue NW
Washington, DC 20229



**U.S. Customs and
Border Protection**

North American Butterfly Asso.
4 Delaware Road
Morristown, NJ  07960

To Whom it May Concern:

   The purpose of this letter is to request your written permission to enter upon your land in accordance with the enclosed Right of Entry for Survey and Site Assessment (ROE-S) and accompanying map.  Once you have had an opportunity to review the enclosed documents we invite you to call or email the below listed point of contact to review the material with you and/or to address any questions you may have.

   You are receiving this letter because the U.S. Government has identified a portion of your property that we wish to access for the purpose of conducting environmental assessments, property surveys, appraisals and any other such work which may be necessary and incidental to the Government's assessment of the Property for possible acquisition in support of U.S. Customs and Border Protection's (CBP) construction of border infrastructure authorized by Congress in the Fiscal Year 2018 appropriation and other funded tactical infrastructure projects.

   Border security tactical infrastructure, such as border walls, lighting, and roads, are critical elements to gain effective control of our Nation's borders.  The purpose of border security infrastructure is to deter illicit cross-border activity such as drug smuggling, border violence and illegal immigration.

   The planned assessments outlined in the ROE-S are scheduled to occur intermittently over the time period specified in the document.  Only the portion of your property that may be affected by construction of border security tactical infrastructure, as shown on the map of the enclosed ROE-S, will be environmentally assessed by the U.S. Government, its agents, employees, and contractors.  The ROE-S is required beyond the proposed project area for access to each parent tract monument in order for the surveyor to physically locate the subject area in alignment with adjoining property boundaries. State law requires the surveyor to produce work of sufficient quality as to prevent boundary line disputes and be technically unbiased for all impacted parties. By signing this form, you are granting written permission to the U.S. Government, its agents, employees, and contractors to conduct the assessment activities described.  Those activities may commence immediately following execution of the document.

   We hope that you and other landowners in the Rio Grande Valley will assist us in our strategic efforts to secure our Nation's borders.  Enclosed for your review are three copies

of the ROE-S form.  If you have no further questions, please retain one copy of the ROE-S for your records and return two signed copies in the enclosed, pre-addressed and postage paid envelope.  Upon receipt of your signed copies, the U.S. Government will complete and return a fully executed copy for your records.  If you are acting in an agent capacity for a corporation or organization, please fill in the Certificate for Corporations and Partnerships found on page 3.  If your property is currently under lease, license or is otherwise occupied, please have the tenant or licensee fill in the right-of-entry portion for tenant information so consent from that individual can be obtained as well.

CBP has collaborated with the U.S. Army Corps of Engineers (USACE) to obtain access to the real estate to support the work effort described above.  Therefore, if you have any questions you can speak with a USACE Realty Specialist toll free by calling -1-866-848-1221 or you can make contact via email at border.infrastructure.projects@usace.army.mil

Sincerely,

Loren Flossman, Director
Border Patrol & Air and Marine
Program Management Office
U.S. Customs and Border Protection

Enclosure

cc:
Barron and Adler LLC
808 Nueces Street
Austin, TX  78701

**Border Infrastructure Project(s)**                    DACW63-9-18-_____

## U.S. CUSTOMS AND BORDER PROTECTION

## DEPARTMENT OF HOMELAND SECURITY

### Right-of-Entry For Survey and Site Assessment

The undersigned, hereinafter called the "Owner", hereby grants to the United States of America, hereinafter called the "Government", a temporary right-of-entry upon Owner's property described below, hereinafter called the "Property."  This right-of-entry is granted upon the following terms and conditions:

1. The Government's officers, employees, agents, and contractors shall have the right to enter upon the Property for the purpose of conducting environmental assessments and property surveys, including the right to temporarily store, move and remove necessary equipment and supplies; survey, stake out, appraise, bore and take soil and/or water samples, and perform any other such work which may be necessary and incidental to the Government's assessment of the Property for Border Infrastructure Projects in the Rio Grande Valley Sector area of responsibility.

2. This right-of-entry is irrevocable for a period of Eighteen (**18)** months from the date of this instrument.

3. The rights granted herein include the right of ingress and egress on other lands of the Owner not described below, provided such ingress and egress is necessary to access the Property and is not otherwise conveniently available to the Government.

4. All tools, equipment, and other property taken upon or placed upon the land by the Government shall remain the property of the Government and may be removed by the Government at any time within a reasonable period after the expiration of this right-of-entry.

5. If any action of the Government's officers, employees, agents, or contractors in the exercise of this right-of-entry results in damage to real property, an administrative claim can be made using a Standard Form (SF) 95 (Claim for Injury, Damage, or Death).  The SF 95 must include supporting documentation and state a claim for monetary damages in a sum certain amount for any alleged loss or damage of property, and must be filed within two years after the claim accrues.  Please submit the SF 95 and supporting documentation to the CBP Port of Entry or United States Border Patrol station nearest to where the alleged damages occurred.

6. The Property that is subject to this right-of-entry is located in the State of Texas, County of Hidalgo, and is shown on the attached Exhibit Map.

7. I affirm that I have the authority to grant this right-of-entry onto the Property described above.

1

**Border Infrastructure Project(s)**                    DACW63-9-18-_____

Dated this _____ day of _____, 20____     THE UNITED STATES OF AMERICA

_____                   By: _____
Owner's signature                                        Loren Flossman, Director
                                                         Border Patrol Air and Marine
_____                        Program Management Office,
Owner's printed name                                     Facilities Management and
                                                         Engineering,
Owner's mailing address:                                 U.S. Customs and Border Protection,
_____                        Department of Homeland Security

_____

_____

_____

Home Telephone: _____

Work Telephone: _____

**Owner requires notification prior to entry.   Yes    No      (please circle one)**

If yes, please provide the primary and alternate point of contact (POC) and phone
number and/or email.
Primary POC: _____
Alternate POC: _____

2

**Border Infrastructure Project(s)**                          **DACW63-9-18-_____**


### CERTIFICATE OF AUTHORITY
*(applicable for Corporations and Organizations)*

I, _____*(name)*, certify that I am the _____

*(position held in organization)* of the _____*(organization)*, duly organized

and registered in the State of Texas; that _____*(executor of*

*instrument)*, who signed the foregoing instrument on behalf of the grantee, was then

_____*(position of executor of instrument)* of said

_____*(organization)*.  I further certify that the said officer was acting

within the scope of powers delegated to this officer by the governing body of the grantee in

executing said instrument.

   **IN WITNESS WHEREOF,** I have hereunto set my hand, and the seal of the

_____*(organization)*, this _____day of_____,

20_____.


By: _____

Typed Name: _____

Title: _____


**NOTE**: THE PERSON SIGNING THE ABOVE CERTIFICATE <u>CANNOT</u> BE THE SAME
PERSON THAT SIGNED THE RIGHT-OF-ENTRY.

3

**Border Infrastructure Project(s)**                    **DACW63-9-18-_____**


CONSENT OF TENANT:  *(if applicable)*

I hereby consent to the use of the property by the Government in accordance with this right-of-entry.


_____

Tenant's Signature

_____

Tenant's Printed Name

Owner's Mailing Address:

_____

_____

_____

Home Telephone: _____

Work Telephone: _____

_____


**Tenant requires notification prior to entry.     Yes          No     (please circle one)**

If yes, please provide the primary and alternate point of contact (POC) and phone number and/or email.
Primary POC: _____
Alternate POC: _____

4



Border Infrastructure Project- RGV-03 Segment H

RGV Sector / Hidalgo County