# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **NORTH AMERICAN BUTTERFLY ASSOCIATION**, | ) No. 1:17-cv-2651 (RJL) |
| Plaintiff, | ) |
| v. | ) **DEFENDANTS' REPLY IN** |
| **NIELSEN**, *et al*., | ) **SUPPORT OF MOTION TO** ) **DISMISS** |
| Defendants. | ) |

**Table of Contents**

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 3

    I.   PLAINTIFF'S NATIONAL ENVIRONMENTAL POLICY ACT CLAIM FAILS ... 3

        A.    Plaintiff Fails to Identify a Final Agency Action and its NEPA Claim is Not Ripe. ................................................................................................ 3

    II.  PLAINTIFF'S ENDANGERED SPECIES ACT CLAIMS FAIL .............................. 8

        A.    Plaintiff Fails to State a Valid ESA Claim for Future Wall Construction. . 8

        B.    Plaintiff Does Not Identify Any Other Action Triggering ESA Consultation. ....................................................................................... 9

        C.    Plaintiff's Section 7(a)(1) Claim Should be Dismissed. .......................... 15

    III. PLAINTIFF'S CONSTITUTIONAL CLAIMS MUST BE DISMISSED ................ 15

        A.    This Court Lacks Jurisdiction over Plaintiff's Claim of Physical Taking Based on Any Past Activities because the Exclusive Forum for that Claim is the Court of Federal Claims. ................................................................. 16

        B.    Plaintiff's Attempt to Create a Question of Fact as to its Fourth Amendment Claim Fails. ......................................................................... 21

            1.    Plaintiff Cannot Save its Fourth Amendment Claim by Asserting the Claims of Third Parties not Before the Court. ........................ 22

            2.    The Areas of the Butterfly Center at Issue in this Case are Open Fields. ..................................................................................... 23

CONCLUSION ................................................................................................... 25

## Table of Authorities

<u>Cases</u>

*Abbott Labs. v. Gardner,*
   387 U.S. 136 (1967) ............................................................................................................. 11

*Al–Owhali v. Ashcroft,*
   279 F. Supp. 2d 13 (D.D.C. 2003) ...................................................................................... 26

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .................................................................................................. 7, 20, 27

*Bd. Mach., Inc. v. United States,*
   49 Fed. Cl. 325 (2001) .................................................................................................. 25, 26

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................................................ 20

*Bennett v. Spear,*
   520 U.S. 154 (1997) ........................................................................................................ 9, 12

*Boyd v. Farrin,*
   958 F. Supp. 2d 232 (D.D.C 2013) ..................................................................................... 21

*Califano v. Sanders,*
   430 U.S. 99 (1977) .............................................................................................................. 11

*Ciba-Geigy Corp. v. U.S. EPA,*
   801 F.2d 430 (D.C. Cir. 1983) .............................................................................................. 9

*Ctr. for Biological Diversity v. Chertoff,*
   No. C–08–2999 MMC, 2009 WL 839042 (N.D. Cal. Mar. 30, 2009) .................................. 20

*Ctr. for Biological Diversity v. U.S. Dep't of Interior,*
   563 F.3d 466 (D.C. Cir. 2009) .............................................................................. 14, 15, 18

*Defs. of Wildlife v. Bureau of Ocean Mgmt., Regulation and Enf't,*
   791 F. Supp. 2d 1158 (S.D. Ala. 2011) .............................................................................. 15

*Dist. of Columbia v. Air Fla., Inc.,*
   750 F.2d 1077 (D.C. Cir. 1984) .......................................................................................... 21

*First English Evangelical Lutheran Church of Glendale v. Cty. of L.A.,*
   482 U.S. 304 (1987) ............................................................................................................ 23

*Florida v. Jardines,*
   569 U.S. 1 (2013) ................................................................................................................ 29

*Friends of Animals v. Ashe,*
   51 F. Supp. 3d 77 (D.D.C. 2014) ......................................................................... 7, 17, 22, 26

*Friends of The Earth, Bluewater Network Div. v. U.S. Dep't of Interior*,
    478 F. Supp. 2d 11 (D.D.C. 2007) ................................................................... 10, 15

*Hafen v. Pendry*,
    646 F. Supp. 2d 159 (D.D.C. 2009) ................................................................. 23, 24

*Hallstrom v. Tillamook Cty.*,
    493 U.S. 20 (1989) ................................................................................................. 17

*Horne v. Dep't of Agric.*,
    135 S. Ct. 2419 (2015) .......................................................................................... 23

*Katz v. United States*,
    389 U.S. 347 (1967) ............................................................................................... 29

*Kidwell v. Dep't of Army, Bd. for Corr. of Military Records*,
    56 F.3d 279 (D.C. Cir. 1995) ................................................................................ 23

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004) ............................................................................................... 28

*Laguna Gatuna, Inc. v. United States*,
    50 Fed. Cl. 336 (2001) ........................................................................................... 25

*Loretto v. Teleprompter Manhattan CATV Corp.*,
    458 U.S. 419 (1982) ............................................................................................... 25

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................... 28

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) ................................................................................................. 9

*Martinez v. United States*,
    333 F.3d 1295 (Fed. Cir. 2003) ............................................................................. 24

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*,
    417 F.3d 1272 (D.C. Cir. 2005) .......................................................................... 9, 10

*Nnaka v. Fed. Republic of Nigeria*,
    238 F. Supp. 3d 17 (D.D.C. 2017) ......................................................................... 22

*Oliver v. United States*,
    466 U.S. 170 (1984) ............................................................................................... 30

*Preseault v. ICC*,
    494 U.S. 1 (1990) ................................................................................................... 24

*Region 8 Forest Serv. Timber Purchasers Council v. Alcock*,
    993 F.2d 800 (11th Cir. 1993) .............................................................................. 29

*Ruckelhaus v. Monsanto Co.*,
    467 U.S. 986 (1984) ............................................................................................... 23

*Soldal v. Cook Cty.*,
  506 U.S. 56 (1992) ................................................................................................. 30

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ............................................................................................ 28

*Student Loan Mktg. Ass'n v. Riley*,
  104 F.3d 397 (D.C. Cir. 1997) ................................................................................ 24

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
  535 U.S. 302 (2002) ................................................................................................ 24

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
  136 S. Ct. 1807 (2016) ...................................................................................... 11, 12

*United States v. Dunn*,
  480 U.S. 294 (1987) ................................................................................................ 30

*United States v. James Daniel Good Real Prop.*,
  510 U.S. 43 (1993) .................................................................................................. 30

*United States v. Jones*,
  565 U.S. 400 (2012) ................................................................................................ 29

*Warth v. Seldin*,
  422 U.S. 490 (1975) ................................................................................................ 29

*Williams v. Spencer*,
  883 F. Supp. 2d 165 (D.D.C. 2012) .......................................................................... 7

*Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*,
  473 U.S. 172 (1985) ................................................................................................ 24

*Wyo. Outdoor Council v. U.S. Forest Serv.*,
  165 F.3d 43 (D.C. Cir. 1999) .................................................................................. 13

*Xingru Lin v. Dist. of Columbia*,
  268 F. Supp. 3d 91 (D.D.C. 2017) .......................................................................... 28

*Youngstown Sheet and Tube Co. v Sawyer*,
  343 U.S. 579 (1952) ................................................................................................ 25

## **Constitutions**

U.S. Const. amend. V ..................................................................................................... 22

## **Statutes**

5 U.S.C. § 551(13) ........................................................................................................ 10

5 U.S.C. § 704 ................................................................................................... 9, 12, 13

8 U.S.C. § 1103 ............................................................................................................. 13

8 U.S.C. § 1103(b) ................................................................................... 26

8 U.S.C. § 1357(a)(3) .............................................................................. 25

16 U.S.C. § 1540(g)(2)(A) ....................................................................... 20

16 U.S.C. § 1540(g)(2)(A)(i) ................................................................... 17

28 U.S.C. § 1346 ...................................................................................... 24

28 U.S.C. § 1491 ................................................................................. 8, 23

Pub. L. No. 115-141, § 230(a)(2), 132 Stat. 348 (March 23, 2018) ............ 11

**Regulations**

40 C.F.R. § 1508.18(a) .............................................................................. 7

8 C.F.R. § 287.1(c) ................................................................................... 20

8 C.F.R. § 287.8(c)(1)-(3) ........................................................................ 21

82 Fed. Reg. 8793 (Jan. 25, 2017) ............................................................ 4

**Other Authorities**

U.S. Customs and Border Protection, *Rio Grande Valley Sector Texas, Overview History*, https://www.cbp.gov/border-security/along-us-borders/border-patrol-sectors/rio-grande-valley-sector-texas (last visited June 19, 2018) ...................................................... 11

## INTRODUCTION

In a brief that reaches far beyond the allegations in the Amended Complaint, ECF No. 19 ("Complaint"), Plaintiff asks the Court to ignore the Complaint's incurable defects.[1]  *See* ECF No. 30, Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss ("Pl. Opp.").  Plaintiff's brief attaches two fact declarations with entirely new allegations not raised in its Complaint, pivots on its constitutional claims, and appears to concede two claims.  Plaintiff's Opposition does not save the Complaint from its defects, and the Complaint should be dismissed in its entirety.

Plaintiff's claims under environmental statutes should be dismissed.  First, Plaintiff's Complaint fails to challenge a final agency action as required to bring its National Environmental Policy Act ("NEPA") claim and thus fails to state a claim under Rule 12(b)(6).  This defect is not cured by Plaintiff's attempt to create a "totality of the circumstances" standard not supported by law.  Pl. Opp. at 11.  Similarly, Plaintiff's Endangered Species Act ("ESA") consultation claims also fail.  For Plaintiff to state a valid and ripe failure-to-consult claim under ESA Section

---

[1] Plaintiff's new factual averrals, provided as part of its Opposition brief, are improper and cannot be used to prop up Plaintiff's defective Complaint.  *Williams v. Spencer*, 883 F. Supp. 2d 165, 181 n.8 (D.D.C. 2012) ("Where the amended complaint does not make a claim, plaintiff cannot add a new claim through an opposition brief.").  As discussed in Defendants' opening brief, a motion to dismiss under Rule 12(b)(6) is generally confined to the allegations in the complaint.  Def. Br. at 10.  Plaintiff's Complaint must stand on its own and "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  As to 12(b)(1) arguments, Plaintiff may rely on materials outside the complaint, Def. Br. at 9, but Plaintiff may not use its opposition to bring entirely new claims. *Friends of Animals v. Ashe*, 51 F. Supp. 3d 77, 85 (D.D.C. 2014), aff'd, 808 F.3d 900 (D.C. Cir. 2015).  The Court should disregard all newly alleged claims in Plaintiff's Opposition brief, particularly those that rely upon the declarations rather than the Complaint.

7(a)(2), Plaintiff must identify an action authorized, funded or carried out by the Department of Homeland Security ("DHS") that may affect listed species, on which ESA consultation did not occur, and for which Plaintiff provided a valid 60-day notice of intent to sue. Plaintiff fails to identify any agency authorization of a new border barrier on its property or any other agency action affecting ESA-listed species on Plaintiff's property over which the Court has jurisdiction. Thus, the ESA Section 7(a)(2) claims fail and must be dismissed.

Plaintiff's constitutional claims also must be dismissed. Plaintiff attempts to save its constitutional claims by ignoring the statutory authority for the actions it challenges under the Fifth Amendment and by denying that its property is an open field—a question of law, not fact as Plaintiff argues—that does not enjoy Fourth Amendment protections. *See* Pl. Opp. at 20–23. Plaintiff also attempts, unsuccessfully, to expand its Fourth Amendment claim to third parties not before the Court. Plaintiff's attempts are unavailing and the claims should be dismissed.

Finally, Plaintiff effectively concedes two of its claims. In Paragraph 83 of its Complaint, Plaintiff alleged that it had not been afforded sufficient process under the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). Compl. ¶ 83. Defendants argued in their opening brief that such a claim is premature because no condemnation has commenced under the provision cited by Plaintiff. *See* ECF No. 25-1, Defendants' Memorandum in Support of Motion to Dismiss ("Def. Br.") at 33–34. Plaintiff makes no argument to the contrary and instead pivots to alleging a physical taking related to patrols and the alleged placement of sensors on its property. Pl. Opp. at 16–18. Although it is not clear that Plaintiff's Complaint makes such a claim, accepting Plaintiff's characterization of its Complaint, the takings claim must still be dismissed, because such a claim must be brought under the proper waiver of sovereign immunity in the Tucker Act. *See* 28 U.S.C. § 1491. Plaintiff also does not

dispute that it fails to state a valid ESA Section 7(a)(1) claim because it offers no response to Defendants' arguments on that point. *See* Def. Br. at 31–32. Plaintiff's claims under IIRIRA and ESA Section 7(a)(1) should be dismissed.

In sum, Plaintiff's Complaint suffers from myriad defects that deprive this Court of jurisdiction. The Court should dismiss the Complaint in its entirety.

## ARGUMENT

### I.   PLAINTIFF'S NATIONAL ENVIRONMENTAL POLICY ACT CLAIM FAILS

#### A.   Plaintiff Fails to Identify a Final Agency Action and its NEPA Claim is Not Ripe.

As discussed in Defendants' opening brief, a claim brought under NEPA must challenge a specific final agency action to fall within the limited waiver of sovereign immunity under the APA. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) (quoting 5 U.S.C. § 704); Def. Br. at 10. Although Plaintiff relies in part on a thirty-five year old District of Columbia Circuit case to support its version of what constitutes a final agency action, *see* Pl. Opp. at 9 (citing *Ciba-Geigy Corp. v. U.S. EPA*, 801 F.2d 430 (D.C. Cir. 1983)), the Supreme Court has more recently articulated the applicable standard. An agency action is final when (1) the action marks the consummation of the agency's decisionmaking process; and (2) the action is one by which rights or obligations have been determined or from which legal consequences flow. *Bennett v. Spear*, 520 U.S. 154, 177−78 (1997); *see Nat'l Ass'n of Home Builders v. U.S. Army Corps of Engineers*, 417 F.3d 1272, 1278 (D.C. Cir. 2005).

Plaintiff's Opposition asserts that several activities, strung together, constitute a final agency action. According to Plaintiff, those activities are: Presidential Executive Order 13767, a related Memorandum issued by the DHS Secretary, *see* Memorandum from John Kelly, Secretary, on Implementing the President's Border Security and Immigration Enforcement

Improvements Policies (February 20, 2017) (hereinafter "Kelly Memorandum"), the alleged brush clearing by contractors, and patrol activities by United States Border Patrol ("USBP") Agents that allegedly interfere with the Butterfly Center's staff and guests.  Pl. Opp. at 9–10. Plaintiff insists that, taken together, these activities constitute a final agency action and amount to "construction activities."  *Id.* at 10–11.  While Plaintiff also lists these various activities in its Complaint, it does not allege in the Complaint that any are a final agency action.  *See generally* Compl.  In attempting to combine them now to form allege a final agency action, Plaintiff ignores settled law regarding final agency action and attempts to create an entirely new standard. This attempt fails.

The identified activities do not individually or collectively represent the culmination of a decisionmaking process, or a decision from which legal consequences flow.  *Nat'l Ass'n of Home Builders*, 417 F.3d at 1278 ("[A]n agency action is final if, as the Supreme Court has said, it is 'definitive' and has a 'direct and immediate . . . effect on the day-to-day business' of the party challenging it.") (citations omitted).  As discussed in Defendants' opening brief, Def. Br. at 17–18, the Executive Order lacks both the particularity and the finality to qualify as a final agency action; it does not mention Plaintiff's property or the broader Rio Grande Valley Sector ("RGV Sector") where the property is located.  *See* Exec. Order No. 13,767, 82 Fed. Reg. 8793 (Jan. 25, 2017); *Friends of The Earth, Bluewater Network Div. v. U.S. Dep't of Interior*, 478 F. Supp. 2d 11, 23 (D.D.C. 2007) ("The APA defines an 'agency action' as including 'the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.'") (citing 5 U.S.C. § 551(13)).  The Kelly Memorandum, similarly, is not a final agency action and, like the Executive Order, lacks any specific reference to Plaintiff's property or the surrounding area.  *See id.*; *see also* Kelly Memorandum; Def. Br. at 17–18.  And, the

alleged brush clearing[2] and patrols are simply not decisionmaking activities at all, let alone the culmination of a decisionmaking process. *Compare with U.S. Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807, 1813–14 (2016) (where the agency did not dispute that the approved "jurisdictional determination"—issued after "extensive factfinding"—at issue was the culmination of the agency's decisionmaking process). Nor do they give rise to any legal consequences.

At best, taken together the activities upon which Plaintiff bases its NEPA claim show a general agency intent for which planning and final decisionmaking are still required.[3] Plaintiff's premature attempt to interject this Court into the agency's inchoate and ongoing decisionmaking process is precisely the kind of intrusion against which the ripeness doctrine protects. *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) (courts should only involve themselves in live controversies). Plaintiff attempts to justify such an intrusion by pointing to a case that dealt with an agency

---

[2] Plaintiff acknowledges in its declarations that it granted Defendants a license to enter the Butterfly Center to conduct road maintenance. ECF No. 30-1, Declaration of Marianna Treviño Wright ("Wright Dec.") ¶ 4. If the case proceeds to summary judgment, the United States will offer evidence that the road maintenance was conducted lawfully pursuant to that license and was not, as Plaintiff characterizes it, destruction of property or border infrastructure construction. Pl. Opp. at 10. Plaintiff does not allege any specific activities that "destroyed" property aside from the lawful brush clearing. *See* Compl. ¶ 53; *see also infra* Section II.B.

[3] In fact, Congress directed DHS to evaluate the need for additional border infrastructure in the RGV Sector. In 2018, Congress allocated funds for, among other border security needs, "25 miles of primary pedestrian levee fencing" in RGV Sector. Consolidated Appropriations Act Pub. L. No. 115-141, § 230(a)(2), 132 Stat. 348, 616 (March 23, 2018). RGV Sector includes 17,000 square miles, 320 of which are considered "river miles." *Rio Grande Valley Sector Texas, Overview History*, https://www.cbp.gov/border-security/along-us-borders/border-patrol-sectors/rio-grande-valley-sector-texas (last visited June 19, 2018). While funding for 25 miles of levee infrastructure suggests that the United States indeed "intends" to build border infrastructure, Pl. Opp. at 6, that intent alone is not a final agency action upon which Plaintiff may base its claim. *Hawkes Co.*, 136 S. Ct. at 1813 (to be final, the action by the agency "must not be of a merely tentative or interlocutory nature").

action that was still "final" despite the possibility that the action could later be modified.  Pl.

Opp. at 10 (citing *Hawkes Co.*, 136 S. Ct. at 1814).  *Hawkes* is easily distinguishable, however,

because there the challenged agency action constituted a binding, final determination relating to

the plaintiffs' property *and* gave rise to direct and appreciable legal consequences—namely that

a property owner is subject to, or safe-harbored from, liability for certain uses of its own

property.  *Id.*  Here, Plaintiff does not challenge any activity for which Defendants have made a

binding, final determination concerning Plaintiff's property or that has legal consequences for

that property.

Confirming its failure to identify a final agency action under the applicable standard,

Plaintiff asks the Court to substitute a separate legal theory for "final agency action."  Plaintiff

requests that the Court view the various activities—the Executive Order, the Kelly

Memorandum, the brush clearing, and the USBP Agent patrols—under a "totality of the

circumstances" standard.  Doing so is inconsistent with the legal standard established by the

Supreme Court.  *See Bennett*, 520 U.S. at 177−78.  Similarly, Plaintiff's insistence that it need

only allege "injury" is also incorrect.  Pl. Opp. at 11–12.  Plaintiff must, to bring a NEPA

challenge under the APA, challenge a final agency action.  *Bennett*, 520 U.S. at 177−78; 5

U.S.C. § 704.  Alleging abstract "injury" or "totality of the circumstances" fails to identify a final

agency action, and thus Plaintiff's NEPA claim must be dismissed.

Finally, Plaintiff's characterization of Defendants' ripeness argument, that the claim will

become justiciable at some future date of "Defendants' choosing," is incorrect.  Pl. Opp. at 2; *see*

*also* Pl. Opp. at 1 (alleging that in "six or seven months" it will be "too late" to challenge the

final agency action).  Plaintiff's characterization is based on a false assumption that construction

of border infrastructure is imminent on *Plaintiff's* property.  As discussed above, *supra* n.3,

Congress has expressed an interest in additional border infrastructure within the RGV Sector, but the "where" or "how" are yet to be determined.  Plaintiff's Complaint is devoid of a single allegation indicating a ripe decision to build infrastructure on its property.

Instead, Plaintiff bases its argument on a "*draft* [i.e. non-final] *proposal* for the border wall, including a segment through the Butterfly Center" that Butterfly Center Director Wright allegedly viewed, Compl. ¶ 56 (emphasis added), and news articles that include facts not alleged in the Complaint and that are not properly before the Court.  *See e.g.*, Pl. Opp. at 4–5.  While a plan or proposal does trigger a requirement for analysis under NEPA, that analysis only becomes reviewable by a court once, and if, the agency reaches a final agency action.  *See* 40 C.F.R. § 1508.18(a); 5 U.S.C. § 704.  In any event, Plaintiff makes no allegation that Defendants have issued a decision—not a "proposal"—to commence construction of a border wall on Plaintiff's property.  The possibility that infrastructure may be constructed on Plaintiff's property at some point in the future is not sufficient to overcome the ripeness defects of Plaintiff's claim.  *See Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 48 (D.C. Cir. 1999) ("[A]llegations of possible future injury do not satisfy the requirements of Art. III.") (quotation omitted).  If and when Defendants issue such a final decision, that decision will be ripe for review and subject to judicial review to the extent the law allows. [4]

Plaintiff fails to challenge a final agency action and as such fails to state a claim under the APA.  Plaintiff's NEPA claim further fails because its claim for potential future action is unripe.  Plaintiff's NEPA claim must be dismissed.

---

[4] As noted in Defendants' opening brief, Def. Br. at 16, for some border infrastructure projects where DHS has reached the culmination of its decisionmaking, it has issued a determination under IIRIRA 8 U.S.C. 1103 (note).

## II.    PLAINTIFF'S ENDANGERED SPECIES ACT CLAIMS FAIL

For Plaintiff to state a valid and ripe failure-to-consult claim under ESA Section 7(a)(2) over which this Court has jurisdiction, Plaintiff must identify an existing action authorized, funded, or carried out by DHS that may affect listed species, on which ESA consultation did not occur, and for which Plaintiff provided a valid 60-day notice of intent to sue.  Def. Br. at 19–20, 22, 25–26.  As set forth below and in Defendants' Motion to Dismiss, Plaintiff does not identify any such action in its Complaint or Opposition, and therefore its ESA Section 7(a)(2) claims must be dismissed.  Plaintiff also fails to dispute that it does not state a valid claim under ESA Section 7(a)(1), and this claim should be dismissed as well.

### A.  Plaintiff Fails to State a Valid ESA Claim for Future Wall Construction.

As explained in Defendants' Motion to Dismiss, Plaintiff's Complaint has not and cannot identify any authorization by DHS to construct new border wall or other barrier on Plaintiff's property, which renders unripe Plaintiff's ESA Section 7 claim for that possible future activity. Def. Br. at 19–22; *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 482–83 (D.C. Cir. 2009) (dismissing ESA claims as unripe where no decision had been made to take action that allegedly would impact listed species).  Likewise, Plaintiff's Opposition does not identify any such agency authorization; instead, Plaintiff insists that its ESA consultation claim survives because certain alleged agency "construction" activities have occurred and allegedly are "continuing."  Pl. Opp. at 2–15.  As discussed below, the actual activities that underlie those assertions do not support an ESA consultation claim.  But even if those activities could support such a claim, Plaintiff's failure to identify any agency authorization for the actual construction of new border barriers on its property requires dismissal of Plaintiff's ESA claim directed against such possible future construction.  Def. Br. 19–22.  In addition, Plaintiff has provided an

insufficient pre-violation ESA notice of intent to sue for possible new border barrier construction, which alone requires dismissal of that claim. *Id*. at 22–23.

Plaintiff's reliance on *Defs. of Wildlife v. Bureau of Ocean Management, Regulation and Enforcement*, 791 F. Supp. 2d 1158 (S.D. Ala. 2011) is misplaced. Pl. Opp. at 13. There, the court found that the plaintiff had solely challenged past and current agency actions, "rather than lease sale approvals that may or may not happen at some future time with or without certain conditions or restrictions." *Defs. of Wildlife*, 791 F. Supp. 2d at 1172. In fact, the plaintiff in that case clarified that it did not challenge future lease sales under ESA Section 7. *Id*. at 1172, n.25. By contrast, in its Opposition, Plaintiff has not disclaimed bringing an ESA Section 7 claim that in part challenges future new border barrier construction on its property. And the Complaint, on its face, purports to state such a claim. Compl. ¶ 76 (asserting that Defendants have failed to "initiate or complete consultations with [Fish and Wildlife Service ("FWS")] to "insure that border wall construction does not jeopardize" listed species); *id*. ¶ 5 (alleging that such construction "*will* impact the environment as well as several threatened and endangered species.")(emphasis added). Thus, the ESA consultation claim in the Complaint is not limited to past and current actions. Plaintiff's broad ESA consultation claim encompassing future border barrier construction is unripe and should not be permitted to proceed to the extent directed against that possible future activity. *Ctr. for Biological Diversity*, 563 F.3d at 483.

**B.  Plaintiff Does Not Identify Any Other Action Triggering ESA Consultation.**

As noted, Plaintiff insists in its Opposition that it states an ESA claim of some kind because Defendants have "begun construction activity" and are "engaged in activity" that threatens listed species. Pl. Opp. at 11, 13. But underlying these vague assertions, Plaintiff points to only three alleged agency activities: (1) road work on Plaintiff's property in July 2017

(Pl. Opp. at 15; Compl. ¶ 53–55; Wright Dec. ¶¶ 7–10); (2) placement of "surveyor flags" in July 2017 (*see id.*); and (3) purported "construction activities" allegedly observed in March/April 2018 by Plaintiff's declarant Ms. Wright. (Pl. Opp. at 13; Wright Dec. ¶ 20).  None of the facts alleged for these activities are sufficient to state a valid ESA consultation claim over which this Court has jurisdiction.

Discontinued Road Work.  As to the road work on Plaintiff's property in July 2017, DHS did consult with FWS for this activity as part of a programmatic consultation for Custom and Border Protection's ("CBP") tactical infrastructure maintenance and repair ("TIMR") program in Texas, and thus this activity cannot support Plaintiff's failure-to-consult claim.  Def. Br. at 25–26.  Plaintiff suggests this road work could not have been within the "ambit" of the TIMR program because brush allegedly was cleared 18 feet on each side of the road, Pl. Opp. at 15, but this type of vegetation control is well within the scope of the TIMR program and would not be atypical along roads in a wildlife preserve like Plaintiff's property.[5]  Plaintiff's own conduct also belies any claim that the road work was unconnected to the TIMR program—the very month after the road work occurred, Plaintiff withdrew its authorization for the program.  ECF No. 25-2, Attachment A and D.

Plaintiff also argues that the ESA consultation for the TIMR program "did not refer to the majority of threatened or endangered species identified in NABA's Complaint."  Pl. Opp. at 15.

---

[5] Final Biological Assessment Addressing Proposed Tactical Infrastructure Maintenance and Repair along the U.S./Mexico International Border in Texas (July 2014), ECF No. 25-2, Attachment F at 1-14 to 1-15 and 1-17 (stating that "[m]aintenance and repair of access roads" would include "controlling vegetation," that "[c]ontrol of vegetation would be achieved" in part by "trimming," that "[v]egetation encroaching upon roads and bridges would be maintained to ensure visibility and to sustain safe driving conditions for [U.S. Border Patrol] agents during travel," and that "disturbances" from maintenance and repairs "would usually occur within 6 meters (20 feet) of roads or other infrastructure").

That is not correct as to the named ESA-listed species allegedly on Plaintiff's property. Plaintiff's argument relies on several species claimed to be on the property that are listed only by the State of Texas and thus are not subject to ESA Section 7 consultation.[6]  In any event, to the extent that Plaintiff now challenges CBP's reliance on the ESA consultation for the TIMR program, Plaintiff must provide a 60-day notice of intent to sue on that basis, afford CBP an opportunity to address any alleged deficiency in that consultation, and wait the required 60 days to file a new complaint if necessary.  16 U.S.C. § 1540(g)(2)(A)(i); *Friends of Animals v. Ashe*, 51 F. Supp. 3d 77, 87 (D.D.C. 2014), *aff'd*, 808 F.3d 900 (D.C. Cir. 2015).  That is the entire purpose of such notice requirements—to bring any perceived violation to the attention of the agency so that it may potentially address the issue without litigation.  *Hallstrom v. Tillamook County*, 493 U.S. 20, 29 (1989).  Plaintiff has not done so and thus cannot rely on any alleged deficiencies in the consultation for the TIMR program to support its ESA claims in this case.

But ultimately, it does not matter whether the ESA consultation for the TIMR program covered every ESA-listed species allegedly on Plaintiff's property.  As Plaintiff does not dispute,

---

[6] The Complaint claims that the following "threatened and endangered" species are located on Plaintiff's property: (1) three ESA-listed plants – Texas Ayenia (also known as Tamaulipan Kidneypetal), Walker's Manioc, and Slender Rushpea; (2) two species that Plaintiff acknowledges are listed by the State of Texas, but not under the ESA (Texas horned lizard and Texas Indigo Snakes); (3) another species that Plaintiff claims is listed under the ESA (Texas Tortoises), but is only listed by the State of Texas and for which Plaintiff provides no cite for an ESA listing; and (4) unidentified ESA-listed aquatic species.  Compl. ¶ 49–50.  As to the three plants, the ESA consultation addressed two of the three (Texas Ayenia and Walker's Manioc).  U.S. Fish & Wildlife Service ESA Section 7 Consultation Letter for the Tactical Infrastructure Maintenance and Repair in Texas (July 23, 2014) ("FWS Letter"), ECF 25-2, Attachment G at 1; https://tpwd.texas.gov/huntwild/wild/wildlife_diversity/nongame/listed-species/plants/texas_ayenia.phtml (identifying Tamaulipan Kidneypetal as a common name for Texas Ayenia) (last visited June 21, 2018).  As to ESA-listed aquatic species, Plaintiff does not name them in the Complaint, preventing any comparison to the several aquatic species addressed in the TIMR consultation.  Compl. ¶ 50; FWS Letter at 1.

the ESA does not confer jurisdiction over violations for conduct that lies only in the past.  Def. Br. at 25–26.  There is no factual dispute that Plaintiff withdrew authorization for the conduct of the TIMR program on its property.  Nor does Plaintiff claim that DHS can or will continue the road work of which it complains in the absence of that authorization.  Defendants have advised the Court that this road work will not continue in light of Plaintiff's removal of authorization.  Def. Br. at 25 ("DHS can no longer perform this activity on the Plaintiff's property due to its express withdrawal of authorization in August 2017.").  There is no purpose to allowing an ESA claim to proceed based on activity that the agency has unequivocally stated will no longer occur, and thus no meaningful relief could be provided by the Court.

Surveyor Flags in July 2017.  As noted, Plaintiff points to the placement of "surveyor flags" on its property at the time of the road work.  Pl. Opp. at 15; Compl. ¶ 54.  Plaintiff asserts that these flags "indicate[] that Defendants' activities would imminently occur beyond the road." Pl. Opp. at 15.  To the contrary, almost a year has passed since these surveyor flags were placed without construction of any new border barriers on Plaintiff's property.  Plaintiff also does not allege that these flags remain on the property or specifically claim that they affected ESA-listed species, which is necessary to trigger an ESA consultation obligation.  *Ctr. for Biological Diversity*, 563 F.3d at 483.  In the absence of such allegations, this limited activity cannot support Plaintiff's failure-to-consult claim.

Relatedly, Plaintiff points to CBP's April 2018 request for Plaintiff's permission to conduct surveys, appraisals, and environmental assessments on its property "which may be necessary . . . for possible acquisition in support of . . . . construction of border infrastructure." Pl. Opp. at 6; Wright Dec. ¶ 23, Attachment A.  This request only confirms that the design, planning and environmental review for any new border barrier that might extend onto Plaintiff's

property is incomplete.  The request also shows that any further surveying or assessments on

Plaintiff's property will require its authorization or other legal process that has not yet occurred.

Assuming that ESA Section 7 is applicable to the activity, DHS may well perform ESA

consultation for it.  Just like any new border barrier construction, any additional surveying or

environmental assessments on Plaintiff's property are only possible future activities for which

Plaintiff is anticipating an ESA violation that does not yet exist and is not properly before this

Court.

2018 "Construction Activity."  Straining to allege facts showing some purported

"construction activity" that is continuing on its property, Plaintiff cites new allegations by Ms.

Wright not reflected in the Complaint.  Pl. Opp. at 14 ("As Ms. Wright's Declaration shows,

Defendants' activities on NABA's property are ongoing."); *id.* at 13 ("Defendants continue to

carry out destructive construction activities on NABA's property," citing Wright Dec. ¶ 20).

Even assuming that this Court can consider these new allegations, Ms. Wright does not describe

any "construction activity," let alone any related to wall preparation or construction.  In the

paragraph of her declaration cited by Plaintiff, Ms. Wright alleges that on March 28, 2018, she

"found two men in plain clothes who had parked a DHS vehicle on the property and were

carrying unspecified electronic devices."  Wright Dec. ¶ 20.  Carrying electronic equipment is

not "construction."  Ms. Wright further alleges that on April 11, 2018, she found a car on

Butterfly Center property and its occupants stated they were "part of a 'sensor crew'" that

Plaintiff alleges was "working on behalf of Border Patrol and [the Texas Department of Public

Safety]."  *Id*.  These alleged facts—that Ms. Wright found a car with two occupants allegedly

involved in placement of sensors to detect illegal entry—again do not describe any

"construction."  Notably, Plaintiff has not alleged an ESA consultation claim for the placement

of sensors or the myriad other day-to-day law enforcement activities that may occur on

Plaintiff's property.  Compl. ¶¶ 75–77 (alleging a failure to consult on "border wall

construction"); *id*. ¶ 87 (alleging only a Fourth Amendment violation for sensors).[7]  Nor has Ms.

Wright alleged that the purported "construction" activities she identifies—the mere presence of

vehicles and personnel—had any effect on listed species, as necessary to trigger ESA

consultation—just as the Complaint provides no allegation or specific facts that the July 2017

road work or surveyor flags had any such effect.  *See* Def. Br. at 24–25.

     Plaintiff suggests that the Court is foreclosed from considering such arguments "because

they turn on factual disputes that are not appropriately resolved on a motion to dismiss."  Pl.

Opp. at 15.  But Plaintiff bears the burden to allege "sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plaintiff's Complaint thus "must set forth

---

[7] In its Opposition, Plaintiff accuses Defendants of a litany of purported wrongs with respect to day-to-day border enforcement activities, such as allegedly unreasonable posting of guards, approaching Butterfly Center guests and employees, placement of border monitoring equipment, and removing gates erected by Plaintiff. Pl. Opp. at 1.  These alleged activities are not relevant to the ESA claims.  Plaintiff's Complaint alleges violations of the ESA only for "border wall construction."  Compl. ¶ 75–77.  In addition, as Plaintiff admits in the Complaint, its 60-day notice of intent to sue under the ESA provided notice only for alleged violations for the "failure to consult with [FWS] *to ensure that border wall construction* does not jeopardize the continued existence of threatened or endangered species or adverse modification of their critical habitat." Compl. ¶ 10 (emphasis added), *see also id*. ¶ 75–78 (describing notice for ESA violations related to "border wall construction").  Plaintiff thus provided no notice of intent to sue regarding any other activities on its property, as required to bring suit for them.  16 U.S.C. § 1540(g)(2)(A).  In any event, day-to-day enforcement activities themselves are not properly the subject of an ESA consultation claim in the absence of a specific agency action or management plan authorizing them.  *Ctr. for Biological Diversity v. Chertoff*, No. C–08–2999 MMC, 2009 WL 839042, at *5– 6 (N.D. Cal. Mar. 30, 2009) (rejecting argument that the Coast Guard's "day-to-day management activities" triggered an ESA consultation obligation, holding that "every case that has addressed the issue and found agency action [for purposes of ESA Section 7] has concerned the authorization of, or promulgation of management plans for, projects or other activities conducted by third parties or by the agency").

sufficient information to suggest that there is some recognized legal theory upon which relief

may be granted." *Boyd v. Farrin*, 958 F. Supp. 2d 232, 237 (D.D.C 2013) (quoting *Dist. of*

*Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1078 (D.C. Cir. 1984)) (dismissing claims for failure

to allege sufficient specific facts to support the claims).  Here, Plaintiff has not alleged sufficient

factual information to state a valid ESA consultation claim for which the Court has jurisdiction.

The only more than *de minimis* ground-disturbing agency activity alleged by Plaintiff in

connection with its ESA consultation claim has ended.  All other activities Plaintiff identifies,

including any new surveying or actual border barrier construction on Plaintiff's property,

represent possible future activity for which ESA consultation may yet occur but has not yet been

and may never be triggered.

### C.  Plaintiff's Section 7(a)(1) Claim Should be Dismissed.

In its Opposition, Plaintiff offers no rebuttal to Defendants' argument that Plaintiff fails

to state a valid claim under ESA Section 7(a)(1).  Plaintiff has thus abandoned this claim.  For

the reasons previously stated, this claim should be dismissed.  Def. Br. at 26–27.

## III.   PLAINTIFF'S CONSTITUTIONAL CLAIMS MUST BE DISMISSED

Plaintiff attempts to pivot in order to demonstrate this Court's jurisdiction over its Fifth

Amendment claim and to create a fact question out of a legal question to save its Fourth

Amendment claim.  Plaintiff also attempts to expand its Fourth Amendment claim by asserting

claims on behalf of third parties not before the Court.  These attempts do not save the claims

from their failure to establish jurisdiction in this Court, and the claims must therefore be

dismissed.

**A. This Court Lacks Jurisdiction over Plaintiff's Claim of Physical Taking Based on Any Past Activities because the Exclusive Forum for that Claim is the Court of Federal Claims.**

Plaintiff appears to abandon its claim that it is owed process under IIRIRA in favor of stating that its Fifth Amendment claim alleges two forms of "*per se* taking," one by the presence of officers patrolling Plaintiff's property and another by the alleged placement of sensors within its property.[8] Pl. Opp. at 16–17 (emphasis in original). Plaintiff's Complaint lacks the clear statement alleging a physical taking that Plaintiff's Opposition advances.[9] Nonetheless, Plaintiff's clarification of its Fifth Amendment claim reinforces that the claim must be dismissed.

A claim alleging occupation of private property by government action without just compensation is a claim for a physical taking under the Fifth Amendment. U.S. Const. amend. V ("No person shall . . . be deprived of . . . property . . . without just compensation"). The Fifth Amendment Takings Clause does not prohibit the government from taking private property for

---

[8] In Paragraph 83 of Plaintiff's Complaint, Plaintiff alleged that Defendants failed to comply with IIRIRA's procedural requirements prior to condemning property. But, in the same paragraph, Plaintiff acknowledged that Defendants had not yet taken steps toward condemnation of its property. Compl. ¶ 83. Defendants raised this and other defects with this allegation and Plaintiff did not respond. *See generally* Pl. Opp. Thus, Plaintiff has conceded that any claim under IIRIRA is premature and not ripe. Further support to Plaintiff's concession of this claim can be found in the attachments to its Opposition. The Declaration of Marianna Treviño Wright includes, as Attachment A, a letter from Customs and Border Protection requesting permission to enter Plaintiff's property for surveying purposes. ECF No. 30-1 at 10. This letter is precisely the kind of process Plaintiff complained was lacking in its Complaint, Compl. ¶ 83, and may explain why Plaintiff no longer pursues that claim.

[9] Plaintiff's turn to emphasizing a physical taking is not clearly reflected by allegations supporting that claim in the Complaint. Plaintiff's efforts to amend its Fifth Amendment claim using its Opposition to Defendants' Motion to Dismiss is improper. *Nnaka v. Fed. Republic of Nigeria*, 238 F. Supp. 3d 17, 36 (D.D.C. 2017) (providing that it "is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss"); *See Friends of Animals*, 51 F. Supp. 3d at, 85 (allegations must be apparent in a "fair reading of the complaint"). Even so, in the event the Court concludes that Plaintiff's Complaint as augmented by its Opposition brief sufficiently avers a takings claim, Defendants explain why this Court would lack jurisdiction over that claim.

public use; rather it conditions the "exercise of that power" on "secur[ing] compensation" for an "otherwise proper interference" that amounts to a taking.  *First English Evangelical Lutheran Church of Glendale v. Cty. of L.A.*, 482 U.S. 304, 314–15 (1987); *Horne v. Dep't of Agric.*, 135 S. Ct. 2419, 2429 (2015).  The only remedy for such a claim against the government is monetary relief; equitable relief is not available to remedy a taking.  *Ruckelhaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984) ("Equitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the sovereign subsequent to the taking." (footnote and citation omitted)).

A claim seeking compensation for an alleged uncompensated taking must be brought under the waiver of sovereign immunity in Tucker Act in the Court of Federal Claims.  *See* 28 U.S.C. § 1491.  The Tucker Act grants exclusive jurisdiction to the United States Court of Federal Claims

> to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

*Kidwell v. Dep't of Army, Bd. for Correction of Military Records*, 56 F.3d 279, 283 (D.C. Cir. 1995) (quoting 28 U.S.C. § 1491).[10]  A related statute, the "Little Tucker Act," grants United States District Courts concurrent jurisdiction over a subset of claims that also can be brought in

---

[10] Plaintiff's reliance on *Kidwell* for the proposition that this Court can award relief that has independent value for its claim is mistaken.  Pl. Opp. at 19 (citing *Kidwell*, 56 F.3d at 285).  The relief sought in *Kidwell* was a change to a military discharge status, a change with considerable independent value to the plaintiff.  56 F.3d at 284.  Plaintiff's Opposition alleges a physical taking under the Fifth Amendment, a claim for which similar independent relief is not available. See *Hafen v. Pendry*, 646 F. Supp. 2d 159, 160 (D.D.C. 2009) ("the Tucker Act impliedly forbids—in APA terms—not only district court awards of money damages, which the Claims Court may grant, but also injunctive relief, which the Claims Court may not.").

the Court of Federal Claims, but only where the amount sought does not exceed $10,000.  *See* 28

U.S.C. § 1346.  Both statutes "waive[] sovereign immunity [for] . . . actions brought pursuant to

money-mandating constitutional provisions, statutes, regulations, or executive orders."  *Martinez*

*v. United States*, 333 F.3d 1295, 1302–03 (Fed. Cir. 2003) (citations omitted).  A claim alleging

a taking against the United States is "premature until the property owner has availed itself of the

process provided by the Tucker Act."  *Preseault v. ICC*, 494 U.S. 1, 11 (1990) (quoting

*Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172,

195 (1985)).  So long as Tucker Act jurisdiction is available, "the plaintiff is barred from suing

for equitable relief in district court."  *Student Loan Mktg. Ass'n v. Riley*, 104 F.3d 397, 401 (D.C.

Cir. 1997).  Thus, whether a complaint explicitly demands monetary compensation or not, if the

claim alleges a taking it must brought under one of the two Tucker Act statutes.

    Plaintiff's Opposition states clearly, several times, that it alleges a physical taking under

the Fifth Amendment of the Constitution.  Pl. Opp. at 16–20.  Although Plaintiff does not request

monetary compensation, where a plaintiff alleges that a taking has occurred, the only relief

available is monetary relief.  *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning*

*Agency*, 535 U.S. 302, 322 (2002).  Plaintiff's failure to seek monetary relief and to bring its

claim under the Little Tucker Act deprives this Court of subject matter jurisdiction because this

Court's concurrent jurisdiction exists only for claims seeking less than $10,000 and under the

Little Tucker Act.  *Hafen*, 646 F. Supp. 2d at 160 (contract claim in which failure to seek a

specific dollar amount deprived the court of subject matter jurisdiction).  Thus, contrary to

Plaintiff's assertion, it cannot avoid Tucker Act jurisdiction simply by declining to seek

monetary compensation because there is no equitable relief available for its claim for

uncompensated occupation.  *See id.*

Plaintiff also attempts to avoid Tucker Act jurisdiction by alleging that the taking for which it seeks relief was unlawful, by which they presumably mean unauthorized.[11]  *See* Pl. Opp. at 19; *see also id.* at 16–17 (where Plaintiff alleges that patrols and the alleged placement of sensors on its property are a "*per se* taking").  Tucker Act jurisdiction does not extend to takings that are not authorized by acts of Congress or the Constitution because monetary relief is not available for an unauthorized taking.  *See Bd. Mach., Inc. v. United States*, 49 Fed. Cl. 325, 329 (2001) ("[F]or government to be held liable, it must appear that the officer who has physically taken possession of the property was duly authorized to do so."); *Laguna Gatuna, Inc. v. United States*, 50 Fed. Cl. 336, 342 (2001).  An unauthorized taking can occur when the action by the government agent is "either explicitly prohibited or was outside the normal scope of the government officials' duties."  *Id.*

Plaintiff's allegation that the taking is "unlawful" ignores two acts of Congress cited within its own Complaint.  As discussed in Defendants' opening brief, Def. Br. at 30, Plaintiff's Complaint cites to the lawful authority for the actions which it challenges—entry by USBP agents and alleged taking of property by placement of sensors.  USBP Agents may enter and patrol private lands, without warrant, within twenty-five miles of the United States border.  *See* Compl. ¶ 41 (citing the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1357(a)(3)).  And,

---

[11] It is also worth noting that Plaintiff's insistence elsewhere in its brief that the activities are a "per se taking," in effect, concedes the authority for the activity which it challenges.  Pl. Opp. at 16–17 (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982) (providing that a "physical occupation authorized by government is a taking")).  Relatedly, Plaintiff's reliance on *Youngstown Sheet and Tube Co. v Sawyer*, 343 U.S. 579, 585 (1952), does not support Plaintiff's takings claim; in that case, the challenged presidential order did not purport to be authorized under any statute, whereas in this case, Plaintiff's own complaint cites two statutes that provide DHS with authority for the challenged activity. *Id.* ("Indeed, we do not understand the Government to rely on statutory authorization for this seizure.").

the United States may take property for use for border infrastructure under IIRIRA which grants lawful authority for condemnation related to such projects.  Compl. ¶ 37 (citing IIRIRA, 8 U.S.C. § 1103(b)).[12]

Plaintiff's mere assertion that the alleged occupation is unlawful cannot overcome the lawful authority granted to Defendants by two acts of Congress.  Plaintiff alleged that agents have entered its property, *see e.g.*, Compl. ¶ 3, interfered with movement of staff and guests, Compl. ¶ 62, and prevented access to certain areas at certain times, *id.*  But those activities are not so far outside the clear statutory authority to patrol[13] that they can be considered explicitly prohibited or even outside the normal scope of the important duties the INA entrusts to USBP and its Agents.  The alleged entry by USBP Agents, the alleged interactions those Agents have with guests and staff are all authorized by law and within the scope of their lawful authority.  8 C.F.R. § 287.1(c) (defining patrolling under the INA's implementing regulations as activities that are "reasonable and necessary" to prevent illegal entry; *see Bd. Mach.*, 49 Fed. Cl. at 329

---

[12] Plaintiff states for the first time in its opposition that other law enforcement agencies enter its property without authorization.  *See e.g.*, Pl. Opp. at 23.  These new claims are not properly before the Court.  *See generally Al–Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 20 (D.D.C. 2003) (a facial challenge to a complaint is limited to those facts contained in the complaint).  While Plaintiff may introduce evidence related to jurisdiction, it may not introduce entirely new claims in its Opposition, doing so is an impermissible attempt to amend the complaint.  *See Friends of Animals*, 51 F. Supp. 3d at, 85.  Even if the Court is inclined to review these new claims, however, they state no claim against Defendants.  To the extent a Texas law enforcement agency has entered onto Plaintiff's property without justification, Plaintiff must bring such a claim against that agency, not against Defendants.

[13] Plaintiff attempts to allege that the patrol authority under the INA is limited by the dictionary definition of "patrol," but that statement is inconsistent with the INA's regulations.  Patrolling the border under the INA is defined as "conducting such activities as are customary, or reasonable and necessary, to prevent the illegal entry of aliens into the United States."  8 C.F.R. § 287.1(c).  Plaintiff cannot create the illusion of unauthorized activity by inserting its own definition in place of the regulatory one that was duly adopted and remains in force.  *See Pl. Opp.* at 23.

(providing that the Tucker Act can provide a remedy when government agents act "within the general scope of their duties, i.e. if their actions are a 'natural consequence of Congressionally approved measures'"); *see id.* (authority also includes action taken in "good faith implementation of a Congressional Act").[14]  Similarly, the allegation that sensors have been placed within the bounds of the property could be authorized under either statute as a form of tactical patrolling or as border infrastructure.  *See* Compl. ¶ 59.  Rather than alleging unauthorized activity, Plaintiff merely makes blanket statements using the term "unlawful" and doing so without sufficient detail cannot sustain its claim.  *Iqbal*, 556 U.S. at 678.  As Plaintiff emphasizes in its Opposition, it alleges a taking.  That alleged taking has a basis in lawful conduct and therefore Plaintiff's sole remedy is to seek compensation under the Tucker Act.

Because Plaintiff's claim alleges a physical taking by actions authorized by Congress, that claim must be brought for monetary compensation under one of the Tucker Acts.  Plaintiff's failure to properly plead its taking claim deprives this Court of subject matter jurisdiction.  Plaintiff's Fifth Amendment claim must be dismissed.

### B.  Plaintiff's Attempt to Create a Question of Fact as to its Fourth Amendment Claim Fails.

Plaintiff argues that alleged detainments of third parties and the presence of enclosed structures on the Butterfly Center property create questions of fact for trial on Plaintiff's Fourth Amendment claim.  Plaintiff is wrong.  Plaintiff may not vicariously assert claims that properly

---

[14] Plaintiff alleges in its Complaint, Compl. ¶ 61, and its Opposition, Pl. Opp. at 1, 10, 20, that Defendants have "detained" the Butterfly Center's staff and guests.  Defendants deny that staff or guests have been detained, but accepting Plaintiff's allegations as true aver that such activity is authorized in the INA's implementing regulations.  8 C.F.R. § 287.8(c)(1)–(3) (providing the right to "ask questions of anyone" so long as that person is not restrained, to briefly detain individuals for questioning, and if supported by questioning conduct arrests).

belong to third parties not before the Court.  And, assuming all facts in the Complaint as true,

there is no question that the areas at issue are open fields.  Plaintiff's allegations find no purchase

under the Fourth Amendment, and this Court should dismiss Plaintiff's Fourth Amendment

claims under Rule 12(b)(6).

### 1. Plaintiff Cannot Save its Fourth Amendment Claim by Asserting the Claims of Third Parties not Before the Court.[15]

Plaintiff alleges that Defendants have "routinely and unreasonably" detained Plaintiff's

employees and guests on Butterfly Center property.  Pl. Opp. at 20; *see also* Wright Dec. ¶ 5.

Neither Plaintiff's employees nor its guests are parties to the instant litigation, and Plaintiff lacks

standing to assert the interests of third parties.  To the extent Plaintiff attempts to rely on third

party injuries, this Court should dismiss Plaintiff's Fourth Amendment claim.

Part of the "irreducible constitutional minimum" of standing is the requirement that the

Plaintiff have suffered a "concrete and particularized" injury in fact.  *Lujan v. Defs. of Wildlife*,

504 U.S. 555, 560 (1992).  "For an injury to be 'particularized,' it 'must affect the plaintiff in a

personal and individual way.'"  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting

*Lujan*, 504 U.S. at 560).  The Supreme Court has repeatedly admonished that a litigant

"generally must assert his own legal rights and interests, and cannot rest his claim to relief on the

legal rights or interests of third parties."  *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quoting

---

[15] Plaintiff's Complaint styles its Fourth Amendment claim as "Unlawful Incursion Into Private Property" rather than as related to an unreasonable seizure of a person. Compl. ¶¶ 84–89.  In its Opposition, however, Plaintiff raises allegations of detainments of employees and guests by CBP.  *See* Pl. Opp. at 20.  These allegations do not appear relevant to Plaintiff's "Unlawful Incursion" claim as pleaded in the Complaint, but Federal Defendants address them here in the event the Court is inclined to consider them.  *See Xingru Lin v. District of Columbia*, 268 F. Supp. 3d 91, 100 (D.D.C. 2017) (where "allegations are absent from Plaintiff's Amended Complaint . . . Plaintiff . . . represented by counsel, may not amend her pleadings through her opposition").

*Warth v. Seldin*, 422 U.S. 490, 499 (1975)).  Allegations that Plaintiff's employees and guests have been detained by CBP raise legal claims that belong to the persons allegedly detained, not to Plaintiff.  Those employees and guests may bring their claims if they so choose.  But Plaintiff lacks standing to advance the interests of third parties not before the Court.  *See Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 810 (11th Cir. 1993) (holding that an employer could not assert third party standing for its employees).

To the extent Plaintiff's vaguely-pleaded Fourth Amendment claim alleges detentions of Plaintiff's employees and guests, this Court should dismiss the claim as contrary to the prohibition against third party standing.

### 2.   The Areas of the Butterfly Center at Issue in this Case are Open Fields.

Plaintiff avers that questions of fact remain as to whether the areas of the Butterfly Center at issue in this case are open fields, and thus asserts that dismissal under Rule 12(b)(6) is not appropriate.  Plaintiff alleges that CBP is conducting operations outdoors along a road and a levee—areas that are by definition open fields.  The Fourth Amendment does not protect Plaintiff's interest in the open fields, and Plaintiff's allegations fail to state a Fourth Amendment claim.

As discussed in Defendants' Motion to Dismiss, other than the *Katz* reasonable expectation of privacy framework, *Katz v. United States*, 389 U.S. 347, 353 (1967), the Fourth Amendment's protections are strictly limited to "persons, houses, papers, and effects."  *See Florida. v. Jardines*, 569 U.S. 1, 6 (2013) (holding that the Fourth Amendment "indicates with some precision the places and things encompassed by its protections: persons, houses, papers, and effects") (quotation omitted); *United States v. Jones*, 565 U.S. 400, 411 n.8 (2012) ("The Fourth Amendment protects against trespassory searches only with regard to those items

('persons, houses, papers, and effects') that it enumerates."); *Oliver v. United States*, 466 U.S. 170, 176 (1984) ("[T]he special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers and effects,' is not extended to the open fields.") (quotation omitted).[16] The Supreme Court has instructed that "[a]n open field need be neither 'open' nor a 'field' as those terms are used in common speech." *Oliver*, 466 U.S. at 180 n.11. Rather, any real property other than a home or the curtilage of a home is an open field, falling beyond the Fourth Amendment's reach. *Id.*

Plaintiff points to buildings located on the Butterfly Center property, arguing that their mere presence creates questions of fact as to whether the Butterfly Center is an open field. Pl. Opp. at 21. But there are no allegations in Plaintiff's complaint that CBP has searched or seized any of those structures. *See* Compl. ¶¶ 53–62 (Plaintiff's allegations regarding CBP activity on the Butterfly Center). Rather, Plaintiff alleges that CBP has been conducting activity outdoors along a road and levee on the property. *Id.* Further, while certain Fourth Amendment protections extend to curtilage, there is no curtilage on the Butterfly Center property. Curtilage refers to the area proximate to a home that "harbors the 'intimate activity associated with the sanctity of a man's home and the privacies of life.'" *United States v. Dunn*, 480 U.S. 294, 300 (1987) (quoting *Oliver*, 466 U.S. at 180). Because there is no home on the Butterfly Center

---

[16] Plaintiff cites to *United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993), for the proposition that "'Real property' is the most protected property interest, and the seizure of real property is unreasonable absent a warrant or exception." Pl. Opp. at 20-21. There, the Supreme Court considered Fourth and Fifth Amendment claims related to a civil forfeiture action against the home of a convicted drug dealer. *James Daniel Good*, 510 U.S. at 46. The Court did not find that the government's conduct offended the Fourth Amendment, but did hold that *ex parte* civil forfeiture violated the Fifth Amendment's guarantee of due process. *Id.* at 59. The Supreme Court has been clear that "the [Fourth] Amendment does not protect possessory interests in all kinds of property," but does include homes. *Soldal v. Cook Cty.*, 506 U.S. 56, 62 n.7 (1992) (citation omitted).

property, by definition there can be no curtilage on the Butterfly Center property.  Assuming all

facts in Plaintiff's Complaint true, Plaintiff has not stated a Fourth Amendment claim; the areas

where Plaintiff alleges CBP activities have taken place are open fields and there are no questions

left for trial.

## **<u>CONCLUSION</u>**

Plaintiff cannot save its Complaint by making new allegations or by making arguments

not supported by the allegations in its Complaint.  The NEPA claim and the constitutional claims

are unripe and fail to state claims upon which relief can be granted.  The ESA claims suffer from

jurisdictional deficiencies, are unripe, and fail to state a claim upon which relief can be granted.

Defendants request that Court dismiss all claims in Plaintiff's Complaint.

Respectfully submitted this 22nd day of June, 2018.


JEFFREY H. WOOD
Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

/s/ *Lila C. Jones*
LILA C. JONES (NM Bar No. 148098)
Trial Attorney
Natural Resources Section
601 D St. NW, 3rd Floor
Washington, D.C. 20004
Tel: (202) 514-9859
Fax: (202) 305-0506
lila.jones@usdoj.gov

*/s/ Clifford Stevens*
CLIFFORD STEVENS (DC Bar No. 463906)
Senior Attorney
Wildlife & Marine Resources Section
601 D St. NW, 3rd Floor
Washington, D.C. 20004

Tel: (202) 353-7548
Fax: (202) 305-0275
clifford.stevens@usdoj.gov


/s/ *Tyler M. Alexander*
TYLER M. ALEXANDER (CA Bar No. 313188)
Trial Attorney
Natural Resources Section
601 D St. NW, 3rd Floor
Washington, D.C.  20004
Tel: (202) 305 0238
Fax: (202) 305-0506
tyler.alexander@usdoj.gov

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of June, 2018, a copy of the foregoing Reply was filed via the Court's electronic case filing (ECF) system, which will send notice to all counsel of record.

/s/ *Lila C. Jones*
LILA C. JONES (NM Bar No. 148098)
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
601 D St. NW, 3rd Floor
Washington, D.C. 20004
Tel: (202) 514-9859
Fax: (202) 305-0506
lila.jones@usdoj.gov