# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| North American Butterfly Association,<br><br>    Plaintiff,<br><br>    v.<br><br>Kirstjen M. Nielsen, *in her official capacity* as Secretary, United States Department of Homeland Security, *et al.*,<br><br>    Defendants. | No. 1:17-cv-2651 (RJL)<br><br><br><br><br>DEFENDANTS' BRIEF IN SUPPORT OF SUPPLEMENTAL MOTION TO DISMISS |

**TABLE OF CONTENTS**

SUPPLEMENTAL MOTION TO DISMISS ............................................................................ 1

INTRODUCTION .......................................................................................................................... 2

STATUTORY BACKGROUND................................................................................................... 3

I.      The Illegal Immigration Reform and Immigrant Responsibility Act. .................... 3

II.     The Secretary's October 4, 2018 Waiver Determination......................................... 5

ARGUMENT .................................................................................................................................. 6

I.      The Waiver Determination Extinguishes Plaintiff's NEPA and ESA Claims
Challenging Border Infrastructure Activities............................................................ 6

         A.     The Waiver Determination Extinguishes Plaintiff's NEPA
Claim............................................................................................................... 7

         B.     The Waiver Determination Extinguishes Plaintiff's ESA
Claims Challenging Border Infrastructure Activities ...................... 9

II.     The Waiver Determination Deprives Plaintiff Of Any Meaningful Relief
Because NEPA And The ESA No Longer Apply.................................................. 12

CONCLUSION............................................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Cases**

*Defs. of Wildlife v. Chertoff,*
  527 F. Supp. 2d 119 (D.D.C. 2007) .................................................................................. 8, 15, 16

*English v. Dist. of Columbia*,
  717 F.3d 968 (D.C. Cir. 2013) ..................................................................................................... 11

*Grunewald v. Jarvis*,
  930 F. Supp. 2d 73 (D.D.C. 2013) ............................................................................................... 12

*Henderson ex rel. Henderson v. Shinseki*,
  562 U.S. 428 (2011) ....................................................................................................................... 5

*In re Polar Bear Endangered Species Act Listing & § 4(d) Rule Litig.*,
  627 F. Supp. 2d 16 (D.D.C. 2009) .......................................................................................... 5, 15

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ....................................................................................................................... 5

*Sierra Club v. Ashcroft*,
  No. 04-272, 2005 WL 8153059 (S.D. Cal. Dec. 13, 2005) .............................................. 13, 14, 16

*Steel Co. v. Citizens for a Better Env't.*,
  523 U.S. 83 (1998) ......................................................................................................................... 5

**Statutes**

6 U.S.C. § 202(1)-(2) ........................................................................................................................ 7

6 U.S.C. § 211 .................................................................................................................................. 7

8 U.S.C § 1103 ................................................................................................................................. 7

8 U.S.C. § 1701 ................................................................................................................................ 7

16 U.S.C. § 1540(1) ........................................................................................................................ 13

16 U.S.C. § 1540(g)(1)(A) .............................................................................................................. 13

16 U.S.C. § 1540(g)(2)(A) .............................................................................................................. 13

42 U.S.C. § 4321 ............................................................................................................................. 12

Pub. L. No. 104-208, Div. C., Title I § 102(a) ............................................................................ 8, 10

**Regulations**

82 Fed. Reg. 8793 (Jan. 25, 2017) .................................................................................................... 7

83 Fed. Reg. 51472 (Oct. 11, 2018) ....................................................................... 6, 9, 11, 12, 14, 16

**SUPPLEMENTAL MOTION TO DISMISS**

Defendants bring this supplemental motion to dismiss under Federal Rules 12(b)(1) and (6) to inform the Court of new information that deprives this Court of jurisdiction over Plaintiff's claims challenging the preparation for and construction of border infrastructure. Defendants' pending Motion to Dismiss demonstrates that the Court lacks jurisdiction over the claims raised in Plaintiff's Amended Complaint, ECF No. 19 ("Compl."). *See* ECF No. 25 (Defendants' Motion to Dismiss). As explained below, a recent determination by the Secretary of the Department of Homeland Security ("Secretary") is an additional basis for Defendants' position that this court lacks jurisdiction over Plaintiff's claims. For this reason and for the additional reasons stated in the Defendants' pending Motion to Dismiss, ECF No. 25; ECF No. 25-1, Plaintiff's claims must be dismissed.

It is well-established that a court's lack of subject matter jurisdiction may be asserted at any time during a proceeding. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("Objections to subject-matter jurisdiction . . . may be raised at any time."); *In re Polar Bear Endangered Species Act Listing & § 4(d) Rule Litig.*, 627 F. Supp. 2d 16, 21 (D.D.C. 2009) (same). Federal District Courts are "courts of limited jurisdiction . . . [which] possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The issue of jurisdiction is properly addressed before considering the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–96 (1998).

**INTRODUCTION**

In Defendants' pending Motion to Dismiss, Defendants showed that Plaintiff's National Environmental Policy Act ("NEPA") and Endangered Species Act ("ESA") claims, alleging violations of those statutes related to alleged border infrastructure activities, should be dismissed. Defendants argue in this Memorandum that Plaintiff's NEPA and ESA claims challenging the preparation for and construction of border infrastructure have now been extinguished and must be dismissed.

The Secretary has invoked and applied her waiver authority under Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), 8 U.S.C. § 1101 note, to an area in proximity to the United States border with Mexico that includes Plaintiff's property. *See* 83 Fed. Reg. 51472 (Oct. 11, 2018) ("Waiver Determination"). The Secretary determined that the areas covered by the waiver are areas of "high illegal entry" and that it is necessary to waive certain laws that may delay the "expeditious construction of barriers and roads" in the vicinity of the United States-Mexico border. *Id.*

For the reasons discussed below, the statutory waiver authority invoked by the Secretary is plenary. This Court must dismiss Plaintiff's NEPA and ESA claims challenging the preparation for and construction of new border infrastructure on Plaintiff's property.[1]

---

[1] Defendants do not revoke or supersede their pending Motion to Dismiss Plaintiff's claims. *See* ECF No. 25; ECF No. 25-1. Defendants provide this motion as a supplement to that Motion and continue to assert that all of Plaintiff's claims must be dismissed. *Id.*

2

**STATUTORY BACKGROUND**

**I.      The Illegal Immigration Reform and Immigrant Responsibility Act.**

The Department of Homeland Security ("DHS") and its component agency U.S. Customs and Border Protection are is responsible for, among other things, border security and the detection and prevention of illegal entry into the United States.  *See, e.g.*, 6 U.S.C. § 202(1)-(2); 6 U.S.C. § 211.  This responsibility includes achieving and maintaining operational control of the United States-Mexico border.  *See* Secure Fence Act of 2006, Public Law 109-367, § 2(a), 120 Stat. 2638 (Oct. 26, 2006) (8 U.S.C. § 1701 note).  "Operational control" means "prevention of all unlawful entries into the United States, including entries by terrorists, other unlawful aliens, instruments of terrorism, narcotics, and other contraband."  *Id.* § 2(b).  Consistent with that mandate, the President has directed DHS to take immediate steps to prevent all unlawful entries into the United States, including the immediate construction of physical infrastructure to prevent illegal entry.  *See* Exec. Order 13767 §§ 2(a), 4(a), 82 Fed. Reg. 8793 (Jan. 25, 2017).

Congress has granted DHS the authority to waive laws when necessary to carry out its border security mission.  *See* Pub. L. No. 104-208, Div. C, Title I § 102, 110 Stat. 3009-554 (Sept. 30, 1996), codified at 8 U.S.C § 1103 note.[2]  The IIRIRA directs the Secretary of Homeland Security to "take such actions as may be necessary to install

---

[2] IIRIRA § 102 has been amended several times.  *See* Dep't of Homeland Security Appropriations Act, 2008, Pub. L. No. 110-161, Div. E, Title V § 564, 121 Stat. 2090 (Dec. 26, 2007); Secure Fence Act of 2006, Pub. L. No. 109-367, § 3, 120 Stat. 2638 (Oct. 26, 2006); REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, Title I §102, 119 Stat. 231, 302, 306 (May 11, 2005).

additional physical barriers and roads (including the removal of obstacles to detection of illegal entrants) in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States." Pub. L. No. 104-208, Div. C., Title I § 102(a), as amended.  Congress granted the Secretary the authority to waive all legal requirements[3] that the Secretary determines, in the Secretary's sole discretion, are necessary to ensure the expeditious construction of barriers and roads authorized under the statute.[4]  *Id.*; *see Defs. of Wildlife v. Chertoff,* 527 F. Supp. 2d 119, 127 (D.D.C. 2007) (in order to exercise its authority, the Secretary must determine "the waiver is 'necessary' to ensure expeditious construction of . . . barriers and roads" in the vicinity of the United States border).

---

[3] For example, past determinations have waived statutes including NEPA (Pub. L. 91-190, 83 Stat. 852 (Jan. 1, 1970) (42 U.S.C. 4321 *et seq.*)); the ESA (Pub. L. 93-205, 87 Stat. 884 (Dec. 28, 1973) (16 U.S.C. 1531 *et seq.*)); the Clean Water Act (33 U.S.C. 1251 *et seq.*); the National Historic Preservation Act (Pub. L. 89-665, 80 Stat. 915 (Oct. 15, 1966), as amended, repealed, or replaced by Public Law 113-287 (Dec. 19, 2014) (formerly codified at 16 U.S.C. 470 *et seq.*, now codified at 54 U.S.C. 100101 note and 54 U.S.C. 300101 *et seq.*)); the Migratory Bird Treaty Act (16 U.S.C. 703 *et seq.*); the Clean Air Act (42 U.S.C. 7401 *et seq.*); the Coastal Zone Management Act (Pub. L. 92-583 (16 U.S.C. 1451, *et seq.*)); the Federal Land Policy and Management Act (Pub. L. 94-579 (43 U.S.C. 1701 *et seq.*)); the National Wildlife Refuge System Administration Act (Pub. L. 89-669, 16 U.S.C. 668dd-668ee); National Fish and Wildlife Act of 1956 (Pub. L. 84-1024 (16 U.S.C. 742a, *et seq.*)) and; the Administrative Procedure Act (5 U.S.C. 551 *et seq.*) among others.

[4] The Secretary has exercised its waiver authority several times.  *See* 83 Fed. Reg. 51472 (Oct. 10, 2018); 83 Fed. Reg. 3012 (Jan. 22, 2018); 82 Fed. Reg. 42829 (Sept. 12, 2017); 82 Fed. Reg. 35984 (Aug. 2, 2017); 73 Fed. Reg. 19078 (Apr. 8, 2008); 73 Fed. Reg. 19077 (Apr. 8, 2008); 72 Fed. Reg. 60870 (Oct. 26, 2007); 72 Fed. Reg. 2535 (Jan. 19, 2007) and; 70 Fed. Reg. 55622 (Sept. 22, 2005).

## II. The Secretary's October 4, 2018 Waiver Determination

On October 4, 2018, the Secretary issued a Waiver Determination under the IIRIRA. 83 Fed. Reg. 51472 (Oct. 11, 2018). This Waiver Determination provides that the "United States Border Patrol's Rio Grande Valley Sector is an area of high illegal entry." *Id.* The Rio Grande Valley Sector "has seen more apprehensions of illegal aliens than any other sector" (including over 137,000 illegal aliens in fiscal year 2017 alone) as well as seizure of "approximately 260,000 pounds of marijuana and approximately 1,200 pounds of cocaine" in the last year. *Id.* The Secretary also determined lands within proximity to the International Boundary Water Commission ("IBWC") levee near the United States-Mexico Border, designated the "project area," are areas of high illegal entry. The Secretary further determined that the project area has an immediate need for additional border infrastructure including barriers and roads. *Id.*

The IBWC levee included in the project area crosses Plaintiff's property, which is located near the United States-Mexico border. The Secretary determined that "there is presently an immediate need to construct physical barriers and roads in the vicinity of the border of the United States in order to prevent unlawful entries into the United States in the project area." *Id.* The project area includes in relevant part:

> Starting approximately a quarter mile west of the location where the levee intersects Goodwin/Abram road and running east in proximity to the International Boundary and Water Commission ("IBWC") levee to approximately a quarter mile east of Anzalduas Dam Road, a total distance of approximately eight (8) miles.

*Id.* Thus, having made her determination, she duly exercised her authority under the IIRIRA and waived in their entirety laws otherwise applicable to the construction of

5

roads and physical barriers in the project area, including NEPA, the ESA, and the Administrative Procedure Act ("APA").  *Id.*

## ARGUMENT

In addition to the jurisdictional defects within Plaintiff's Complaint that Defendants have already demonstrated, the Waiver Determination further deprives this Court of jurisdiction and extinguishes Plaintiff's pending NEPA and ESA claims (to the extent such claims existed in the first instance) regarding the preparation for and construction of border infrastructure.  As such, the Waiver Determination removes the ability of the Court to provide Plaintiff with any meaningful relief regarding those claims.

**I.      The Waiver Determination Extinguishes Plaintiff's NEPA and ESA Claims Challenging Border Infrastructure Activities**

The authority granted to the Secretary under the IIRIRA is plenary and dispositive as to Plaintiff's NEPA and ESA claims challenging the preparation for and construction of border infrastructure.  That authority, as discussed above, authorizes the Secretary to waive all statutes she determines, in her sole discretion, are necessary to ensure expeditious construction of barriers and roads in the vicinity of the United States border.  Pub. L. No. 104-208, Div. C., Title I § 102(a), as amended.[5]  Here, the Secretary has invoked and applied her waiver authority to lands in proximity to the IBWC levee that

---

[5] The Secretary's authority is broad and has withstood every judicial challenge.  *See In re Border Infrastructure Envtl. Litig.*, 284 F. Supp. 3d 1092 (S.D. Cal. 2018); *County of El Paso v. Chertoff*, No. 08-196, 2008 WL 4372693 (W.D. Tex. 2008), *cert. denied*, 557 U.S. 915 (2009); *Save Our Heritage v. Gonzalez*, 533 F. Supp. 2d 58 (D.D.C. 2008); *Defenders of Wildlife*, 527 F. Supp. 2d 119; *Sierra Club v. Ashcroft*, No. 04-272, 2005 WL 8153059 (S.D. Cal. Dec. 13, 2005).

6

runs through Plaintiff's property, i.e. the project area.  83 Fed. Reg. 51472 (Oct. 11, 2018).  As discussed above, within the project area the Waiver Determination waives various laws, including NEPA and the ESA.  *Id.*  Thus, Plaintiff's claims alleging that border infrastructure activities occurring within the project area violate NEPA and the ESA are extinguished and must be dismissed.

### A. The Waiver Determination Extinguishes Plaintiff's NEPA Claim

Plaintiff's NEPA claim alleges that Defendants violated NEPA by failing to conduct NEPA analysis for "border wall construction."  Compl. ¶ 6; *see id.* ¶¶ 1–2, 5.  Plaintiff alleges that this "construction" has commenced and is evidenced by preparatory "[a]genc[y] and contractor[] activities" that have occurred on its property in violation of NEPA.  *Id.* ¶ 5.  Plaintiff also observed brush clearing near the road, discovered of "surveyor flags" within the bounds of the property, and viewed a "draft proposal for the border wall;" activities it alleges consist of border infrastructure projects that are underway without proper NEPA compliance.  *Id.* ¶¶ 53–54, 56.  Accepting Plaintiff's allegations as true for the purposes of this Motion only, Plaintiff's NEPA claim must be dismissed.[6]

The Waiver Determination withdrew the waiver of sovereign immunity under the APA and in doing so deprives this court of jurisdiction to hear Plaintiff's NEPA claim.  NEPA claims must be brought under the APA.  *See Grunewald v. Jarvis*, 930 F. Supp. 2d

---

[6] In deciding a motion to dismiss under Rule 12(b)(6), the factual allegations in the complaint are taken as true. *English v. District of Columbia*, 717 F.3d 968, 971 (D.C. Cir. 2013) (citation omitted).

73, 81 (D.D.C. 2013), *aff'd*, 776 F.3d 893 (D.C. Cir. 2015) (NEPA provides no "right of action or waiver of sovereign immunity"). With respect to border infrastructure activities within the project area, however, the APA is waived. 83 Fed. Reg. 51472 (Oct. 11, 2018). The Waiver Determination thus deprives NEPA claims alleging violations related to border infrastructure activities, such as those raised by Plaintiff here, of any waiver of sovereign immunity. *Id.* In short, without the APA's waiver of sovereign immunity, this Court has no jurisdiction to hear Plaintiff's NEPA claim. *Id.*

The Waiver Determination also waives NEPA in its entirety. 83 Fed. Reg. 51472 (Oct. 11, 2018). Thus, even if Plaintiff's NEPA claim could survive without the APA, the legal requirements NEPA imposes—namely that agencies must consider the environmental impacts for major federal actions significantly affecting the quality of the human environment—no longer apply. *Id.*; 42 U.S.C. § 4321 (providing NEPA's declared purpose). The Waiver Determination waives NEPA compliance related to "construction of roads and physical barriers (including . . . preparation . . . and upkeep of physical barriers, roads, [and] supporting elements . . .) in the project area." 83 Fed. Reg. 51472 (Oct. 11, 2018). All of Plaintiff's NEPA claims arise from alleged "border wall construction," Compl. ¶ 6, or alleged border wall preparation activities, *id.* ¶¶ 53–54, 56. These are precisely the types of activities for which the Secretary waived NEPA's requirements. 83 Fed. Reg. 51472 (Oct. 11, 2018). Thus the waiver extinguishes Plaintiff's NEPA claim and it must be dismissed. *Sierra Club v. Ashcroft*, 2005 WL 8153059, at *8–10 (S.D. Cal. Dec. 13, 2005) (holding that waiver determination deprived

8

court of jurisdiction over NEPA suit that had been pending for more than a year before wavier determination was issued).

In sum, the Secretary's waiver of all legal requirements under both NEPA and the APA deprives this court of jurisdiction over those claims and they must be dismissed.

### B. The Waiver Determination Extinguishes Plaintiff's ESA Claims Challenging Border Infrastructure Activities

Unlike NEPA, the ESA contains its own waiver of sovereign immunity—a citizen-suit provision that authorizes any person to commence an action to enjoin a federal agency "who is alleged to be in violation of any provision of [the ESA] or regulation issued under the authority thereof." 16 U.S.C. § 1540(g)(1)(A). But no action under § 1540(g)(1)(A) may be commenced "prior to sixty days after written notice of the violation has been given to the Secretary, and to any alleged violator of any such provision or regulation." *Id.* § 1540(g)(2)(A). As discussed in Defendants' pending Motion to Dismiss, ECF No. 25, at 19–27, Plaintiff's ESA claims suffer from myriad defects including failure to provide sufficient notice. Defendants continue to assert that those deficiencies are fatal to Plaintiff's ESA claims but now also argue that dismissal is required for the additional reason that the Waiver Determination extinguishes Plaintiff's ESA claims challenging the preparation for and construction of border infrastructure.

Plaintiff brought suit under the waiver of sovereign immunity within the ESA. Compl. ¶ 13; *see* 16 U.S.C. § 1540(1) (citizen-suit provision). But similar to the waiver of sovereign immunity under the APA, the Secretary has duly waived the ESA with respect to border infrastructure activities within the project area and thus the ESA's

sovereign immunity waiver no longer applies.  83 Fed. Reg. 51472 (Oct. 11, 2018) (waiving the ESA in its entirety).  Thus, the Waiver Determination deprives this court of jurisdiction over any claims arising under the ESA challenging the preparation for and construction of border infrastructure and they must be dismissed.

Further, as with NEPA, even if the ESA claims could survive the loss of their anchoring waiver of sovereign immunity, they must still be dismissed.  As discussed above, the Waiver Determination waives the ESA for border infrastructure activities such as "construction of roads and physical barriers (including . . . preparation . . . and upkeep of physical barriers, roads, [and] supporting elements . . .) in the project area."  83 Fed. Reg. 51472 (Oct. 11, 2018).  Plaintiff's alleged harms arise from activities it describes as border wall preparation and construction.  *See e.g.*, Compl. ¶¶ 1, 3, 5, 53–54 (alleging failure to consult for "border wall preparation activities"; *id.* ¶¶ 75–76 (alleging failure to consult on "border wall construction"); *id.* ¶ 77 (alleging failure to take any affirmative steps to conserve "threatened or endangered species impacted by the border wall construction . . .").  These activities are precisely the kind for which the Secretary exercised her authority.  83 Fed. Reg. 51472 (Oct. 11, 2018) (waiving the ESA and other laws to address the "acute and immediate need to construct physical barriers and roads" in the project area); s*ee Sierra Club*, 2005 WL 8153059, at *7 (holding that the court lacked jurisdiction because it "may not now adjudicate claims or causes based on non-compliance with enacted procedural requirements the DHS Secretary has determined must be waived").  Thus, the Secretary's waiver of the ESA deprives this Court of jurisdiction to hear any claims challenging border infrastructure under that statute.  *See*

10

*Defenders of Wildlife*, 527 F. Supp. 2d at 129 (holding that exercise of the Secretary's waiver authority deprives the court of jurisdiction to hear statutory claims, even where court had issued temporary restraining order prior to waiver determination).

The Court must therefore dismiss Plaintiff's claims challenging the preparation for and construction of new border infrastructure brought under the ESA. *Id.* As explained in Defendants' memorandum in support of its motion to dismiss, certain activity that Plaintiff alleges is related to wall construction, specifically now discontinued road maintenance on its property, in fact was not directed at the construction of new border infrastructure, but rather was part of a road maintenance program on which ESA consultation already occurred. ECF 25-1 at 23–24. Plaintiff's ESA claim as to that activity should be dismissed for the reasons stated in the motion to dismiss and the government's reply brief in support of the motion to dismiss. *Id.* at 23–26; ECF No. 31 at 10–12. But even accepting Plaintiff's allegation that the activity was related to new border infrastructure, the ESA claim must be dismissed due the Waiver Determination.[7]

---

[7] Similarly, in its opposition brief, Plaintiff alleged in connection with its ESA claims that certain "construction activities" have continued to occur on its property that "are consistent with Defendants' mandate to immediately plan and construct a wall near the southern border." ECF No. 30 at 15. As explained in the government's reply brief, the alleged activity was not construction and was related to alleged placement of sensors for which Plaintiff has stated no valid ESA claim and failed to provide a 60-day notice of intent to sue under the ESA. ECF No. 31 at 13–14 and n.7. But even accepting Plaintiff's allegation that the activity relates to border infrastructure, the claim must be dismissed due to the Waiver Determination.

11

### II. The Waiver Determination Deprives Plaintiff Of Any Meaningful Relief Because NEPA And The ESA No Longer Apply

The Waiver Determination not only deprives this Court of jurisdiction over Plaintiff's NEPA and ESA claims alleging violations related to border infrastructure activities, but it also moots those claims because it deprives the Court of the ability to provide Plaintiff any of the relief that may have been available under those statutes. *See id.*

Plaintiff requests declaratory relief that Defendants have violated NEPA and the ESA. *See* Compl. Prayer For Relief ¶¶ 1–3. Plaintiff also asks the Court to enjoin Defendants from border wall construction on their property unless and until Defendants comply with NEPA and the ESA. *Id.* ¶ 6. This requested relief is based entirely on injuries Plaintiff alleges it incurred by way of Defendants' border wall construction activities. *See e.g.*, ¶¶ 1, 3, 5, 63–71, 72–78. Those activities are exempted, however, by operation of the Waiver Determination, from the requirements of NEPA and the ESA. *See* 83 Fed. Reg. 51472 (Oct. 11, 2018). The Waiver Determination thus renders moot all of Plaintiff's requests for relief related to border infrastructure activities under both statutes. *See Sierra Club*, 2005 WL 8153059, at *10 ("claims arising under NEPA, became moot with the exemption of the [border infrastructure projects] from the application of NEPA requirements.").

### **CONCLUSION**

Under rules 12(b)(1) and (6), this Court must dismiss Plaintiff's NEPA and ESA claims challenging the preparation for and construction of new border infrastructure

because the Secretary's invocation and application of her waiver authority waives those statutes and all of their requirements as to all border infrastructure activities in proximity to the IBWC levee that runs through Plaintiff's property.  To the extent that Plaintiff challenges other activity under NEPA and the ESA not related to the construction of new border infrastructure, the claims for that activity should be dismissed for the additional reasons set forth in Defendants' memorandum in support of its motion to dismiss, ECF No. 25-1, and reply brief, ECF No. 31.  Plaintiff's remaining claims should be dismissed for the reasons set forth in that motion.

Respectfully submitted this 5th day of November, 2018.

JEFFREY BOSSERT CLARK
Assistant Attorney General
Environment & Natural Resources Division

*/s/ Lila C. Jones*
Lila C. Jones (NM Bar # 148098)
Trial Attorney
Clifford E. Stevens, Jr. (D.C. Bar #463906)
Senior Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
PO Box 7611
Washington, DC  20044-7611
Tel: (202) 514-9859
Fax: (202) 305-0506
Email: lila.jones@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

    I hereby certify that on November 5, 2018, I filed the foregoing with the Court's electronic filing system, which will serve all counsel by electronic means.

                                        /s/     Lila C. Jones
                                        LILA C. JONES
                                        U.S. Department of Justice