# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NORTH AMERICAN BUTTERFLY ASSOCIATION**, | No. 1:17-cv-2651-RJL |
| Plaintiff, | |
| v. | |
| **NIELSEN**, *et al.*, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS AND REQUEST FOR AN ORAL HEARING**

Timothy K. Beeken
(tkbeeken@debevoise.com)
Harry Zirlin
(hzirlin@debevoise.com)
David Donatti
(dadonatti@debevoise.com)

DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY  10022
(212) 909-6000

November 19, 2018                    *Attorneys for Plaintiff*

# TABLE OF CONTENTS

Introduction ................................................................................................................. 1

Facts ........................................................................................................................... 2

Argument .................................................................................................................... 6

    I.    The Court Should Deny Defendants' Supplemental Motion to Dismiss
         Because the Waiver Determination Is *Ultra Vires* ................................................ 7

    II.   In the Alternative, This Court Should Hold the Supplemental Motion to
         Dismiss in Abeyance Pending the Resolution of a Challenge to the
         Waiver Determination in Another Action in this Court. ................................... 10

    III.  Defendants' Supplemental Motion to Dismiss Shows the Ripeness of
         NABA's Statutory Claims and the Urgency of Its Constitutional Claims ........ 12

         A.   Defendants' Supplemental Motion to Dismiss Demonstrates the
               Ripeness of Plaintiff's Claims ................................................................. 12

         B.   Defendants' Supplemental Motion to Dismiss Strengthens
               Plaintiff's Constitutional Claims ............................................................. 13

Conclusion ................................................................................................................ 14

**TABLE OF AUTHORITIES**

CASES

*Landis v. North American Co.*, 299 U.S. 248 (1936) ....................................................12

*United States v. 0.95 Acres of Land*, 994 F.2d 696 (9ᵗʰ Cir. 1993) ...............................8

*United States v. 1.04 Acres of Land, More or Less, Situate in Cameron County*,
    538 F.Supp.2d 995 (S.D. TX 2008) ...........................................................................8

*United States v. 162.20 Acres of Land, More or Less, Situated in Clay County,
    Mississippi*, 639 F.2d 299 (5th Cir.1981) ................................................................8

STATUTES

Illegal Immigration Reform and Immigrant Responsibility Act, § 102(c), 8 U.S.C.
    § 1103 note (2018) ........................................................................................ *passim*

OTHER AUTHORITIES

70 Fed. Reg. 55,622 (Sept. 22, 2005) ...............................................................10

72 Fed. Reg. 2,535 (Jan. 19, 2007) ..................................................................10

72 Fed. Reg. 60,870 (Oct. 26, 2007) ................................................................10

73 Fed. Reg. 18,293 (April 3, 2008) .................................................................10

73 Fed. Reg. 19,078 (April 8, 2008) .................................................................10

82 Fed. Reg. 35,984 (Aug. 2, 2017) .................................................................10

83 Fed. Reg. 3,012 (Jan. 22, 2018) ..................................................................11

83 Fed. Reg. 50,949 (Oct. 10, 2018) ................................................................11

83 Fed. Reg. 51,472, 51,473 (Oct. 11, 2018) ............................................1, 5, 11, 13

Exec. Order No. 13767, 82 Fed. Reg. 8,793 §§ 4(a), (d) (Jan. 30, 2017) .................6

U.S. Customs and Border Protection, *Rio Grande Valley Levee/Border Wall
    System Construction Projects* (Sept. 6, 2018). ....................................................4, 5

U.S. Customs & Border Patrol, *Border Wall Construction Project to Begin in
    Texas* (Nov. 2, 2018)........................................................................................6, 14

# INTRODUCTION

In June, Plaintiff began its Response to Defendants' Motion to Dismiss with a prediction: while Defendants[1] then told this Court that it was "too early for the North American Butterfly Association to challenge their decision to build a border wall on its property," in "[s]ix or seven months" they "w[ould] surely tell this Court that it's too late to do anything about it."  Pl.'s Resp. to Defs.' Mot. Dismiss (Dkt. 30), June 15, 2018, at 1.  As if on cue, Defendants have filed a Supplemental Motion to Dismiss "to inform the Court of new information that deprives this Court of jurisdiction over Plaintiff's claims challenging the preparation for and construction of border infrastructure."  Defs.' Suppl. Mot. Dismiss for Lack of Jurisdiction (Dkt. 34), November 5, 2018, at 1.  Specifically, Defendant Nielsen, in her capacity as the Secretary of the Department of Homeland Security ("**DHS**"), purported to waive a number of laws, including the National Environmental Policy Act ("**NEPA**") and the Endangered Species Act ("**ESA**"), in an area including the Butterfly Center (the "**Waiver Determination**").  83 Fed. Reg. 51,472 (Oct. 11, 2018).

Defendants are wrong:  This Court has jurisdiction to hear the claims brought by NABA.  Defendant Nielsen's purported waiver is invalid.  The Court should deny

---

[1]   Defendants are Kirstjen M. Nielsen, *in her official capacity* as Secretary, United States Department of Homeland Security ("DHS"); Kevin K. McAleenan, *in his official capacity* as Acting Commissioner, United States Customs and Border Protection ("CBP"); Carla L. Provost, *in her official capacity* as Acting Chief, United States Border Patrol ("Border Patrol"); and Manuel Padilla, Jr., *in his official capacity* as Chief Patrol Agent, United States Customs & Border Protection Rio Grande Valley Border Patrol Sector.

Defendants' Supplemental Motion to Dismiss or, in the alternative, hold Defendants'

Supplemental Motion in abeyance until the central questions of the statutory and

constitutional validity of Defendant Nielsen's Waiver are heard in an action pending

before Judge Jackson of this Court.  In addition, this Court should deny Defendants'

original Motion to Dismiss, as the Supplemental Motion demonstrates that NABA's

statutory claims are indeed ripe for review as well as the urgency of NABA's claims

arising under the United States Constitution.

## **FACTS**

Plaintiff refers to the facts stated in its Amended Complaint and its Response to

Defendants' Motion to Dismiss and will not detail those facts again here.  *See* Am.

Compl. (Dkt. 19), March 28, 2018 ¶¶ 46–62; Pl.'s Resp. to Defs. Mot. Dismiss (Dkt. 30),

at 3–7.  In summary, NABA demonstrated that Defendants intend to build a border wall

along the levee on the Butterfly Center and have acted in furtherance of that intent in

disregard of their statutory obligations and NABA's constitutional rights.  Defendants

insisted in their original Motion to Dismiss that DHS had not made a final decision on

whether to construct such a border facility across Plaintiff's property, such that NABA's

claims were unripe.

Defendants' wide-ranging conduct on and in relation to NABA's property belied

this assertion.  Since then, Defendants have continued their impermissible activities on

NABA's property, all the while seeking to avoid accountability for their actions behind

the pretext of indecision.  While briefing on Defendants' original Motion to Dismiss was

ongoing, DHS posted a "presolicitation" notice for contractors regarding construction activities, including fencing, walls, roads, and lights, in the Rio Grande Valley and other areas.

On June 8, 2018, prior to Defendants' Reply in Support of their Motion to Dismiss, Loren Flossman, CBP's "Wall Program Portfolio Manager," followed up on CBP's previous request for an irrevocable 18-month right of entry to the Butterfly Center in connection with the Government's assessment of the Butterfly Center for "Border Infrastructure Projects in the Rio Grande Valley Sector."  *See* Pl.'s Resp. to Defs. Mot. Dismiss (Dkt. 30), at 6 (citing Wright Decl. ¶ 23 & Attachment A (CBP's April 2018 request for right of entry)).  The map enclosed with Mr. Flossman's letter showed the Butterfly Center within the United States Border Patrol's Rio Grande Valley Sector, in particular "RGV-03."  It designated the levee and immediately surrounding areas as the "proposed project area" and marked a "parent tract" subsuming an area north of the levee as well as the entirety of the Butterfly Center south of the levee.  Second Wright Decl. ¶ 6 & Attachment B.

Defendants had delineated this "project area" long before.  As first described in Plaintiff's Amended Complaint, Defendants already had sent contractors to the site beginning on July 20, 2017, destroyed stretches of it, and marked a path for further construction.  Am. Compl. (Dkt. 19) ¶¶ 53–55.  A map designating construction on the same land previously had been shown by Defendant Padilla to Marianna Treviño Wright on August 1, 2017.  Am. Compl. (Dkt. 19) ¶ 56.  And the area chosen for the project was consistent with DHS plans disclosed in 2017 and into 2018.  Pl.'s Resp. to Defs.' Mot.

Dismiss (Dkt. 30), at 5 (citing consistent DHS plans to build the border wall along the levee line on NABA's property).

On August 9, 2018, before DHS finally acknowledged its decision to construct a wall across the National Butterfly Center, Wall Program Manager Mr. Flossman attended a meeting of the CBP Rio Grande Valley Border Community Liaison Team. Mr. Flossman stated that CBP would not consider any modifications to the border wall project affecting community members' property:  "the wall design is the wall design. There will be no modifications to it."  Second Wright Decl. ¶ 4.

Then, on September 6, 2018, CBP announced a proposal to "design and construct approximately 25 miles of levee/border wall system in Hidalgo County, Texas."  Second Wright Decl. ¶ 5 & Attachment A at 1.  Maps accompanying the proposal reflected a border wall built along the levee bisecting the Butterfly Center.  Second Wright Decl. ¶ 5 & Attachment A at 3.  CBP said it was "seeking input on potential impacts to the environment, culture, commerce, including socioeconomic impacts, and quality of life," and invited comments through Tuesday, November 6, 2018.   Second Wright Decl. ¶ 5 & Attachment A at 1.

Defendant Nielsen did not wait until the end of the comment period to issue her Waiver Determination.  On October 11, 2018, she putatively waived 28 statutes, including NEPA and the ESA and other laws providing for the accounting of "potential impacts to the environment, culture, commerce, and quality of life for the communities located near the sites where construction is taking place" (Illegal Immigration Reform and Immigrant Responsibility Act, § 102(c), 8 U.S.C. § 1103 note (2018)) for an area

4

including the Butterfly Center in order to proceed with the construction of "roads and physical barriers" in Hidalgo County in the Rio Grande Valley Sector.  83 Fed. Reg. 51,472, 51,473 (Oct. 11, 2018).

The Waiver Determination was issued under Section 102(c) of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA").  *Id.* at 51,472–74. Citing the January 2017 Executive Order described in NABA's Amended Complaint, (Am. Compl. (Dkt. 19) ¶ 51) and in particular the mandate to "take *immediate* steps . . . including the immediate construction of physical infrastructure," the Waiver Determination asserted "an acute and immediate need to construct physical barriers and roads."  83 Fed. Reg. at 51,473 (emphasis added).  According to the Waiver Determination, NEPA, the ESA, and other laws interfered with "the expeditious construction of the barriers and roads in the project area."  *Id.*

Meanwhile, in the interest of encouraging environmental surveys, NABA granted CBP a temporary right of entry on October 19, 2018.  Under the terms dictated by CBP, NABA was permitted to object twice to the government's entry into its property before the ability to object was rescinded and the Government could "enter the property with no notice."  Second Wright Decl. ¶ 6 & Attachment B ¶ 4.

On October 30, 2018, CBP, in partnership with the United States Army Corps of Engineers ("USACE"), awarded a $145 million construction contract to SLSCO Ltd. to "construct approximately six miles of levee wall system in the U.S. Border Patrol's ("USBP") Rio Grande Valley ("RGV") Sector."  Second Wright Decl. ¶ 7 & Attachment C.  According to the award, the "RGV-03" project—encompassing the Butterfly

Center—is a "step" towards "implement[ing] President Trump's Executive Order 13767" and includes "the construction and installation of tactical infrastructure including a reinforced concrete levee wall to the height of the existing levee, 18 feet tall steel bollards installed on top of the concrete wall, and vegetation removal along a 150 foot enforcement zone throughout the approximately six miles of levee wall system." *Id*. The enforcement zone "will also include detection technology, lighting, video surveillance, and an all-weather patrol road parallel to the levee wall." *Id*.

Then, Defendants submitted their Supplemental Motion to Dismiss, presenting the plan to take and build on the Butterfly Center as a *fait accompli* and asserting that the Waiver Determination deprives this Court of jurisdiction over Plaintiff's NEPA and ESA claims.

## ARGUMENT

Defendants' Supplemental Motion to Dismiss should be denied in its entirety, as Defendant Nielsen's Waiver Determination is *ultra vires* and therefore invalid. In the alternative, this Court should hold Defendants' Supplemental Motion to Dismiss in abeyance in the interest of judicial economy, pending a ruling on the issue in an action pending before another judge of this Court that directly challenges the Waiver Determination. *Center for Biological Diversity v. Nielsen*, No. 1:18-cv-00655 (filed Mar. 22, 2018). A hearing on cross-motions for summary judgment in that matter is set for December 18, 2018. *Id.*, Minute Order (Aug. 30, 2018).

Moreover, Defendants' original Motion to Dismiss should be denied in its entirety, as the Supplemental Motion demonstrates beyond doubt that NABA's statutory claims are ripe for review, as well as the urgent need for relief from Defendants' violations of NABA's constitutional rights.

I. **The Court Should Deny Defendants' Supplemental Motion to Dismiss Because the Waiver Determination Is *Ultra Vires***

Defendant Nielsen's Waiver Determination is *ultra vires* and therefore invalid, because DHS did not adhere to the requirement of engaging in consultation under Section 102(b)(1)(C) of the IIRIRA.

The IIRIRA provides:

> [i]n carrying out this section, the Secretary of Homeland Security *shall* consult with the Secretary of the Interior, the Secretary of Agriculture, States, local governments, Indian tribes, and property owners in the United States to minimize the impact on the environment, culture, commerce, and quality of life for the communities and residents located near the sites at which such fencing is to be constructed.

8 U.S.C. § 1103 note (emphasis added).

As other courts have found, this requirement imposes mandatory duties on DHS. *See United States v. 1.04 Acres of Land, More or Less, Situate in Cameron County*, 538 F.Supp.2d 995, 1014 (S.D. TX 2008) (holding that the court could prohibit the government from exercising a right of entry until it complied with the mandatory consultation clause of the IIRIRA. Thus, courts may prevent certain government activity from proceeding unless this requirement is satisfied, just as similar provisions in other

statutes operate to ensure government compliance with procedural safeguards. *See id.* at 1013–14 (citing *United States v. 162.20 Acres of Land, More or Less, Situated in Clay County, Mississippi*, 639 F.2d 299, 304 (5th Cir.1981) (holding that the consultation provision of the National Historic Preservation Act could be wielded by litigants as a "sword to enforce compliance") and *United States v. 0.95 Acres of Land*, 994 F.2d 696, 699 (9th Cir. 1993) (holding that the court could employ NEPA to enjoin a proposed road system)).

In the instant case, DHS has failed to carry out Congress's express requirements as well as its underlying purpose of mandating review of the environmental, cultural, commercial, and quality of life impacts that the project will have on those located near the site.  8 U.S.C. § 1103 note.  Even if DHS made gestures toward engaging in such consultations, such acts were neither adequate nor genuine.

It is apparent from its conduct that DHS never intended for third-party stakeholders to have any impact on the construction of the border wall on Plaintiff's property or other sites in the Rio Grande Valley.  While Defendants were representing to this Court that future construction of border fence on NABA's property remained uncertain, they were actively taking steps to plan and execute that construction.  As detailed in NABA's prior submissions, DHS began planning the construction of a border wall on the Butterfly Center in secret in early 2017.  Am. Compl. (Dkt. 19) ¶¶ 53–57; Pl.'s Resp. to Defs.' Mot. Dismiss (Dkt. 30), at 4–5.  Such construction *began* during the summer of 2017 without private notice or publication.  Am. Compl. (Dkt. 19) ¶¶ 53–54. Over the remainder of 2017 and until the Waiver Determination, Defendants blatantly

denied what they obviously were doing in order to avoid their legal duties, including their duties to account for impacts to the environment and endangered species, and to consult with landowners, including NABA, under the IIRIRA.

Even after it became impossible to hide their final decision to build on the Butterfly Center and surrounding properties, Defendants made no efforts to consult as required.  As noted, in August 2018 Mr. Flossman went so far as to say that CBP would not consider any modifications to the wall design.  On October 31, before the close of the comment period, CBP granted a construction contract to build the wall across NABA's property and set a construction date in February 2019 to adhere to a wall design that will not be modified.

Defendants' incredible assertion in their May 2018 Motion to Dismiss that they had not made a final decision on whether to construct a border facility across NABA's property fails to persuade in light of these actions.  Instead, the Defendants' lack of transparency exposes the absence of consultation.

Because she failed to engage in consultations as required by the IIRIRA, Secretary Nielsen's Waiver Determination was *ultra vires*.  Therefore, Defendants cannot now be heard to claim that this determination deprives this Court of jurisdiction.  In the alternative, the question of whether DHS provided adequate and genuine consultation in satisfaction of the IIRIRA constitutes a mixed question of law and fact that cannot be resolved on a motion to dismiss.

Therefore, the Court should deny Defendants' Supplemental Motion to Dismiss.

**II.    In the Alternative, This Court Should Hold the Supplemental Motion to Dismiss in Abeyance Pending the Resolution of a Challenge to the Waiver Determination in Another Action in this Court.**

Between the enactment of the IIRIRA in 1996 and 2016, the DHS Secretary invoked the Section 102(c) waiver authority on five occasions.[2]  Since 2017, another five waivers have been issued, and all five have been challenged.  82 Fed. Reg. 35,984 (Aug. 2, 2017); 82 Fed. Ref. 42,829 (Sept. 12, 2017); 83 Fed. Reg. 3,012 (Jan. 22, 2018); 83 Fed. Reg. 50,949 (Oct. 10, 2018); 83 Fed. Reg. 51,472 (Oct. 11, 2018).  Three such waivers, including the Waiver Determination at issue here, are currently subject to review in *Center for Biological Diversity et al. v. Nielson*, 1:18-cv-00655 (filed Mar. 22, 2018) (hereinafter "*CBD New Mexico*") and *Center for Biological Diversity et al. v. Nielson*, 1:18-cv-02396 (filed Oct. 18, 2018) (hereinafter "*CBD Texas*"), pending before Judge Jackson of this Court.

The first filed of these cases concerns a waiver issued on January 22, 2018 under Section 102(c) with respect to the construction of a border wall along approximately 20 miles of the southern border in New Mexico (the "New Mexico Waiver").  Complaint (Dkt. 1) ¶ 59, *CBD New Mexico*.  The Center for Biological Diversity ("the Center") filed suit against Secretary Nielsen and others on March 22, 2018 asserting that the New Mexico Waiver was invalid on multiple independent bases.  *First*, the Center alleged that

---

[2]   The relevant projects were located in San Diego, California (70 Fed. Reg. 55,622 (Sept. 22, 2005)); Barry M. Goldwater Range, Arizona (72 Fed. Reg. 2,535 (Jan. 19, 2007)); San Pedro Riparian National Conservation Area, Arizona (72 Fed. Reg. 60,870 (Oct. 26, 2007)); Hidalgo County, Texas (73 Fed. Reg. 19,077 (April 3, 2008)); and Other Areas in California, Arizona, New Mexico, and Texas (73 Fed. Reg. 18,293 (April 3, 2008), as amended, 73 Fed. Reg. 19,078 (April 8, 2008)).

DHS had already fulfilled its mandate under Section 102(b) of the IIRIRA and therefore the exercise of the statutory waiver power was *ultra vires*. *Id*. ¶¶ 64–72. *Second*, the Center alleged that, even if the waiver authority extended to the New Mexico Border Wall Project, the Waiver Determination was *ultra vires* because DHS had failed to comply with the consultation requirement described *supra*. *Id.* ¶¶ 73–80. *Third*, the Center raised constitutional claims under the Take Care Clause, Non-Delegation and Separation of Powers Clauses, and the Presentment Clause. *Id.* ¶¶ 81–100.

On May 10, 2018, the Center brought a motion for summary judgment asking the court to declare that the DHS waiver was *ultra vires* for the reasons described above; to declare that the DHS Secretary lacked the authority to issue the waiver; to declare that the New Mexico Waiver and the waiver authority in Section 102(c) of the IIRIRA are unconstitutional; to set aside and vacate the New Mexico Waiver; and to enjoin implementation of the border wall project until DHS complies with all relevant laws. *Id.* at 30–31. On June 15, 2018, DHS filed a motion to dismiss and a cross-motion for summary judgment. Judge Jackson will hear arguments on the pending cross-motions for summary judgment in *CBD New Mexico* on December 18, 2018.

The Center filed a second complaint on October 18, 2018 challenging two DHS waivers issued for the construction of 24.6 miles of border walls in the Lower Rio Grande Valley, including the Waiver Determination at issue in this case. Complaint (Dkt. 1) ¶ 1, *CBD Texas*. Indeed, the filing challenging these waivers expressly discusses the damage to the Butterfly Center from Defendant Nielsen's Waiver Determination. *Id.* ¶ 62. The

Center requests the same relief in *CBD Texas* as in the New Mexico case. *Id.*, at 33–34. On November 1, 2018, Judge Jackson granted a joint motion to stay proceedings in *CBD Texas* pending resolution of the motions for summary judgment in *CBD New Mexico*.

Although Judge Jackson's findings on these issues will not bind this Court, the relief granted may enjoin Defendants. Further, the forthcoming hearing may inform this Court's deliberations. In order to maximize the efficient use of judicial resources, this Court should hold these proceedings in abeyance until Judge Jackson issues her decision in *CBD New Mexico*. *See Landis v. North American Co.*, 299 U.S. 248, 254 (1936).

### III. Defendants' Supplemental Motion to Dismiss Shows the Ripeness of NABA's Statutory Claims and the Urgency of Its Constitutional Claims

The Waiver Determination, asserting "an *acute and immediate* need to construct physical barriers and roads" on the Butterfly Center and waiving 28 laws, including NEPA and the ESA, to allow "the *expeditious* construction of the barriers and roads in the project area" demonstrates the ripeness of NABA's claims. 83 Fed. Reg. 51,472, 51,473 (Oct. 11, 2018). Further, though the Waiver Determination does not purport to—and cannot—undermine NABA's constitutional rights, it demonstrates the intention and urgency of Defendants' conduct on NABA's property, which Defendants have attempted, by pretext, to shield from judicial review.

#### A. *Defendants' Supplemental Motion to Dismiss Demonstrates the Ripeness of Plaintiff's Claims*

Defendants' Supplemental Motion to Dismiss illustrates the ripeness of NABA's constitutional claims by revealing Defendants' true intent. In May 2018, in support of its

Motion to Dismiss, DHS claimed that it had not yet made a final decision on whether to construct a border facility across Plaintiff's property.  As proof, the Agency explained that, "when DHS makes a final decision relating to construction of border security facilities . . . it invariably renders an *identifiable* final agency action," for example by waiver determinations.  Defs. Mem. in Supp. of Mot. Dismiss (Dkt. 25), at 16 (emphasis added).

Defendants' purported Waiver Determination corroborates what NABA has asserted all along: that Defendants' continuous occupation of Plaintiff's property without authorization since early 2017 and the continued damage and destruction they are causing to Plaintiff's property were carried out for purposes of border wall construction on Plaintiff's property.

Plaintiff's claims were ripe for review when Plaintiff first brought its grievance before this Court in December 2017.  Certainly, Defendants' demonstrably false ripeness defenses should be rejected now that DHS has made its unlawful intentions known in the Waiver Determination.

### B. <u>*Defendants' Supplemental Motion to Dismiss Strengthens Plaintiff's Constitutional Claims*</u>

While Defendants do not and cannot claim that the Waiver Determination abrogates NABA's constitutional rights, the Determination and Supplemental Motion to Dismiss expose the seriousness of Defendants' violations of NABA's rights.  The Waiver Determination confirms Plaintiff's prior assertions concerning Defendants' unlawful actions and intentions with regards to Plaintiff's property.

DHS has announced that it will break ground in February 2019, just three months from now.   Second Wright Decl. ¶ 7 & Attachment C.  Defendants' actions on its property that violate its rights under the Fourth and Fifth Amendments of the U.S. Constitution thus will continue and will intensify unless the Court grants the requested relief.  NABA therefore faces the certainty of immediate construction and may be forced to file for emergency relief if Defendants persist in their unconstitutional occupation and destruction of NABA's property.

Therefore, however the Court rules on the validity of the Waiver Determination, the Court should deny Defendants' original Motion to Dismiss and allow Plaintiff's constitutional claims to proceed.

## CONCLUSION

For the foregoing reasons, Plaintiff NABA requests that the Court deny Defendants' Motion to Dismiss and Supplemental Motion to Dismiss and grant Plaintiff such further relief as it deems just and proper.

To the extent the Court chooses not to deny Defendants' Supplemental Motion to Dismiss, Plaintiff respectfully requests that the Court hold its determination of the Supplemental Motion to Dismiss in abeyance pending determination on cases 1:18-cv-00655 and 1:18-cv-02396, and order that neither party take any action which may alter the status quo as regards Defendants' limited and agreed right of entry into the Butterfly Center.

Plaintiff requests that oral argument be heard on Defendants' pending motions.

14

Dated: New York, New York
       November 19, 2018

                                     DEBEVOISE & PLIMPTON LLP

                                     By: */s/ Timothy K. Beeken*
                                     Timothy K. Beeken (N.Y. Bar No. 2492650)
                                     (tkbeeken@debevoise.com)

                                     Harry Zirlin
                                     (hzirlin@debevoise.com)
                                     David Donatti
                                     (dadonatti@debevoise.com)
                                     919 Third Avenue
                                     New York, NY  10022
                                     (212) 909-6000

                                     *Attorneys for Plaintiff*

1004789779

15