UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NORTH AMERICAN BUTTERFLY ASSOCIATION**, <br><br> Plaintiff, <br><br> v. <br><br> **KIRSTJEN M. NIELSEN**, et al., <br><br> Defendants. | Civil Action No. **1:17-cv-02651-RJL** <br><br> **Pursuant to Local Civil Rule 65.1(d), Hearing Requested** |

## MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Pursuant to Federal Rule of Civil Procedure 65 and Local Civil Rule 65.1(a), Plaintiff North American Butterfly Association ("NABA") respectfully moves for a temporary restraining order pending a hearing and decision on Plaintiff's Motion for a Preliminary Injunction, to prevent Defendants, their agents, servants, employees, and any persons acting at their instruction, in concert, or in participation with them, or having knowledge of this Order by personal service or otherwise from depriving NABA of its property, unreasonably seizing NABA's property, taking any action on NABA's property in furtherance of the construction of a border wall, enforcement zone, road, or any related installations, or otherwise interfering with NABA's use and enjoyment of its property, until the Court makes a decision on NABA's motion for a preliminary injunction.

Plaintiff also respectfully moves for a preliminary injunction enjoining same from depriving NABA of its property, unreasonably seizing NABA's property, taking any action on NABA's property in furtherance of the construction of a border wall, enforcement zone, road, or any related installations, or otherwise interfering with NABA's use and enjoyment of its property, until such time as Defendants have satisfied the requirements of National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq.*, the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), 8 U.S.C. § 1103 note, and the Constitution.

This motion is supported by the attached memorandum of points and authorities and declarations of Jeffrey Glassberg and Marianna Treviño Wright.

As explained in greater detail in the attached memorandum, this Court should grant a TRO and a preliminary injunction because border wall construction is beginning on land adjacent to NABA's property and Defendants' constitutional violations are escalating. Immediate injunctive relief is necessary to prevent irreparable harm, including the seizure and destruction of NABA's property in violation of the Fourth and Fifth Amendments of the Constitution, and adverse environmental impacts and injury to listed threatened and endangered species of wildlife and designated critical habitats, in violation of the ESA, and NEPA.

Pursuant to Local Civil Rule 7.1(m), undersigned counsel certify that we conferred with Defendants' counsel on this motion on February 7 and 8, 2019, who advised us that Defendants do not consent to the relief sought in this motion.

Dated: New York, New York
February 11, 2019

                                         Respectfully submitted,

                                         DEBEVOISE & PLIMPTON LLP

                                         By:    /s/Timothy K. Beeken

                                         Timothy K. Beeken
                                         (N.Y. Bar No. 2492650)
                                         tkbeeken@debevoise.com
                                         Harry Zirlin
                                         hzirlin@debevoise.com

                                         919 Third Avenue
                                         New York, NY  10022
                                         (212) 909-6000

                                         *Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**NORTH AMERICAN BUTTERFLY ASSOCIATION**,

    Plaintiff,

v.

**KIRSTJEN M. NIELSEN**, et al.,

    Defendants.

Civil Action No. **1:17-cv-02651-RJL**

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

Timothy K. Beeken
(tkbeeken@debevoise.com)
(N.Y. Bar No. 2492650)
Harry Zirlin
(hzirlin@debevoise.com)

DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY  10022
(212) 909-6000

February 11, 2019

*Attorneys for Plaintiff*

## **TABLE OF CONTENTS**

Facts ............................................................................................................................................ 1

Argument .................................................................................................................................... 3

I.   Plaintiff Satisfies the Prerequisites for the Issuance of a TRO and a
Preliminary Injunction ........................................................................................................ 3

    A.   Likely Success on the Merits ................................................................................... 4

    B.   Irreparable Harm ....................................................................................................... 8

    C.   The Balance of Equities and the Public Interest ...................................................... 9

II.  Waiver of Security ............................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Envt'l Defense Fund v. Corps of Engineers of U.S. Army*, 331 F. Supp. 925 (D.D.C. 1971) .................................................................................................................... 9, 13
*Fuentes v. Shevin*, 407 U.S. 67 (1972) ........................................................................... 10
*Mills v. District of Columbia*, 571 F.3d 1304 (D.C. Cir. 2009) ................................ 3, 8, 9
*Mitchell v. Cuomo*, 748 F.2d 804 (2d Cir.1984) ............................................................ 10
*Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67 (D.D.C. 2001) ............................ 3
*Nat. Res. Def. Council, Inc. v. Morton*, 337 F. Supp. 167 (D.D.C. 1971) ...................... 12
*Ramirez v. U.S. Immigration & Customs Enf't*, 310 F. Supp. 3d 7 (D.D.C. 2018) ........... 9
*Shvartser v. Lekser*, 308 F. Supp. 3d 260 (D.D.C. 2018) ..................................... 8, 9, 10
*Soldal v. Cook County*, 506 U.S. 56 (1992) ................................................................... 11
*U.S. v. Miller,* 799 F.3d 1097 (D.C. Cir. 2015) ............................................................... 5

**Statutes**

Administrative Procedure Act, 5 U.S.C. § 551 et seq. ....................................................... 7
Endangered Species Act, 16 U.S.C. § 1531 et seq. ..................................................... 8, 12
National Environmental Policy Act, 42 U.S.C. § 4321 et seq. .................................... 7, 11

**Rules**

40 C.F.R. § 1503.1 ............................................................................................................ 7

Comes now Plaintiff the North American Butterfly Association ("NABA") and seeks a temporary restraining order and preliminary injunction to stop Defendants and their employees, agents, and contractors from taking any further action on the National Butterfly Center in furtherance of the construction of a border wall, enforcement zone, road, or any related installations, or otherwise interfering with NABA's use and enjoyment of its property, until the Court rules.  During the past week, Defendants have transported heavy machinery to be used in the construction of the wall onto tracts adjoining the Butterfly Center, driven their trucks and heavy machinery back and forth across the Butterfly Center as if they own it, and blocked access to more than two-thirds of the Butterfly Center with law enforcement vehicles and by cutting the Butterfly Center's lock on one of its gates and replacing it with one of their own.  Unless Defendants are stopped, this Court will be without power to grant NABA the final relief it seeks in the Amended Complaint.

## FACTS

As set forth in Plaintiff's Amended Complaint and subsequent filings, Defendants' activities on NABA's property pursuant to the construction of a wall are interfering with NABA's rights under the Fourth and Fifth Amendments of the United States Constitution, and violate the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq.*, and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq*. Am. Compl., ECF No. 19, ¶¶ 63–89.  As Defendants now commence construction on

1

land adjoining the Butterfly Center, their interference with NABA's property rights is escalating.

On November 2, 2018, Defendant Department of Homeland Security ("DHS") announced that it had "awarded a contract to SLSCO Ltd. to construct approximately six miles of levee wall system" in the Rio Grande Valley, including on Plaintiff's property, and that "[c]onstruction is scheduled to begin *in February 2019*." Second Decl. of Marianna Treviño Wright, ECF No. 35, ¶ 7 & Attachment C (emphasis added). The proposed wall "includes a reinforced concrete levee wall system" and a "150-foot enforcement zone on the south-river side of the levee wall system, detection and surveillance technology . . . automated vehicle gates, pedestrian gates, an all-weather patrol road . . . and enforcement zone lighting." Second Decl. of Marianna Treviño Wright, Attachment A, ECF No. 35.

Defendants are poised to begin construction of the border wall. On February 1, 2019, the Border Patrol Public Affairs Office announced that heavy machinery was "on its way" to the Rio Grande Valley to begin construction of the border wall. Decl. of Jeffrey Glassberg, Feb. 11, 2019, ¶ 4 & Exhibit A. On February 3, earthmoving equipment was stationed on the tract adjacent to the Butterfly Center to the east. Fourth Decl. of Marianna Treviño Wright, Feb. 11, 2019, ¶ 3. The next morning, a government subcontractor began installing surveyor stakes along the levee on the El Marillo Banco National Wildlife Refuge tract that borders the Butterfly Center on the west. *Id*. ¶ 4.

As Defendants have pushed forward with construction on land adjacent to the Butterfly Center, their ongoing interference with NABA's property rights has escalated.

The government's agents and contractors began to drive vehicles and heavy machinery across NABA's property on February 5, 2019 and have continued to do so daily. *Id.* ¶ 5. Government agents blocked the entrance to the southern portion of NABA's property and, as they have in the past, cut NABA's lock off the gate accessing that tract and replaced it with their own, barring Butterfly Center employees and guests from accessing NABA's southern property. *Id.* ¶¶ 6–7; Pl.'s Mem. in Opp. to Defs.' Mot. to Dismiss, at ¶¶ 6–7; Decl. of Marianna Treviño Wright, ECF No. 30-1, ¶¶ 21–22. With the commencement of clearing, excavation, and construction, there is no prospect that Defendants' abuse and disregard of NABA's property rights under the Constitution will abate.

## ARGUMENT

### I. Plaintiff Satisfies the Prerequisites for the Issuance of a TRO and a Preliminary Injunction

The prerequisites for a TRO and for a preliminary injunction are the same. *Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67, 72 (D.D.C. 2001). In order to obtain a preliminary injunction or a TRO, the movant must establish that (i) it is likely to succeed on the merits; (ii) it is likely to suffer irreparable harm in the absence of preliminary relief; (iii) the balance of equities tips in its favor; and (iv) an injunction is in the public interest. *Mills v. District of Columbia*, 571 F.3d 1304, 1308 (D.C. Cir. 2009). These factors are balanced against one another; no one factor is dispositive. *Id.*; *Rothe*, 150 F. Supp. 2d at 72.

3

### A. Likely Success on the Merits

#### 1. **Fifth Amendment Claim**

NABA is likely to succeed on the merits of its Fifth Amendment deprivation of property claim.  Defendants' ongoing unauthorized interference with Plaintiff's rights in its property contravenes the Fifth Amendment.  For example, Defendants have hidden cameras and sensors on Plaintiff's property, Am. Compl. ¶ 59; removed locks and gates Plaintiff used to secure its property, Decl. of Marianna Treviño Wright, ECF No. 30-1 ¶¶ 21–22; and engaged in harassment of Butterfly Center staff and visitors from the summer of 2017 to the present day.  Am. Compl. ¶ 61; Decl. of Marianna Treviño Wright, ECF No. 30-1 ¶¶ 5, 17–19; Third Decl. of Marianna Treviño Wright, ECF No. 37-1 ¶ 7.  Defendants have restricted the movements of Butterfly Center guests and employees on NABA's own property, Am. Compl. ¶ 62; Decl. of Marianna Treviño Wright, ECF No. 30-1 ¶¶ 5, 17–18; Third Decl. of Marianna Treviño Wright, ECF No. 37-1 ¶ 6; destroyed natural habitat on NABA's property, Decl. of Marianna Treviño Wright, ECF No. 30-1, ¶¶ 7–8; and stopped NABA employees without a legitimate purpose, Third Decl. of Marianna Treviño Wright, ECF No. 37-1 ¶ 8.

As noted above, with the commencement of construction of the wall and enforcement zone right next to the Butterfly Center, Defendants' deprivations of NABA's use and enjoyment of its property are escalating.  Fourth Decl. of Marianna Treviño Wright, Feb. 11, 2019, ¶¶ 5–6 (describing Defendants' unlawful entry onto NABA's property and interference with NABA's access to its own property).  When construction

reaches NABA's property, these ongoing violations of NABA's rights will result in serious, irreversible destruction of NABA's property.  Construction will entail continuous occupation of NABA's property by the Defendants and their agents, deprive Plaintiff of 70% of its property, and destroy a large section of that area.  Construction will destroy butterfly habitat NABA has developed at the Butterfly Center, thereby rendering more than two thirds of its property useless for the pursuit of its mission: environmental conservation, the protection of butterflies and other rare species, and public education. Am. Compl. ¶¶ 46, 82; Pl.'s Mem. in Opp. to Defs.' Mot. to Dismiss, ECF No. 30, at 3; Decl. of Marianna Treviño Wright, ECF No. 30-1, ¶ 3.

Defendants have offered no due process to cure their illegal deprivation of NABA's property and have responded to this lawsuit by doubling down on their oppressive and illegal conduct.  Their flagrant abuse of NABA's property rights under the Constitution points to a likelihood of success on the merits of NABA's Fifth Amendment claim.

### 2. **Fourth Amendment Claim**

NABA also is likely to succeed on the merits of its Fourth Amendment claim. The reasonableness of a seizure turns on the nature and extent of the government's interference with possessory interests.  *U.S. v. Miller,* 799 F.3d 1097, 1102 (D.C. Cir. 2015).  Defendants have interfered systematically and meaningfully with NABA's possessory interests through their ongoing actions on Plaintiff's property, including by detaining NABA's guests and employees at the Butterfly Center, inviting Government

5

agents and contractors onto the property without advance notice, and interfering with NABA's efforts to exclude others from its land. Am. Compl. ¶¶ 53–62; Pl.'s Mem. in Opp. to Defs.' Mot. to Dismiss, at ¶¶ 6–7; Decl. of Marianna Treviño Wright, ¶¶ 5–22; Third Decl. of Marianna Treviño Wright, ECF No. 37-1, ¶¶ 4–9. The construction of a wall, road, and 150-foot enforcement zone on NABA's property will constitute a permanent physical seizure of 70% of NABA's property. Am. Compl. ¶¶ 15, 84–89. Defendants' only defense is the inapposite open field doctrine, which applies to searches rather than seizures of real property. Pl.'s Reply, ECF No. 40, at 3–4. With no viable defense, Plaintiff is likely to succeed on the merits of its Fourth Amendment claim.

### 3. NEPA claim

The construction of a border wall and a 150-foot enforcement area on Plaintiff's property without the completion of a final environmental impact statement and a notice and comment period will violate NEPA. Defendants' sole defense to this claim at this juncture is that a waiver issued by Defendant Nielsen under the Illegal Immigration Reform and Immigrant Responsibility Act, 8 U.S.C. § 1103, rendered NEPA inapplicable. Plaintiff has demonstrated that the waiver was *ultra vires*, however, and did not extinguish Plaintiff's NEPA claim. Pl.'s Opp. to Defs.' Suppl. Mot. Dismiss, ECF No. 35, at 7–9.

Plaintiff is likely to succeed on the merits of its NEPA claim because Defendants' construction of a border wall and a 150-foot enforcement area constitute federal actions that will "significantly affect the quality of the human environment," triggering

Defendants' mandatory duty to consult with other agencies, to prepare an environmental impact statement, and to open a notice and comment period under NEPA. 42 U.S.C. § 4332(C); 40 C.F.R. § 1503.1; Am. Compl. ¶¶ 63–71. Defendants have not engaged in interagency consultations, invited public comment, or prepared an environmental impact statement regarding the impending construction on Plaintiff's property. Defendants' failure to comply with their mandatory duty under NEPA is arbitrary and capricious, an abuse of discretion, not in accordance with law, and without observance of procedure required by law under the Administrative Procedure Act, 5 U.S.C. §§ 702–704. Accordingly, they have no viable defense to this claim.

### 4. **ESA Claim**

The construction of a border wall, road, and enforcement zone without interagency consultation and the development of measures to ensure the protection of listed threatened and endangered species will violate the ESA. Defendants' sole defense to the ESA claim at this juncture is Defendant Nielsen's purported waiver, which was ineffective to extinguish Plaintiff's ESA claim as noted previously.

Plaintiff likely will succeed on the merits of its ESA claim because the construction of a wall, road, and 150-foot enforcement zone around which "[a]ll vegetation . . . will be cleared," Second Decl. of Marianna Treviño Wright, ECF No. 35 & Attachment C, will injure numerous species listed as threatened or endangered under the ESA through the destruction of habitat and other harms. Threatened or endangered species that will be harmed include: the Slender Rushpea, the Tamaulipan Kidneypetal,

Walker's Manioc, the Ocelot, the Texas Tortoise, the Texas Horned Lizard, and the Texas Indigo Snake.  In addition, the construction will adversely modify and destroy designated critical habitats protected by the ESA.  Am. Compl. ¶¶ 48–49.

Given these negative impacts to protected species and habitats, DHS has an obligation under Section 7(a) of the ESA to: (i) take affirmative steps to protect impacted listed species; (ii) consult with the United States Fish and Wildlife Service; and (iii) design the construction project such that it would not jeopardize the continued existence of any listed threatened or endangered species or adversely modify or destroy these species' designated critical habitats.  16 U.S.C. 1536 §§ (a)(1)–(2).  Defendants have neither engaged in consultation nor taken any precautionary steps to protect these species, in violation of the ESA.  Am. Compl. ¶¶ 72–78.  Accordingly, they have no viable defense to this claim.

### B. Irreparable Harm

"It has long been established that the loss of constitutional freedoms . . . unquestionably constitutes irreparable injury." *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (internal quotations omitted).  In particular, "it is well-settled that unauthorized interference with a real property interest constitutes irreparable harm as a matter of law." *Shvartser v. Lekser*, 308 F. Supp. 3d 260, 267 (D.D.C. 2018) (internal quotations omitted).

Defendants have caused and will continue to cause *per se* irreparable harm of increasing gravity to NABA through the violation of its constitutional rights under the

Fourth and Fifth Amendments. Defendants' ongoing actions constitute unauthorized interference with NABA's interest in its real property, the Butterfly Center. The wall and its attendant enforcement zone and road will destroy the delicate ecosystems upon which the Butterfly Center's existence is based, and isolate and render useless 70% of NABA's land, irreparably harming its ability to carry out its mission of the observation and conservation of butterflies and other species native to the Rio Grande Valley, thus threatening the National Butterfly Center's very existence.

Construction of the wall, road, and enforcement zone without the publication of a final environmental impact statement and the observance of a notice and comment period will violate NEPA. Construction without interagency consultation and the implementation of measures designed to avoid harms to listed threatened and endangered species will violate the ESA. These harms are actual and imminent, and cannot be remedied by monetary damages, and thus are irreparable. *Envt'l Defense Fund v. Corps of Engineers of U.S. Army*, 331 F. Supp. 925, 927 (D.D.C. 1971) (preliminarily enjoining government from awarding contracts for a public works project because their execution would involve clearing, grubbing, excavation, and other actions that would "irreparably alter the environment in its natural state"); *Shvartser*, 308 F. Supp. 3d at 267.

### C. The Balance of Equities and the Public Interest

Finally, the balance of equities weighs in Plaintiff's favor and the public interest favors the grant of a TRO and/or preliminary injunction. *Mills*, 571 F.3d at 1308. When the Government is the non-movant, "[t]hese considerations merge into one factor."

9

*Ramirez v. U.S. Immigration & Customs Enf't*, 310 F. Supp. 3d 7, 32 (D.D.C. 2018) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). The court must "balance the competing claims of injury" and consider "the effect on each party of the granting or withholding of the requested relief." *Shvartser v. Lekser*, 308 F. Supp. 3d 260 (D.D.C. 2018). In a conflict—like this one—between the government's financial and administrative concerns and a plaintiff's constitutional rights, "the balance of hardships tips decidedly" in the plaintiff's favor. *Mitchell v. Cuomo*, 748 F.2d 804, 808 (2d Cir.1984).

Here, the harm that Defendants would suffer in relation to the issuance of a TRO and a preliminary injunction is limited to the financial and administrative inconvenience attendant upon delaying the start of the project. By contrast, NABA will suffer the irreparable violation of its constitutional rights, as well as permanent injury to listed species and designated critical habitats, the protection and conservation of which is its mission and the *raison d'être* of the Butterfly Center.

The prohibition against the deprivation of property without due process of law under the Fifth Amendment "reflects the high value, embedded in our constitutional and political history, that we place on a person's right to enjoy what is his [or hers], free of governmental interference." *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972). By summarily depriving NABA of its property without due process of law, Defendants defy centuries of democratic values that shield Americans from government action depriving individuals of their rightful property without notice and an opportunity to be heard. The public interest in protecting this constitutional value immeasurably outweighs the Government's interest

10

in hurrying construction and any administrative or financial burdens—burdens that could have been avoided had the Defendants respected the law from the outset.

The Fourth Amendment likewise embodies a principle foundational to our democracy: the right to be free from unreasonable governmental interference with an individual's property. *Soldal v. Cook County*, 506 U.S. 56 (1992). The Defendants' repeated invasions of NABA's property and the imminent construction of a wall, road, and 150-foot enforcement area on NABA's property without its consent constitute extreme interference with NABA's possessory interests in its land and therefore an unlawful seizure under the Fourth Amendment. The public interest in preventing such government overreach is irrefutable. Our Constitution recognizes no valid governmental interest in unreasonable seizures of private land.

Congress passed NEPA to "encourage productive and enjoyable harmony between man and his environment; to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man; [and] to enrich the understanding of the ecological systems and natural resources important to the Nation." 42 U.S.C. § 4321. NEPA prevents the Government from developing the natural environment without first publicly considering the consequences. Defendants' precipitate actions on NABA's property—taken without carrying out the statutorily-mandated environmental impact statement and consultations—undermine this public interest, which has governed federal action in this nation for almost fifty years. Defendants' interest in hurrying along their construction project cannot outweigh the

public interest in careful deliberation before the natural environment is irrevocably destroyed, the very harm that Congress intended NEPA to prevent.

The purpose of the ESA is to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531. Defendants' evident intention of building a wall, road, and an enforcement zone cleared of all vegetation, without any attention to its impact on threatened and endangered species, ignores the public policy that Congress codified in the ESA. The only inconvenience Defendants may suffer in complying with its provisions is the delay that would result from proper observation of legally-mandated consultations and planning, a small price in light of the vital public interest at risk, and one that Congress has already determined the Government must pay.

## II. Waiver of Security

Pursuant to Federal Rule 65(c), Plaintiff respectfully requests that the Court exercise its discretion to waive the security requirement or require a nominal fee in its place. *See Nat. Res. Def. Council, Inc. v. Morton*, 337 F. Supp. 167, 168 (D.D.C. 1971). The Government's financial losses cannot be treated the same as private financial losses. *Id.* at 169. Security is not necessary if "requiring security would have the effect of denying the plaintiffs their right to judicial review of administrative action." *Id.* at 168– 69 (explaining that the requirement of a more than nominal amount of security would be contrary to judicial practice and would preclude the non-profit environmental plaintiffs

from obtaining judicial review of administrative action, and setting bond at $100). *See also Envt'l Defense Fund v. Corps of Engineers of U.S. Army*, 331 F. Supp. 925, 927 (D.D.C. 1971) (setting bond for environmental organization plaintiffs at $1.00 in suit against federal agency).

Here, Plaintiff is a private, not-for-profit environmental conservation organization with limited resources outside its operating funds and the land on which the Butterfly Center sits. NABA's right to judicial review of Defendants' administrative action would be denied if security were required. Therefore, this Court should waive the security requirement or set a nominal bond.

## **CONCLUSION**

For the foregoing reasons, Plaintiff North American Butterfly Association respectfully requests that this Court (i) enter an order temporarily restraining Defendants and their employees, servants, agents, contractors, or anyone acting on their instruction from depriving NABA of its property, unreasonably seizing NABA's property, taking any action on the National Butterfly Center in furtherance of the construction of a border wall, enforcement zone, road or any related installations, or otherwise interfering with NABA's use and enjoyment of its property except to patrol it to prevent the illegal entry of aliens into the United States, pending a decision on Plaintiff's motion for a preliminary injunction; (ii) grant Plaintiff's motion for a preliminary injunction enjoining Defendants and their employees, servants, agents, contractors, or anyone acting on their instruction from depriving NABA of its property, unreasonably seizing NABA's property, taking

from obtaining judicial review of administrative action, and setting bond at $100). *See also Envt'l Defense Fund v. Corps of Engineers of U.S. Army*, 331 F. Supp. 925, 927 (D.D.C. 1971) (setting bond for environmental organization plaintiffs at $1.00 in suit against federal agency).

Here, Plaintiff is a private, not-for-profit environmental conservation organization with limited resources outside its operating funds and the land on which the Butterfly Center sits. NABA's right to judicial review of Defendants' administrative action would be denied if security were required. Therefore, this Court should waive the security requirement or set a nominal bond.

## **CONCLUSION**

For the foregoing reasons, Plaintiff North American Butterfly Association respectfully requests that this Court (i) enter an order temporarily restraining Defendants and their employees, servants, agents, contractors, or anyone acting on their instruction from depriving NABA of its property, unreasonably seizing NABA's property, taking any action on the National Butterfly Center in furtherance of the construction of a border wall, enforcement zone, road or any related installations, or otherwise interfering with NABA's use and enjoyment of its property except to patrol it to prevent the illegal entry of aliens into the United States, pending a decision on Plaintiff's motion for a preliminary injunction; (ii) grant Plaintiff's motion for a preliminary injunction enjoining Defendants and their employees, servants, agents, contractors, or anyone acting on their instruction from depriving NABA of its property, unreasonably seizing NABA's property, taking

any action on the National Butterfly Center in furtherance of the construction of a border wall, enforcement zone, road or any related installations, or otherwise interfering with NABA's use and enjoyment of its property except to patrol it to prevent the illegal entry of aliens into the United States, pending entry of judgment or other discontinuance of this action; (iii) waive the security requirement; and (iv) grant Plaintiff such further relief as the Court deems just and proper.

Dated: New York, New York
February 11, 2019

DEBEVOISE & PLIMPTON LLP

By:  /s/Timothy K. Beeken
Timothy K. Beeken (NY 2492650)
tkbeeken@debevoise.com
Harry Zirlin
(hzirlin@debevoise.com)

919 Third Avenue
New York, NY  10022
(212) 909-6000

*Attorneys for Plaintiff*