UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
FEB 1 4 2019
Clerk, U.S. District and Bankruptcy Courts

NORTH AMERICAN BUTTERFLY )
ASSOCIATION, )
 )
    Plaintiff, )
 )
v. )    Civil Case No. 17-2651 (RJL)
 )
KIRSTJEN M. NIELSEN, *et al.* )
 )
    Defendants. )

## MEMORANDUM OPINION
(February 14, 2019) [Dkt. ## 25, 34]

The North American Butterfly Association ("NABA" or "plaintiff"), a non-profit organization devoted to butterflies and butterfly habitat conservation, brought this action against Department of Homeland Security ("DHS") Secretary Kirstjen Nielsen, United States Customs and Border Protection ("CBP") Acting Commissioner Kevin McAleenan, United States Border Patrol ("USBP") Acting Chief Carla Provost, and CBP Rio Grande Valley Sector Chief Patrol Agent Manuel Padilla, Jr., each in their official capacities (collectively, "defendants"). NABA seeks declaratory and injunctive relief based on alleged constitutional and statutory violations arising from defendants' border wall preparation and law enforcement activities at NABA's National Butterfly Center ("Butterfly Center"), which is located near the United States-Mexico border in South Texas. Pending before me are defendants' motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

1

Upon consideration of the pleadings and the relevant law, and for the reasons stated below, defendants' motions to dismiss are **GRANTED**, and this case is **DISMISSED**.

## BACKGROUND

On January 25, 2017, President Donald Trump issued Executive Order No. 13767, directing the DHS Secretary to "take all appropriate steps to immediately plan, design, and construct a physical wall along the southern border" with Mexico. 82 Fed. Reg. 8793, 8794. On February 20, 2017, former DHS Secretary John Kelly issued a memorandum implementing the Executive Order. *See* Mem. Re: Implementing the President's Border Security and Immigration Enforcement Improvements Policies (February 20, 2017) [Dkt. # 25-2, Att. E]. Secretary Kelly's memorandum directed CBP to "immediately begin planning, design, construction, and maintenance of a wall, including the attendant lighting, technology (including sensors), as well as patrol and access roads, along the land border with Mexico in accordance with existing law." *Id.* at 5. Neither the Executive Order, nor the implementing memorandum, identifies any particular location or specific infrastructure projects for the planning or construction of the physical barrier wall.

NABA is a non-profit organization dedicated to conserving butterflies and butterfly habitats. Am. Compl. ¶ 15. NABA owns and operates the Butterfly Center, a 100-acre wildlife center and botanical garden located in South Texas abutting the Rio Grande river. *Id.* at ¶¶ 46–47. The Butterfly Center is home to a number of wildlife species listed as threatened or endangered under federal law. *Id.* at ¶ 49. The Butterfly Center is also situated in the Rio Grande Valley Border Patrol Sector ("RGV Sector"), a USBP designation for the 17,000 square-mile geographical patrol area encompassing the Center.

*Id.* at ¶ 19. Although not expressly alleged, plaintiff does not appear to dispute that the Butterfly Center is located within twenty-five miles of the southern border with Mexico. *See id.* at ¶ 15; Pl.'s Opp'n at 2, 22 [Dkt. # 30].

NABA alleges that on July 20, 2017, the Butterfly Center's executive director identified a work crew on Center property using heavy equipment to "cut down trees, mow brush, and widen a private road that runs" through the Center. Am. Compl. ¶ 53. The executive director also noticed "surveyor flags" elsewhere on the property. *Id.* at ¶ 54. The executive director contacted CBP, which confirmed that the agency was responsible for the work crew, had authority for the activity, and would provide further clarity about the work. *Id.* at ¶ 55. On August 1, 2017, the Chief Patrol Agent for the RGV Sector and two CBP agents visited the Butterfly Center and showed the executive director "a draft proposal for the border wall, including a segment through the Butterfly Center." *Id.* at ¶ 56. The Chief Patrol Agent also referred to "sensors" that had been placed in undisclosed locations on Center property. *Id.* at ¶ 59. Plaintiff alleges that since the August 1, 2017 meeting, CBP officials have, on one occasion, "followed and temporarily detained" the executive director and a reporter and have "regularly station[ed]" themselves on Center property rather than patrolling. *Id.* at ¶¶ 61–62.

Plaintiff filed a complaint for declaratory and injunctive relief on December 11, 2017, *see* Compl. [Dkt. # 1], which it amended on March 28, 2018, *see* Am. Compl. [Dkt. # 19]. Based on the foregoing factual allegations, NABA claims that defendants have failed to comply with their statutory obligations under the National Environmental Policy Act ("NEPA") and the Endangered Species Act ("ESA") and have violated NABA's

3

Fourth and Fifth Amendment rights. *Id.* at ¶¶ 63–89. Defendants moved to dismiss the Amended Complaint on May 25, 2018, arguing that NABA's statutory and constitutional claims are unripe and/or otherwise defective. *See* [Dkt. # 25].

On October 12, 2018, defendants filed a notice informing the Court of a determination by DHS Secretary Nielsen pursuant to § 102 of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), 8 U.S.C. § 1103 note, which authorizes the Secretary to "waive all legal requirements"—including the ESA and NEPA—that the Secretary "determines necessary to ensure expeditious construction of" physical barriers and roads along the United States-Mexico border.[1] Section 102 also deprives federal courts of jurisdiction to review any non-constitutional "causes or claims" that "aris[e] from any action undertaken, or any decision made, by the Secretary of Homeland Security pursuant to" the Secretary's waiver authority. IIRIRA § 102(c)(2)(A).

The Secretary invoked her waiver authority on October 4, 2018, applying it to certain areas within the RGV Sector that include NABA's Butterfly Center property. *See* Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended, 83 Fed. Reg. 51472, 51473 (Oct. 11, 2018) ("Waiver Determination"). The Secretary "waive[d] in their entirety," *inter alia*, NEPA, the ESA, and the Administrative Procedure Act ("APA") "with respect to the construction of roads and physical barriers (including, but not limited to, accessing the project area, creating and using staging areas, the conduct of earthwork, excavation, fill, and site

---

[1] References to § 102 as currently constituted are cited herein as "IIRIRA § 102."

preparation, and installation and upkeep of physical barriers, roads, supporting elements, drainage, erosion controls, safety features, lighting, cameras, and sensors) in the project area." *Id.* at 51473–74. Accordingly, defendants filed a supplemental motion to dismiss contending that the Waiver Determination extinguishes plaintiff's NEPA and ESA claims by depriving this Court of subject matter jurisdiction over them. *See* [Dkt. # 34].

## LEGAL STANDARD

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also Bank of America, N.A. v. FDIC*, 908 F.Supp.2d 60, 76 (D.D.C. 2012). Because "subject-matter jurisdiction is an 'Art[icle] III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). In considering a 12(b)(1) motion to dismiss, a court need not limit itself to the complaint, but rather "may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case." *Bank of America, N.A. v. FDIC*, 908 F.Supp.2d 60, 76 (D.D.C. 2012) (quotation marks omitted).

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To survive a 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation

marks omitted). A claim is facially plausible when the complaint allegations allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In resolving a Rule 12(b)(6) motion, "[t]he [C]ourt assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor[.]" *Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014).

## ANALYSIS

### I. Constitutional Claims

In its Amended Complaint, NABA asserts claims under the Fourth and Fifth Amendments. I will address these in turn.[2]

#### a. Fourth Amendment

NABA contends that defendants have violated and will continue to violate the Fourth Amendment by entering Butterfly Center property without consent or warrant. Am.

---

[2] The jurisdictional impact of the Secretary's October 2018 Waiver Determination is discussed in detail *infra*. Nevertheless, it bears mentioning at this point that NABA's constitutional claims do not appear to "aris[e] from" the Secretary's waiver authority such that § 102(c)(2)(A)'s jurisdictional carve-out would apply. However, defendants do not argue—and the Waiver Determination does not indicate—that the Secretary's waiver of "all legal requirements" relating to barrier and road construction extends beyond the enumerated statutory requirements to extinguish constitutional claims arising from those activities. I will assume that the courthouse doors remain open to such claims to avoid the "serious constitutional question that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Webster v. Doe*, 486 U.S. 592, 603 (1988) (internal quotation marks omitted); *see also American Coalition for Competitive Trade v. Clinton*, 128 F.3d 761, 765 (1997) ("To be sure, a statute that totally precluded judicial review for constitutional claims would clearly raise serious due process concerns.").

Compl. ¶¶ 85–89. Unfortunately for plaintiff, the Fourth Amendment offers little refuge for unenclosed land near one of the country's external borders. The Amended Complaint is clear that the Butterfly Center consists of 100 acres of open land accessible to the visiting public, *id.* at ¶¶ 46, and no factual allegations suggest that defendants entered or searched without consent any physical structures on the Center's property. Thus, while plaintiff perhaps could seek damages under a trespass theory,[3] for constitutional purposes the property at issue amounts to an "open field," which is "unprotected by the Fourth Amendment, even when privately owned." *United States v. Johnson*, 561 F.2d 832, 858 n.13 (D.C. Cir. 1977) (Bazelon, C.J., dissenting); *see also United States v. Alexander*, 888 F.3d 628, 631 (2d Cir. 2018) ("that portion of private property that extends outside a home's curtilage—what the caselaw terms an 'open field'—is beyond the purview of the Fourth Amendment, and can be warrantlessly and suspicionlessly searched without constitutional impediment"). Moreover, the Butterfly Center's proximity to the United States' border with Mexico confirms that NABA has not stated a Fourth Amendment claim. It is well established that "searches made at the border, pursuant to the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border."

---

[3] Such a trespass claim would have to be brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2679(b)(1), before it could be brought in this Court. *See* 28 U.S.C. §§ 2401(b), 2675; *McNeil v. United States*, 508 U.S. 106, 112 (1993); *Moher v. United States*, 875 F.Supp.2d 739, 751 (W.D. Mich. 2012) (considering tort claims based on warrantless entry of border patrol agents on private timber land after plaintiff had exhausted FTCA administrative remedy).

*United States v. Gurr*, 471 F.3d 144, 148 (D.C. Cir. 2006) (quoting *United States v. Ramsey*, 431 U.S. 606, 616 (1977)); *see* 8 U.S.C. § 1357(a) (immigration officers "shall have the power without warrant . . . within a distance of twenty-five miles from any such external boundary to have access to private lands, but not dwellings, for the purpose of patrolling the border to prevent the illegal entry of aliens into the United States").

As such, the confluence of the Butterfly Center's open field status and defendants' constitutional and statutory authority at the border compels dismissal of NABA's Fourth Amendment claim under Rule 12(b)(6). *See Moher v. United States*, 875 F.Supp.2d 739, 773–89 (W.D. Mich. 2012) (dismissing Fourth Amendment claim based on border patrol officers' warrantless entry on private timber land because land was "open field" under Fourth Amendment and, in passing 8 U.S.C. § 1357(a), Congress "reasonably determined that warrantless searches in open fields on private land located within 25 miles of the external borders of the United States are necessary to effectively carry out and enforce the federal regulatory scheme" governing alien immigration); *Bourgeois v. Peters*, 387 F.3d 1303, 1314–15 (11th Cir. 2004) ("[s]ituations in which such expectations [of privacy] are reduced include . . . border searches, and searches of open fields" (footnotes omitted)).

### b. Fifth Amendment

The Amended Complaint asserts that defendants have deprived NABA of its property in violation of the Fifth Amendment's Due Process Clause. *See* Am. Compl. ¶¶ 34–39, 80–83. This claim also fails.

Insofar as NABA's claim is predicated on an alleged failure to comply with IIRIRA's property condemnation provisions, that preemptive challenge is not ripe. *See*

8

Am. Compl. ¶ 83 ("Defendants have not sought to acquire an interest in NABA property or followed any of the steps for doing so"); *Texas Border Coal. v. Napolitano*, 614 F.Supp.2d 54, 59–63 (D.D.C. 2009) ("It would . . . thwart congressional will, to allow the plaintiff's members to preemptively challenge an anticipated condemnation when the Department's decision to pursue this course has not yet been rendered."). Similarly unripe is plaintiff's claim that "[p]roposed border wall construction" amounts to a constitutional deprivation. Am. Compl. ¶ 82; *see, e.g.*, *Texas v. United States*, 523 U.S. 296, 300 (1998) ("[A] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (internal quotation marks omitted)). And finally, to the extent that NABA's allegations can be read to support an authorized-but-uncompensated taking claim, that claim too is premature. "[A] takings lawsuit is premature if it is brought before plaintiffs have sought compensation in the form of damages." *Firearms Import/Export Roundtable Trade Grp. v. Jones*, 854 F.Supp.2d 1, 20–21 (D.D.C. 2012) (dismissing takings claim for injunctive relief where plaintiffs failed to first seek damages under the Tucker Act); *see also Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194–95 (1985); *Student Loan Mktg. Ass'n v. Riley*, 104 F.3d 397, 401 (D.C. Cir. 1997).

Accordingly, plaintiff's Fifth Amendment claim, as alleged in the Amended Complaint, also must be dismissed. *See, e.g.*, *Sierra Club v. Jackson*, 648 F.3d 848, 853 (D.C. Cir. 2011) (certain justiciability questions should be addressed under Rule 12(b)(6)); *Matthew A. Goldstein, PLLC v. U.S. Dep't of State*, 153 F.Supp.3d 319, 331 n.9 (D.D.C.

2016) (matters of prudential ripeness may be properly resolved under Rule 12(b)(6), rather than Rule 12(b)(1)), *aff'd*, 851 F.3d 1 (D.C. Cir. 2017).

**II.   Statutory Claims**

It is undisputed that the DHS Secretary's October 2018 Waiver Determination, if validly exercised, deprives the Court of jurisdiction to hear plaintiff's NEPA and ESA claims. "Only Congress may determine a lower federal court's subject-matter jurisdiction." *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004) (citing U.S. Const. art. III, § 1). And "when it comes to jurisdiction, the Congress giveth and the Congress taketh away." *In re al-Nashiri*, 791 F.3d 71, 76 (D.C. Cir. 2015); *see* 5 U.S.C. § 701(a)(1) (APA does not apply where "statute[] preclude[s] judicial review"); *Robbins v. Reagan*, 780 F.2d 37, 42 (D.C. Cir. 1985) (APA and federal question jurisdiction are "subject . . . to preclusion-of-review statutes created or retained by Congress"). In the case of IIRIRA, Congress expressly granted to the Secretary the authority to "waive all legal requirements" that, in the "Secretary's sole discretion, [are] necessary to ensure expeditious construction of the barriers and roads" described in the statute. IIRIRA § 102(c)(1). As such, "a valid waiver of the relevant environmental laws under section 102(c) is an affirmative defense to all [of plaintiff's] environmental claims." *In re Border Infrastructure Environmental Litig.*, -- F.3d --, 2019 WL 509813, at *5 (9th Cir. Feb. 11, 2019).

NABA does not argue that the geographic scope of the Secretary's Waiver Determination fails to encompass the Butterfly Center. *See* Waiver Determination, 83 Fed. Reg. at 51473 (defining covered area). Thus, the waiver extinguishes plaintiff's NEPA and ESA claims, as those statutes (and the APA) create "legal requirements" that no longer

10

apply to actions related to "the construction of roads and physical barriers"—e.g., excavation, site preparation, installation and upkeep of barriers, roads, and sensors—in the covered area. *Id.* at 51473–74; *see In re Border Infrastructure Environmental Litig.*, -- F.3d --, 2019 WL 509813, at *9 ("The Secretary has waived the legal requirements that [plaintiffs] allege DHS violated."). It is of no moment that the waiver was issued after the commencement of this action. *See In re Border Infrastructure Environmental Litig.*, 2019 WL 509813, at *5 n.8 (rejecting argument that previously effective statutory requirements survive waiver because "the waiver provision says nothing about *when* the agency must invoke its authority," and thus no "relief could be granted once DHS issued the waivers").

IIRIRA also expressly precludes federal court jurisdiction to review any non-constitutional "causes or claims" that "aris[e] from any action undertaken, or any decision made, by the Secretary of Homeland Security pursuant to" the Secretary's waiver authority. IIRIRA § 102(c)(2)(A); *Save Our Heritage Org. v. Gonzales*, 533 F. Supp. 2d 58, 60 (D.D.C. 2008) ("The only claims permitted under the [IIRIRA] waiver provision are those 'alleging a violation of the Constitution.'" (quoting IIRIRA § 102(c)(2)(A)). In other words, IIRIRA not only permits the Secretary to waive NEPA and the ESA, but it also precludes any non-constitutional challenge to the waiver itself.

However, IIRIRA's preclusion-of-review provision does not end the matter. NABA contends that I may review whether the Secretary's waiver was *ultra vires* for failure to consult with other stakeholders, as required under IIRIRA § 102(b)(1)(C). While defendants respond that such non-statutory review is also foreclosed, it is well established in our Circuit that "even where a statute precludes judicial review, 'judicial review is

11

available when an agency acts *ultra vires.*'" *Sky Television, LLC v. F.C.C.*, 589 Fed.Appx. 541, 543 (D.C. Cir. 2014) (quoting *Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1173 (D.C. Cir. 2003)). Not surprisingly, however, non-statutory review of agency action is "of extremely limited scope." *Griffith v. Fed. Labor Relations Auth.*, 842 F.2d 487, 493 (D.C. Cir. 1988); *see also Trudeau v. Federal Trade Comm'n*, 456 F.3d 178, 190 (D.C. Cir. 2006). "If a no-review provision shields particular types of administrative action, a court may not inquire whether a challenged agency decision is arbitrary, capricious, or procedurally defective." *Amgen, Inc. v. Smith*, 357 F.3d 103, 113 (D.C. Cir. 2004). The Court must only "determine whether the challenged agency action is of the sort shielded from review." *Id.*

Here, the Secretary's waiver "is of the sort shielded from review" under IIRIRA, and plaintiff's *ultra vires* argument is predicated on an alleged procedural defect. *See id.* The consultation provision on which NABA relies provides that "[i]n carrying out this section, the Secretary of Homeland Security shall consult with the Secretary of the Interior, the Secretary of Agriculture, States, local governments, Indian tribes, and property owners in the United States to minimize the impact on the environment, culture, commerce, and quality of life for the communities and residents located near the sites at which such fencing is to be constructed." IIRIRA § 102(b)(1)(C). Although the statutory language is phrased in mandatory terms, the provision "does not provide any specific limitation or guidance concerning when or how consultation is to occur except expressly stating who shall be consulted." *In re Border Infrastructure Environmental Litig.*, 284 F.Supp.3d 1092, 1126 (S.D. Cal. 2018), *aff'd*, 2019 WL 509813 (9th Cir. Feb. 11, 2019). In other words, IRIRA

12

is silent as to whether the consultation required must occur *prior* to a waiver determination. Moreover, the decision whether to exercise the waiver authority is in the Secretary's "sole discretion." IIRIRA § 102(c)(1). The statute neither requires the Secretary to consult with the stakeholders identified in § 102(b)(1)(C) *before* exercising her waiver authority, nor indicates that the Secretary's waiver power in any way depends on the views of those third parties.

Pre-waiver consultation may be wise policy, but it not a statutory requirement. As such, even assuming the complete absence of consultation here, I cannot conclude that the Secretary's Waiver Determination was plainly in excess of her delegated statutory powers or contradicted a clear statutory mandate. *See In re Border Infrastructure Environmental Litigation*, 284 F.Supp.3d at 1126 (rejecting *ultra vires* argument that Secretary exceeded "delegated powers by approving the waivers or executing construction contracts prior to completing the consultation process" because IIRIRA lacks "a 'clear and mandatory' mandate regarding the timing of consultation"); *Griffith*, 842 F.2d at 493. My jurisdiction therefore does not extend beyond NABA's constitutional claims, and its statutory claims must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are hereby **GRANTED**, plaintiff's constitutional claims are **DISMISSED without prejudice**, and plaintiff's statutory claims are **DISMISSED with prejudice**. A separate order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge