UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NORTH AMERICAN BUTTERFLY )
ASSOCIATION, )
 )
    **Plaintiff,** )
 )
v. ) Civil Case No. 17-2651 (RJL)
 )
ALEJANDRO J. MAYORKAS *et al.*, )
 )
    **Defendants.** )

## MEMORANDUM OPINION

(February 16th, 2022) [Dkt. ## 53, 56]

The North American Butterfly Association ("NABA" or "plaintiff"), a non-profit organization devoted to butterflies and the conservation of their habitats, brought this action in 2017 against various Government officials, namely the Secretary of the Department of Homeland Security ("DHS"), the Commissioner of United States Customs and Border Protection ("CBP"), the Chief of the United States Border Patrol ("USBP"), and the Chief Patrol Agent for CBP's Rio Grande Valley Border Patrol Sector ("RGV Sector"), each in their official capacities (collectively, "defendants" or "the Government"). In 2019, I dismissed NABA's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), finding that NABA had failed to state a claim for alleged constitutional and statutory violations arising from defendants' preparation for construction of a border wall and other law enforcement activities on NABA's National Butterfly Center ("Butterfly Center"), which is located near the United States-Mexico

1

border in South Texas. *See N. Am. Butterfly Ass'n v. Nielsen*, 368 F. Supp. 3d 1 (D.D.C. 2019) ("*NABA I*"). The Court of Appeals subsequently affirmed that dismissal except as to NABA's claim that the defendants had committed a violation of its procedural due process rights under the Fifth Amendment. *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1267 (D.C. Cir. 2020) ("*NABA II*"). In light of its partial reversal, the Court of Appeals remanded the case for further proceedings. *Id.*

Pending before me on remand are two competing motions: First, NABA moves under Federal Rule of Civil Procedure 15(a)(2) ("Rule 15(a)(2)") for leave to file a Second Amended Complaint, in which NABA alleges violations of both its procedural and substantive due process rights. *See* Pl.'s Mot. for Leave to File Second Am. Compl. [Dkt. # 53]; *see also* Second Am. Compl. [Dkt. # 53-1]. Second, the Government, in addition to opposing NABA's motion for leave to file the Second Amended Complaint, has moved to dismiss the surviving claims from NABA's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Defs.' Mot. to Dismiss for Failure to State a Claim [Dkt. # 56]. Upon consideration of the pleadings and the relevant law, and for the reasons stated below, both plaintiff's motion for leave to file the Second Amended Complaint as well as defendants' motion to dismiss are **DENIED**.

## BACKGROUND

### I. Procedural History

The facts initially giving rise to this case are documented in detail in my previous opinion. *See NABA I*, 368 F. Supp. 3d at 4–6; *see also NABA II*, 977 F.3d at 1249–50. In short, this case stems from a 2017 Executive Order issued by former President Donald

2

Trump, which directed the DHS Secretary to "take all appropriate steps to immediately plan, design, and construct a physical wall along the southern border" with Mexico. 82 Fed. Reg. 8793, 8794. NABA is a non-profit organization dedicated to conserving butterflies and butterfly habitats. *See* First Am. Compl. ¶ 15 [Dkt. # 19]. It owns and operates the Butterfly Center, a 100-acre wildlife center and botanical garden that abuts the Rio Grande river in South Texas. *Id.* at ¶¶ 46–47. The Butterfly Center is situated within the RGV Sector, a geographic patrol area measuring 17,000 square miles. *Id.* at ¶ 19.

NABA's First Amended Complaint centered on allegations of wrongful conduct by the defendants and their agents related to border-wall construction preparation activities. More specifically, NABA alleged that on July 20, 2017, the Butterfly Center's executive director noticed a work crew on the property using heavy equipment to "cut down trees, mow brush, and widen a private road that runs" through the Center, as well as "surveyor flags" in other parts of the property. First Am. Compl. ¶¶ 53–54. CBP confirmed that the agency was responsible for the work crew, had authority for the activity, and would provide NABA with further clarity about the work. *Id.* ¶ 55. On August 1, 2017, the Chief Patrol Agent for the RGV Sector and two CBP agents visited the Butterfly Center and showed the executive director "a draft proposal for the border wall, including a segment through the Butterfly Center." *Id.* ¶ 56. The Chief Patrol Agent also referred to "sensors" that had been placed in undisclosed locations on Center property. *Id.* ¶ 59. In its first Amended Complaint, NABA further alleged that since the August 1, 2017 meeting, CBP officials "followed and temporarily detained" the executive director and a reporter and have

"regularly station[ed]" themselves on Center property, rather than merely patrolling through it. *Id.* ¶¶ 61–62.

NABA filed a complaint for declaratory and injunctive relief on December 11, 2017, *see* Compl. [Dkt. # 1], which it amended on March 28, 2018, *see* First Am. Compl. Based on the foregoing allegations, NABA made statutory claims under the National Environmental Policy Act ("NEPA") and the Endangered Species Act ("ESA"), as well as the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). NABA also raised constitutional claims, alleging that the defendants had violated its Fourth and Fifth Amendment rights. *Id.* ¶¶ 63–89. I granted the defendants' motion to dismiss the First Amended Complaint on May 25, 2018, finding that NABA had failed to allege a violation of its Fourth Amendment rights, that its Fifth Amendment claims were unripe, and that the DHS Secretary's exercise of her waiver authority pursuant to § 102 of IIRIRA was valid, thereby depriving the Court of subject matter jurisdiction to review NABA's NEPA and ESA claims. *See NABA I*, 368 F. Supp. 3d at 6–10.

Our Court of Appeals subsequently affirmed my decision as to NABA's Fourth Amendment and statutory claims; however, it reversed the dismissal of NABA's Fifth Amendment procedural due process claim. *See NABA II*, 977 F.3d at 1261–67.[1] Specifically, the Court of Appeals held that "[w]ith allegations that government officials and contractors have entered the National Butterfly Center to alter private roadways and

---

[1] Judge Millett dissented from the majority opinion based on her belief that the Court of Appeals did not have jurisdiction to hear the appeal because I had dismissed the First Amended Complaint in part without prejudice and with express leave for NABA to amend its complaint or file a renewed application for emergency relief. *See NABA II*, 977 F.3d at 1267–82 (Millett, J., dissenting).

install sensors, and that CBP has maintained an enduring presence at the Center in connection with planned border-security infrastructure, the Butterfly Association plausibly pleads a deprivation of property without due process." *Id.* at 1267. Because the Court of Appeals found that NABA's First Amended Complaint adequately alleged a procedural due process claim, it remanded the case for further proceedings. *Id.*

## II. The Pending Motions

However, rather than proceeding to litigate the surviving Fifth Amendment claim as pled in the First Amended Complaint, NABA instead filed its now-pending motion for leave to file a Second Amended Complaint on February 25, 2021. *See* Pl.'s Mot. for Leave to File Second Am. Compl. NABA stated that the newly amended complaint would "focus on Defendants' ongoing due process violations, including many violations that have occurred since the Amended Complaint was filed three years ago." *Id.* at 1. NABA's proposed Second Amended Complaint, not surprisingly, realleges the above-described interactions between Butterfly Center staff and CBP staff through 2017, *see* Second Am. Compl. ¶¶ 8–30, while adding further allegations of actions taken by the defendants and their agents in subsequent years.

Specifically, NABA has included a number of additional allegations that it claims amount to a "pattern of abusive behavior" by CBP directed toward the staff and guests of the Butterfly Center. *Id.* ¶ 46. NABA alleges multiple occasions on which CBP agents prohibited Butterfly Center staff and guests from entering certain areas of the property or from accessing the property altogether, as well as instances in which CBP agents directed guests to vacate the property for unspecified reasons. *See id.* ¶¶ 30, 33, 37–39, 41, 43–45.

5

NABA also alleges several incidents where CBP helicopters have hovered above the Butterfly Center property "with intent to harass NABA personnel and guests," including once in February 2018 and during the final banquet of the Texas Butterfly festival in 2017, 2018, and 2019, as well as an incident lasting for multiple hours in May 2020. *Id.* ¶¶ 32, 36, 44. Unidentified and unmarked CBP agents and vehicles are alleged to have been present on the property on at least two occasions. *Id.* ¶¶ 34, 42. NABA further alleges that CBP agents and contractors crossed the property on a daily basis, including with heavy machinery, without providing notice to NABA or seeking permission to enter and cross the property. *Id.* ¶ 40. Finally, NABA alleges that a CBP agent pulled over the Executive Director of the Butterfly Center, Marianna Wright, for no reason, that a CBP agent "nearly ran Wright's car off the road while her son was driving," and that a CBP agent shortly thereafter "passed Wright in her car in a no-passing zone at high speed," *id.* ¶ 46; furthermore, NABA alleges that Wright has been told by a CBP agent that "she was the 'most hated woman' at CBP and that her picture was on display in the officers' break room at CBP's McAllen Station," *id.* ¶ 35.

On top of the above allegations that NABA claims amount to a "pattern of abusive behavior," NABA further alleges a series of incidents in which CBP has variously removed, broken, or otherwise altered the Butterfly Center's locks securing a gate at an entrance to the lower seventy acres of the Butterfly Center property, again without notice to the Center staff; additionally, CBP is alleged to have left certain gates open so as to leave the property "open to trespassers." *See id.* ¶¶ 48–60. Finally, in addition to supplementing its factual allegations in the Second Amended Complaint, NABA included a claim that the

defendants had violated its substantive due process rights, in addition to its procedural due process rights. *See* Second Am. Compl. ¶¶ 69–74.

The Government has opposed NABA's motion for leave to file an amended complaint, arguing that amendment would be futile. *See* Defs.' Opp. to Pl.'s Mot. for Leave to File Second Am. Compl. [Dkt. # 55] ("Defs.' Opp."). In addition, the Government simultaneously moved to dismiss the surviving claim from NABA's *First Amended Complaint*—*i.e.*, NABA's original claim of a violation of its procedural due process rights—pursuant to Rule 12(b)(6). Defs.' Mot. to Dismiss [Dkt. # 56].

## LEGAL STANDARD

Federal Rule of Civil Procedure 15 governs amendments to pleadings, including complaints, with Rule 15(a)(1) enumerating the circumstances in which a party may amend a pleading as a matter of course, and Rule 15(a)(2) providing that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Rule 15(a)(2) goes on to note that "[t]he court should freely give leave when justice so requires." Though Rule 15 has thus been construed to limit the discretion of the Court to deny leave to amend, *see, e.g., Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1083–84 (D.C. Cir. 1998), it is nonetheless well established that a Court may do so where amendment would be futile, including in circumstances where a proposed amended complaint "would not survive a motion to dismiss," *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085 (D.C. Cir. 1996); *see also* 6 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1487 (3d ed. 2021) ("[I]f a complaint as amended could not

withstand a motion to dismiss or summary judgment, then the amendment should be denied as futile.").

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To survive such a motion, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible when the complaint allegations allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In resolving a Rule 12(b)(6) motion, "[t]he [C]ourt assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor[.]" *Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014).

## ANALYSIS

### I.   **Plaintiff's Motion for Leave to Amend**

In its Second Amended Complaint, NABA asserts claims that the Government has violated its Fifth Amendment rights to both procedural and substantive due process. I address the merits of those two claims in turn to determine whether allowing amendment would be futile.

#### a. Procedural Due Process

The procedural due process claim in NABA's Second Amended Complaint is based on its factual allegations that the defendants have "(1) damaged NABA's locks and gates, removed NABA's locks from its gates and otherwise failed to secure NABA's gates and

land; (2) damaged NABA's land and other property; (3) invited others onto NABA's land; and (4) prohibited NABA staff and visitors from accessing the lower 70 acres of NABA's property." Second Am. Compl. ¶ 64. NABA claims that this alleged conduct, without implementation of any sort of legal procedure, amounts to a "deprivation of NABA's fundamental property rights." *Id.* Accordingly, NABA seeks injunctive relief enjoining defendants from engaging in certain of the alleged activities and requiring that defendants implement notice procedures and provide training to their agents for future operations on the property.[2] *Id.* ¶¶ 65, 68.

In contending that leave to file the Second Amended Complaint would be futile, the Government primarily argues that NABA has failed to state a claim for a violation of its procedural due process rights in the proposed complaint because NABA does not, and cannot, show that it lacks an adequate post-deprivation remedy for the conduct alleged.

---

[2] More specifically, NABA contends that due process would require that the Government undertake the following:

> (1) to adopt a formal procedure to ensure that Defendants' agents patrolling near NABA's land can open Defendants' own locks on NABA's gates; (2) to implement monthly training for agents patrolling on or near NABA's land on the proper methodology for effectively affixing locks to NABA's gates to ensure that NABA personnel can enter the property at any time; (3) to provide prompt notice when damage to NABA's property occurs in connection with Defendants' conduct; (4) to have meetings with NABA staff on a regular schedule concerning recent incidents of damage to NABA's property in connection with Defendants' conduct; (5) to provide reasonable advance notice to NABA and obtain its permission before inviting others onto or through NABA's land and to consult with NABA about reasonable alternatives for entry that do not interfere with NABA's operations; (6) to allow NABA and its guests access to all parts of the Butterfly Center except as immediately necessary for Defendants' conduct of an enforcement action; (7) to provide to NABA on a regular schedule reports of all recent enforcement actions and other occasions on which Defendants' agents and/or their invitees entered NABA's land; and [(8)] to adopt and implement any other policies and procedures deemed necessary and appropriate to remedy the violation of NABA's procedural due process rights.

Second Am. Compl. ¶ 65.

*See* Defs.' Opp. at 7–10. The Government contends that the conduct alleged in the Second Amended Complaint can be redressed through "at least two meaningful, post-deprivation remedies for Plaintiff's alleged injuries: (1) an inverse condemnation proceeding in the Court of Federal Claims and (2) a tort action under the Federal Tort Claims Act ('FTCA')." *Id.* at 7. The Government states that the Second Amended Complaint, at worst, alleges either a taking of Butterfly Center property or independent torts, such as trespass, by the Government and its agents; each of these claims could be adjudicated or redressed by one of the enumerated post-deprivation procedures. *Id.*

I agree with the Government that NABA has not shown why these remedies are not adequate to redress the conduct NABA alleges in the Second Amended Complaint. The constitutional requirement of procedural due process may be satisfied either through pre-deprivation hearings or through "adequate post-deprivation remedies." *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Rason v. Nicholson*, 562 F. Supp. 2d 153, 155 (D.D.C. 2008) (quoting *Dickson v. Mattera*, 38 F. App'x 21 (D.C. Cir. 2002)). To the extent NABA has alleged facts that amount to a permanent possession of its property or an assertion of control amounting to an effective deprivation of NABA's use and enjoyment of the Butterfly Center—whether or not NABA itself identifies those facts as such a deprivation—inverse condemnation procedures have been consistently held to be adequate under the due process clause, permitting NABA to seek and receive compensation to the extent the adjudicating authority finds that such compensation is warranted. *See, e.g., Del. Riverkeeper Network v. FERC*, 895 F.3d 102, 111 (D.C. Cir. 2018) (noting that following condemnation of land, "the landowner will be entitled to just compensation, as established

in a hearing that itself affords due process . . . due process requires no more in the context of takings where . . . there is no right to a pre-deprivation hearing"), *overruled on other grounds by Allegheny Def. Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020); *see also Presley v. City of Charlottesville*, 464 F.3d 480, 489–90 (4th Cir. 2006).

Alternatively, NABA has alleged facts that could, if true, be characterized as trespasses on its land, including the intrusions by CBP vehicles and machinery, damaging Butterfly Center property, or the repeated interferences with the property's locks and gates. *See* Second Am. Compl. ¶ 64. The Government has waived sovereign immunity for tort suits of this nature under the FTCA, subject of course to certain exceptions and an exhaustion requirement. As with inverse condemnation proceedings, the ability to pursue claims for tort against the Government under the FTCA has been consistently held to satisfy the due process clause's requirement of an adequate post-deprivation remedy. *See, e.g., Mac'Avoy v. The Smithsonian Inst.*, 757 F. Supp. 60, 69–70 (D.D.C. 1991) (Hogan, J.) (citing *Hudson*, 468 U.S. at 536) ("The availability of a tort remedy such as that offered under the FTCA is generally sufficient to satisfy due process."); *see also Moher v. United States*, 875 F.Supp.2d 739, 751 (W.D. Mich. 2012) (considering tort claims based on border patrol agents' warrantless entry on private land after plaintiff had exhausted FTCA administrative remedy). NABA cannot allege that it has been deprived of due process when it has *not* yet pursued available established remedies for the conduct it alleges.

In response, NABA makes two primary counter-arguments, both of which are ultimately unpersuasive: First, NABA argues that our Circuit's prior decision in this case, in which it held that the First Amended Complaint contained a plausibly pled procedural

11

due process claim, *see NABA II*, 977 F.3d at 1265, compels a finding that its claim in the Second Amended Complaint would survive a motion to dismiss. Second, NABA argues that in fact there are no adequate post-deprivation remedies available because the proposed Second Amended Complaint pleads an "ongoing" violation of its rights that cannot be remedied via either a takings or FTCA claim. *See* Pl.'s Opp. to Defs.' Mot. to Dismiss at 1–6 [Dkt. # 58]. However, in making both of these arguments, NABA elides a crucial difference between the new proposed Second Amended Complaint and its First Amended Complaint. The earlier complaint, though it included certain overlapping allegations of specific Government conduct, ultimately pled a claim for a violation of procedural due process because the conduct in question stemmed directly from an established policy and procedure, that is the Government's planning and preparation for construction of the border wall. *See generally* First Am. Compl. In that sense, NABA was challenging the process it was entitled to in having its land intermittently occupied and otherwise interfered with pursuant to an established and ongoing Government policy; in such circumstances, where the nature and extent of the Government's takings or its potentially tortious conduct cannot reasonably be determined, the post-deprivation remedies discussed above could well be inadequate. *Cf. Walters v. Wolf*, 660 F.3d 307, 313 (8th Cir. 2011) (citing *Zinermon v. Burch*, 494 U.S. 113, 132 (1990)) ("[W]hen an *established state procedure* deprives one of property, post[-]deprivation remedies generally fail to satisfy [the requirements of due process]."). In that case, the injunctive relief NABA sought in the First Amended Complaint may well have been appropriate and necessary to ensure its rights to due process were vindicated. Indeed, in finding that NABA's First Amended Complaint plausibly pled

a due process claim, our Circuit Court emphasized that its holding was based on NABA's "allegations that government officials and contractors have entered the National Butterfly Center to alter private roadways and install sensors, *and that CBP has maintained an enduring presence at the Center in connection with planned border-security infrastructure.*" *See NABA II*, 977 F.3d at 1267.

The Second Amended Complaint, by contrast, does not allege that the underlying conduct by the Government is being undertaken pursuant to any ongoing policy or project, and thus also does not make a showing that future transgressions are sufficiently likely so as to justify an injunction or to otherwise render the post-deprivation remedies identified by the Government inadequate. In the new complaint, NABA has identified past instances of conduct by the Government for which it may well be entitled to compensation; NABA has not shown, however, how post-deprivation remedies would be inadequate to redress the completed violations of its property rights alleged in the Second Amended Complaint.

As a result, then, I must conclude that the procedural due process claim as pled in the Second Amended Complaint would not survive a motion to dismiss because it does not state a claim for relief, and thus allowing NABA leave to file this claim would indeed be futile.

### b. Substantive Due Process

Similarly, NABA's proposed Second Amended Complaint does not state a claim for a violation of its substantive due process rights, rendering amendment futile. Violations of substantive due process are rare: to state such a claim, a plaintiff must allege particularly egregious and arbitrary actions taken by the state. Put differently, a plaintiff must allege

conduct by a Government agent that would "shock the conscience." *E.g.*, *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1906 (2018). The landmark case of *Rochin v. California*, 342 U.S. 165 (1952), established this benchmark, with the Supreme Court finding that the forced stomach-pumping of a criminal suspect to obtain evidence was sufficiently offensive so as to sustain a constitutional claim. *Id.* at 172–73. Since then, courts have "repeatedly adhered to *Rochin*'s benchmark," with only the "most egregious official conduct" held to comprise a substantive due process claim. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). The Supreme Court meanwhile has cautioned that conduct that is instead "analogous to a fairly typical state-law tort claim" does not meet this high bar, *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992), and that "the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Lewis*, 523 U.S. at 848.

Here, NABA's allegations (which, again, must be taken as true at this stage in the proceeding) at most support a finding that the defendants have intermittently harassed or interfered with NABA staff and visitors, as well as entered, asserted control over, or caused some damage to NABA's property. *See* Second Am. Compl. ¶¶ 70–71. There is no doubt that such conduct, if it has indeed occurred as plaintiff alleges, would be troubling, but that is not the standard for a cognizable substantive due process claim. Instead, these allegations describe conduct by various Government agents and contractors that falls well short of the established "shock the conscience" standard. At worst, NABA's allegations might comprise run-of-the-mill claims of trespass or nuisance; as described above, NABA is, of course, free to pursue those tort claims through the proper procedural vehicle.

Instead, it has chosen to attempt to elevate its allegations into constitutional claims. But NABA's allegations do not state a plausible claim of a violation of its substantive due process rights, and thus allowing NABA to amend its Complaint to bring this claim would be futile as well.

As such, neither the procedural due process claim, nor the substantive due process claim, as alleged in the Second Amended Complaint would survive a motion to dismiss; for that reason, I must deny NABA's motion for leave to file the Second Amended Complaint under Rule 15(a)(2).

## II.     **Defendants' Motion to Dismiss**

Lastly, though I agree with the Government that NABA's motion for leave to file an amended complaint should be denied, I also find that the Government's motion to dismiss the surviving claims of NABA's First Amended Complaint must be denied as well. In its partial reversal of my earlier opinion, the Court of Appeals was quite clear: it squarely held "that the [First Amended Complaint] states a Fifth Amendment procedural due process claim based on DHS' allegedly unauthorized occupation and use of the Butterfly Association's land." *NABA II*, 977 F.3d at 1265. Though, as discussed above, this holding does not bear directly on the proposed Second Amended Complaint's procedural due process claim, it quite clearly applies to the version of that claim contained in the First Amended Complaint and precludes its dismissal at this stage of the litigation.

The Government argues that dismissal of the surviving claim is proper under the same rationale that would justify dismissal of the Second Amended Complaint's procedural due process claim—that is, the existence of an adequate post-deprivation remedy. *See*

Defs.' Reply to Pl.'s Opp. to Defs.' Mot. to Dismiss at 2–6 [Dkt. # 59]. Moreover, the Government maintains that the Court of Appeals limited its holding to the narrow conclusions that NABA's procedural due process claim was not unripe and that the Government did not have statutory authority for its alleged actions. *Id.* The Government contends that the Court of Appeals accordingly "did not address" the question of whether NABA had access to an adequate post-deprivation remedy. *Id.* at 2 (citing *NABA II*, 977 F.3d at 1265–67). According to the Government's reading, I am therefore free to grant its motion to dismiss on this latter basis. *Id.*

Try as it might, however, the Government cannot escape the Court of Appeals' clear holding here, and I am likewise bound to follow it. The Government may be correct that the Court of Appeals' opinion squarely addressed and rejected only two grounds for dismissal of the procedural due process claim. But silence from the Court of Appeals as to other arguments does not mean that the Court of Appeals left the door open for those arguments to be raised on remand. Instead, the breadth of the holding is apparent from the clear language used in the opinion. The Court of Appeals did not limit its holding to the narrow findings that NABA's procedural due process claim was neither unripe nor barred by statutory authority; instead, it held squarely that the First Amended Complaint contained "allegations that government officials and contractors have entered the National Butterfly Center to alter private roadways and install sensors, and that CBP has maintained an enduring presence at the Center in connection with planned border-security infrastructure" and that those allegations amounted to a plausibly pled procedural due process claim. *NABA II*, 977 F.3d at 1267; *see also id.* at 1265 ("We hold that the complaint states a Fifth

Amendment procedural due process claim based on DHS' allegedly unauthorized occupation and use of the Butterfly Association's land.").[3]

Of course, whether NABA can at this point support the allegations contained in its First Amended Complaint with admissible evidence remains to be seen, but that is a question not before me in adjudicating the present motion to dismiss. Instead, for now I assume the allegations of the First Amended Complaint to be true, and, as the Court of Appeals has held, those allegations "plausibly plead[] a deprivation of property without due process." *NABA II*, 977 F.3d at 1267. That is all that is required for a complaint to survive a motion made pursuant to Rule 12(b)(6), and for that reason I must deny the Government's motion to dismiss the surviving claims of NABA's First Amended Complaint.[4]

---

[3] To be clear, even if the Court of Appeals had been less explicit in its holding, the Government's post-deprivation remedies argument would still have fallen short in regards to the First Amended Complaint. As discussed above, the First Amended Complaint plausibly alleged, in effect, an ongoing occupation of the Butterfly Center by the Government and its agents, with the then-continuing border-wall construction providing a solid basis to presume that such occupation and the related deprivations could continue and evolve over time. The types of post-deprivation remedies available to NABA that are adequate to redress the sporadic and intermittent deprivations alleged in the *Second* Amended Complaint would not be adequate to redress such a continuous—and continuously evolving—deprivation as that alleged in the First Amended Complaint.

[4] Because I find that the Government's motion to dismiss fails on the merits, I need not address NABA's additional argument in opposition, namely that the motion is procedurally improper under the Rules. *See* Pl.'s Sur-Reply to Defs.' Mot. to Dismiss at 1 (quoting Fed. R. Civ. P. 12(g)(2)).

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for leave to file a Second Amended Complaint and defendants' motion to dismiss the First Amended Complaint are **DENIED**. A separate order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge